DCP:MEB/AS
F. #2019R01460

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

     - against -                          Docket No. 20-CR-390 (ENV)

JAVIER AGUILAR,

             Defendant.

– – – – – – – – – – – – – – – – –X

## THE GOVERNMENT'S OPPOSITION TO DEFENDANT JAVIER AGUILAR'S MOTION FOR A BILL OF PARTICULARS

                                  SETH D. DuCHARME
                                  ACTING UNITED STATES ATTORNEY
                                  Eastern District of New York
                                  271 Cadman Plaza East
                                  Brooklyn, New York 11201

Mark E. Bini
Andrey Spektor
Assistant United States Attorneys

Ann Brickley
Adam Schwartz
Derek Ettinger

Trial Attorneys
      (Of Counsel)

## **PRELIMINARY STATEMENT**

Defendant Javier Aguilar has filed a request for a bill of particulars, making 17 requests. (See Defendant's Motion for a Bill of Particulars, ECF 25 ("Def. BOP")). The motion should be denied because, as explained below, the defendant either already has the information or he is not entitled to it, particularly at this early juncture in the case. Contrary to the defendant's contention, the indictment, the complaint and the government's discovery more than adequately inform the defendant of the nature of the charges against him. Indeed, the government's charging instruments and discovery provide detailed information regarding the members of the conspiracy, the bribe recipients and their responsibilities, the important dates of the conspiracy, and a description of how the conspiracies functioned. In sum, the defendant's demand for more detailed information is an improper attempt to seek a preview of the government's legal theory and evidence. It should be denied.

## **BACKGROUND**

I. Charging Documents

On September 22, 2020 a grand jury in this district returned an indictment charging the defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"), in violation of 18 U.S.C. § 371. (See ECF 13, "Ind."). Prior to that, on July 15, 2020, the defendant was arrested pursuant to a detailed complaint (ECF 1, "Compl."), which identified the defendant as a trader for the Houston-based subsidiary of a European energy trading company referred to as "Trading Company" and provided details of each charged conspiracy. (Ind. ¶ 1; Compl. ¶ 4).

From the indictment and the complaint alone, the defendant is aware that the charges against him are based on the following allegations: From approximately March 2015 to

July 2020, the defendant conspired to promise and to pay bribes to Ecuadorian officials, including at Ecuador's state-owned and state-controlled oil company,[1] to secure an improper advantage for Trading Company in order to obtain and retain business.  (Ind. ¶¶ 1, 3; Compl. ¶20).  The defendant committed these crimes with multiple co-conspirators, including consultants and intermediaries.  (Compl. ¶¶ 6-11, 13-14, 16-18).  The defendant and his co-conspirators caused money to be sent from Trading Company to an intermediary in Curaçao referred to in the charging documents as the "Intermediary," who used shell companies to make payments to the consultants, referred to in the charging documents as "Consultant #1" and Consultant #2" (together, the "Consultants"), who in turn paid Ecuadorian government officials.  (Compl. ¶¶ 19-26).  Each of these bribe payments was made on Trading Company's behalf.  (Compl. ¶¶ 26).

In or about and between March 2017 and March 2020, the defendant and others caused the Consultants to pay bribes to two Ecuadorian government officials, referred to in the charging documents as "Ecuadorian Official #1" and "Ecuadorian Official #2," to secure improper business opportunities for Trading Company.   For example, between approximately March 2017 and November 2018, the Consultants paid Ecuadorian Official #2 approximately $270,000 on behalf of Trading Company.  (Compl. ¶ 18).

Further, between approximately May 2018 and March 2020, the defendant and others caused Trading Company, through Intermediary, to pay the Consultants approximately $1,400,000 of the approximately $3,600,000 owed to them pursuant to the scheme.  In turn, during this same time period, in furtherance of the conspiracy, the Consultants paid Ecuadorian

---

[1] Empresa Publica de Hidrocarburos del Ecuador ("Petroecuador").

Official #1 approximately $600,000 of the more than $1.5 million that the conspirators agreed to pay Ecuadorian Official #1 on behalf of Trading Company.  (Compl. ¶ 18).

As a result of the scheme, Trading Company received hundreds of millions in fuel oil that originated from Petroecuador.  (Compl. ¶ 23).

II.     Documents Produced in Discovery

On September 28, 2020, before the defendant was even arraigned on the indictment in this district, the government produced 33 recordings of the defendant speaking to and meeting with others, including the recordings detailed in the complaint.  Further, on October 7, 2020—before appearing for the first status conference—the government produced to the defendant more than 500,000 pages of email communications from two private email accounts that the defendant used in furtherance of the charged conspiracies.  That same day, the government also produced approximately 1,700 pages of bank, real estate and other records, including the defendant's bank records and records of bank accounts used by co-conspirators.

The government has continued to supplement its discovery.  On October 26, 2020, the government produced to the defendant additional records, including more than 2,000 pages of email communications from a third alias email account the defendant used in furtherance of the charged conspiracies.  In addition, the government turned over approximately 10,000 pages of records provided to the United States by Curaçao and Panama in response to Mutual Legal Assistance Treaty requests.  These records relate to bank transactions in foreign jurisdictions relevant to the charged conspiracies.  Specifically, the Curaçao records reflect wire transfers from Trading Company to Intermediary's bank accounts in Curaçao.  The records also show Intermediary sending wire transfers from his accounts in Curaçao to the Consultants.

3

(Compl. ¶ 18).  In addition, on November 12, 2020, the government produced to the defendant 3,500 pages of records of emails involving the defendant from the Trading Company.

  III.  Additional Details Provided by the Government

    In addition to the information alleged in the complaint, indictment and disclosed in discovery, the government provided additional particulars to the defendant in response to his request.  Specifically, by letter dated October 17, 2020, the government provided the defendant Aguilar with the identities of the anonymized individuals referred to in the complaint and the indictment.  In addition, on November 17, 2020, the government provided Aguilar with a list of the recordings, noting the approximate dates of the recordings and names of the participants.

    The government also hereby discloses that the specified unlawful activity referred to in the indictment and the complaint is an offense against a foreign nation involving bribery of a public official underlying the money laundering conspiracy is Article 280 of the 2014 Ecuadorian Penal Code.

## LEGAL STANDARD

    Under the Federal Rules of Criminal Procedure, an indictment need only set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c).  Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges against him in order to allow the preparation of a defense, avoid unfair surprise, and assert a double jeopardy claim.  See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks omitted).  If the information

4

sought by the defendant is provided in the indictment or through some other means, a bill of particulars is not warranted. See Bortnovsky, 820 F.2d at 574; see also United States v. Rigas, 258 F.Supp.2d 299, 305 (S.D.N.Y.2003) (no bill of particulars is warranted where "the Indictment, discovery, and other information provided by the government adequately notify Defendants of the charges against them"); United States v. Barret, No. 10-CR-809 (KAM), 2011 WL 6780901, at *5 (E.D.N.Y. Nov. 27, 2011) (citing Rigas) "The defendant bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it." United States v. Shkreli, No. 15-CR-637, at 11 (KAM), 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) (quoting United States v. Fruchter, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)). The decision to grant or deny a bill of particulars is committed to the sound discretion of the trial court. Fruchter, 104 F. Supp. 2d at 311 (quoting United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984)).

A defendant cannot use a bill of particulars as an investigative tool or as a pre-trial discovery device. See United States v. Pimentel, No. 99-CR-1104 (SJ), 2001 WL 185053, at *4 (E.D.N.Y. Jan. 22, 2001) (citations omitted). Rule 7(f) also may not be used to limit the government's evidence at trial or flush out its prosecutorial theories or methods of proof in advance of trial. See Shkreli, No. 15-CR-637, at 13 (collecting cases); see also United States v. Sattar, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories.") (citation omitted).

Thus, "courts have routinely held that the 'wheres, whens and with whoms' of a charged offense are beyond the proper scope of a bill of particulars." United States v. Shteyman,

5

No. 10-CR-347 (SJ), 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) (quoting United States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011)); see also United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) ("demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied") (collecting cases). "The ultimate test in determining whether a bill of particulars is appropriate is whether the information is necessary, not whether it is helpful to the defendant." Rivera, 2011 WL 1429125, at *8 (emphasis added and citations omitted).

There are three reasons animating these restrictions on the use of bills of particulars. First, the use of bills of particulars "is not comparable to discovery in civil [cases] because of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury." United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) (internal quotation marks and citations omitted). Second, the government must not be compelled "to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain away the [g]overnment's case." United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted). Finally, the government should not be restricted from "using proof it may develop as the trial approaches." Id. (citation omitted).

## **ARGUMENT**

The defendant seeks information that has either already been provided or to which he is not entitled or both.[2] For ease of reference, below is a summary of the information he seeks, and the government's response:

---

[2] The government reserves the right to timely notify the defendant of additional evidence it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence. In addition, the investigation that led to the charges against the defendant is ongoing, and if the government obtains additional evidence against the defendant, it reserves the right to produce it in advance of trial.

| Request | Information Sought | Summary of Response |
|---|---|---|
| 1 | The dates of the earliest statement or event upon which the government intends to rely to prove that the alleged conspiracies existed; | The indictment alleges that the defendant participated in FCPA and money laundering conspiracies from approximately March 1, 2015 to July 10, 2020. (Ind. ¶¶ 1-3). The government will also elicit evidence that Consultant #1 and Consultant #2 had a corrupt relationship with Ecuadorian Official #1 that had begun in at an earlier date with respect to a different energy trading company. |
| 2 | The identities of any and all unindicted co-conspirators; | The complaint and indictment specifically mention co-conspirators including Intermediary, Consultant #1, Consultant #2, Ecuadorian Official #1 and Ecuadorian Official #2. On October 17, 2020, the government wrote to the defendant and provided the names of these co-conspirators. |
| 3 | The identities and government roles, positions, or titles (including dates thereof) of any and all "foreign officials" that the government contends are "implicated in the alleged conspiracies;" | As noted above, the government has provided the defendant with the actual identities of Ecuadorian Official #1 and Ecuadorian Official #2. In addition, the complaint describes the roles of Ecuadorian Official #1 and Ecuadorian Official #2 in the complaint at paragraph 13 and 14. |
| 4 | Any alleged statements or events establishing when each member of the alleged conspiracies, including the defendant, joined the alleged conspiracy, and the dates and approximate times of their statements; | The government describes the events establishing when the defendant joined the conspiracies, and the operation of the schemes, in paragraphs 16 to 26 of the complaint. In addition, the evidence provided to the defendant in discovery details further evidence in furtherance of the conspiracy. |
| 5 | Any alleged statements made or acts taken by the defendant "to unlawfully influence" the foreign government; | Paragraphs 19-26 of the complaint outline the actions taken by the defendant and his co-conspirators to corruptly influence Ecuadorian government officials. |

| 6 | Any alleged corrupt payments from Shell Company #1 or Shell Company #2, or Consulting Company and the dates of those payments; | As noted above, on October 26, 2020, the government produced to the defendant approximately 10,000 pages of records provided to the United States by Curaçao and Panama in response to Mutual Legal Assistance Treaty requests. These records reflect corrupt payments in furtherance of the charged conspiracies. Further, the government will produce records related to corrupt payments from the Consultants that were for the benefit of Ecuadorian Official #1 and Ecuadorian Official #2 in the coming weeks. |
|---|---|---|
| 7 | Any alleged corrupt payments from Shell Company #1 or Shell Company #2 to Consultant #1, Consultant #2 or Consulting Company for the benefit of Ecuadorian officials, the dates and amounts of such payments, the identity of the alleged Ecuadorian officials to whom the payment was made; | As noted above, on October 26, 2020, the government produced to the defendant Curacao records establishing the corrupt payments from Shell Company #1 and Shell Company #2 to the Consultants. The government will produce records related to corrupt payments from the Consultants that were for the benefit of Ecuadorian Official #1 and Ecuadorian Official #2 in the coming weeks. |
| 8 | Any alleged statements by the defendant to Consultant #1 or Consultant #2 to use Intermediary to hide the source of payments made on behalf of Trading Company and the dates and approximate times of such statements; | The complaint alleges in paragraph 24 that in late 2016, the defendant instructed Consultant #1 that they would use Intermediary to hide the source of payments made on behalf of Trading Company. The government will provide further detail in its 3500 material produced prior to trial regarding statements made by the defendant to anticipated government witnesses. |
| 9 | Any alleged corrupt payments from Consultant #1, Consultant #2 or Consulting Company to Ecuadorian officials on behalf of Trading Company, the dates and amounts of such payments, and the identity of the alleged Ecuadorian officials to whom payment was made; | Paragraph 18 of the complaint sets out the amounts and approximate dates of the payments from Consultant #1 and Consultant #2 and companies they controlled that were paid to the benefit of Ecuadorian Official #1 and to Ecuadorian Official #2. |
| 10 | Any alleged acts in furtherance of the alleged conspiracies and the dates and approximate times of such acts; | While not exhaustive, the government alleged overt acts in furtherance of the conspiracies, and the alleged dates of those acts, in paragraph 2(a)-(e) of the indictment, and paragraphs 31(a)-(g) of the complaint. |

| | | |
|---|---|---|
| 11 | Any alleged statements, events, or communications that the government contends prove that the alleged conspiracies existed, including the date and time of, and participants in such statements, events or communications; | Paragraphs 16-31 of the complaint, and paragraphs 2(a)-(e) of the indictment summarize statements, events and communications that the government contends prove the charged conspiracies. In addition, the government has produced 33 recordings involving the defendant that are less than 10 hours in length and will serve as proof at trial of the conspiracies. To make counsel's review easier, on November 17, 2020, the government produced a chart with the dates and participants for those 33 recordings. |
| 12 | The dates, times and participants of recorded phone calls or meetings involving the defendant; | The government has produced 33 recordings involving the defendant, and, on November 17, 2020, produced a chart with the dates and participants for those 33 recordings. . |
| 13 | The dates, times and participants of recorded phone calls or meetings involving the defendant and produced by the government as DOJ-AV-000000001-33; | As noted above, the government has produced 33 recordings involving the defendant, and, on November 17, 2020, produced a chart with the dates and participants for those 33 recordings. |
| 14 | Any alleged statements by the defendant regarding payments through the Intermediary to "four or five others," the identities of the "others," and the dates and approximate times of such statements; | The government noted in paragraph 30 of the complaint that during a recorded meeting on March 5, 2020, the defendant said that he had been in contact with the Intermediary regarding "four or five others" to fix schemes in other parts of the continent. A copy of the March 5, 2020 recorded meeting has been produced to the defendant within bates range DOJ-AV-0000000013-DOJ-AV-0000000024. |
| 15 | Any alleged financial transactions with, or payments to, "foreign officials," including the dates and amounts of any such alleged payments; | Paragraph 18 sets out the amounts and approximate date of the payments from Consultant #1 and Consultant #2 and companies they controlled that were paid for the benefit of Ecuadorian Official #1 and Ecuadorian Official #2. |

| 16 | Any entities that the defendant and other co-conspirators used to direct payments to alleged foreign officials, and specifically requesting information regarding the "Shell Company" and "Consulting Company" referred to in paragraph 2(b) of the Indictment, the bank and correspondent bank accounts referred in paragraph 2(e) of the Indictment, and companies and bank accounts that were used to facilitate the payment of bribes to Ecuadorian government officials referred to in paragraphs six to nine of the Complaint; and the bank accounts referred to in paragraphs 26, 31(a)-(c) of the Complaint; | The Shell Company referred to in paragraph 2(b) of the indictment is the same company referred to as "Shell Company #2" and identified in the government's October 17, 2020 letter. "Consulting Company" is also identified in the government's October 17, 2020 letter. The bank and correspondent bank accounts referred to in paragraph 2(e) of the indictment include EFG Bank, Cayman Islands; EFG Bank, SA; Bank of America, New York, New York; and Novo Banco, Portugal. In its October 17, 2020 letter, the government identified the individuals and entities referred to in paragraphs 6 to 9 of the complaint, including the companies that were used to pay bribes to Ecuadorian government officials. Intermediary used SAI Bank in Curaçao in conjunction with Shell Company #1 and Shell Company #2, and those records were disclosed to the defendant on October 7, 2020. The bank accounts referred to in paragraphs 26 and 31(a)-(c) of the complaint include SAI Bank, Curaçao; EFG Bank Cayman Islands; St George's Bank, Panama; Novo Bank, Portugal; JPMC London. |
| --- | --- | --- |
| 17 | Any alleged specific "violation[s] of the Ecuadorian Penal Code" involving "bribery of a public official." | The government alleges that the specified unlawful activity underlying the money laundering conspiracy referred to as an offense against a foreign nation involving bribery of a public official is Article 280 of the 2014 Ecuadorian Penal Code. |

As the chart above makes clear, particularly at this early stage in the case, the government has provided the defendant far more particulars about the charges against him than he is entitled to receive. As set forth above, the charging documents in this case are specific—the defendant has the benefit of a detailed complaint and several overt acts listed in an indictment. Accordingly, this is not a case where the "'charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" United States

11

v. Dervishaj, No. 13-CR-668 (ENV), 2015 U.S. Dist. LEXIS 195158, at *17 (E.D.N.Y. May 29, 2015) (quoting United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004)).

But even if the indictment (and the complaint) had been more general, the defendant's motion would still fail because, as is also set forth above, the information in the charging documents was supplemented with discovery and with additional information provided by the government in response to the defendant's requests. See id. (noting that a bill of particulars is not required "where the government has made sufficient disclosures concerning its evidence and witnesses by other means" (quoting Chen, 378 F.3d at 163)); see also id. (noting that "[i]n considering a defendant's notice of the specific acts for which he is charged, the trial courts must evaluate all the information it has received from the government and not merely by information provided in an indictment. (internal quotation marks omitted)). Thus for example, in Dervishaj, this Court denied a motion even where the indictment did "little more than track the language of the underlying statutes" because an affidavit detailed the charges against the defendant, which meant that the defendants "received more than adequate information to permit each of them to identify, with requisite particularity, the nature of the charges pending against them, to prepare for trial, to avoid surprise, and to determine whether to interpose a defense of double jeopardy." Id. at *18.

Here, the defendant has a complaint and indictment that inform him of the charges and that act as a roadmap he can use to navigate the early discovery that he has received in the case. Even beyond that roadmap, the government has supplied additional detail in previous letters and in this memorandum. Contrary to his assertion, the defendant has been advised of the exact nature of the charges against him. He is not entitled to anything more. See, e.g., United States v. Bonventre, 646 Fed. App'x 73, 79 (2d Cir. 2016) (summary order) (explaining that the

12

defendant was not entitled to "evidentiary detail" as to which investment adviser and broker-dealer records were alleged to be false, why they were false, and how the defendant knew of their falsity); see also United States v. Jabali, No. 01-CR-801 (SJ), 2003 WL 22170595, at *3 (E.D.N.Y. Sept. 12, 2003) (noting that "[r]equests for exact dates, places, and times in which events occurred and the respective roles and manner of participation of others in such events ignore the proper scope and function of a bill of particulars."); United States v. Columbo, No. 04-CR-273 (NRB), 2006 WL 2012511, at *8 (S.D.N.Y. July 18, 2006) (denying bill of particulars where the defendant was alleged to have "received kickback payments of at least $90,000 . . . during the period between 1999 and 2002 in exchange for his approval of fraudulent invoices"). Accordingly, the defendant is not entitled to a bill of particulars.

In short, the defendant will not be surprised at trial. His motion is instead an attempt to obtain information about the government's investigation, a device for additional discovery, and a further preview into potential legal theories—none of which he is entitled to at this time. For instance, he acknowledges that he is aware of the identity of the co-conspirators referenced in the charging documents, but wants to know the identities of other co-conspirators and relevant entities. (ECF 25-1, Def. Br. 5 n.4). He does not explain why, despite the details summarized above and known to him about the allegations and the evidence, this information is "necessary" for him, rather than "just helpful." United States v. Horge, No. 19-CR-96 (LTS), 2020 U.S. Dist. LEXIS 198523, at *8 (S.D.N.Y. Oct. 26, 2020) ("'The important question is whether the information sought is necessary, not whether it is helpful.'" (quoting United States v. Facciolo, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)). For that reason, in cases where sufficient detail has been provided, courts have routinely denied requests for identities of unindicted co-conspirators. See, e.g., id.; United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990) (affirming

13

denial of bill of particulars where defendant requested, among other things, identity of unindicted co-conspirators).

There is added reason to do so here: the government's investigation into the widespread corruption by the defendant and similarly situated defendants is ongoing. Revealing the identities of potential unindicted co-conspirators, even though they have not been referenced in the charging documents and before trial is even scheduled, would harm the government's investigation. In particular, some of the co-conspirators are located abroad or travel and, once alerted to their potential exposure, may evade arrest. Cf. United States v. Shkreli, No. 15-CR-637 (KAM), 2016 U.S. Dist. LEXIS 176245, at *17 (E.D.N.Y. Dec. 14, 2016) (applying a six-factor test in determining whether the government should be required to reveal identities of unindicted co-conspirators and finding that granting a bill of particulars far in advance of trial not warranted, in part because of potential harm to the government's investigation).

In support of his request for the evidentiary detail and theories by which the government will prove its case, the defendant cites a number of inapposite cases, most prominently, United States v. Lino, No. 00-CR-632 (WHP), 2001 WL 8356, at *7 (S.D.N.Y. Jan. 21, 2001), United States v. Nachamie, 91 F. Supp. 2d 565, 576 (S.D.N.Y. 2000), and the Second Circuit's decision in United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987) (Def. Br. at 3, 4, 6, 7, 8, 10, 15 and 16). In those cases, the courts expressed concern that the defendants had to wade through substantial amounts of discovery without knowing which transactions or statements were fraudulent or illegal and which the government would prove at trial. See Bortnovsky, 820 F.2d at 574-75 (granting bill of particulars in complex fraud conspiracy case with voluminous discovery because the government had alleged that the conspiracy involved certain "fake" insurance claims using allegedly fraudulent documents that were submitted among

14

legitimate insurance claims that were also produced in discovery; the government was required to identify which insurance claims were fake and fraudulent); Lino, 2001 WL 8356, at *7 (granting bill of particulars in part and ordering the government to identify specific bribes where indictment provided sparse details and evidence included over 1100 hours of recorded conversations and to provide particulars regarding an investment characterized only as a "fraudulent investment product"); Nachamie, 91 F. Supp. 2d at 576 (ordering the government to identify which of the 2,000 Medicare claims it intended to prove were fraudulent).

Unlike the defendants in Lino, Nachamie and Bortnovsky, as explained above, the defendant will not be at a loss in deciphering the allegations. He need not guess what conduct he is alleged to have participated in—the government has clearly set forth that the defendant is charged with participating in a conspiracy to pay bribes to Ecuadorian government officials to win business for Trading Company. Cf. Lino, 2001 WL 8356, at *7 (noting that the government's disclosures about alleged bribes contained "sparse details"); Bortnovsky, 820 F.3d at 574-75 (holding that the defense was considered by not receiving dates of critical events and identifies of purported fraudulent documents, which effectively "shifted . . . the burden of proof" onto the defendants). He is also charged with a money laundering conspiracy for causing those payments to be made from funds sent into and out of the United States from his employer, Trading Company, to Intermediary, then to Consultant #1 and Consultant #2, and then, finally, to the bribed Ecuadorian officials (the identities of each of whom he knows).

Furthermore, in this case, the government alleges that every payment that the defendant and his co-conspirators caused the Curaçao-based Intermediary to make to Consultant #1 and Consultant #2 was corrupt and in furtherance of the bribery and money laundering conspiracies. The defendant therefore need not weed through voluminous discovery in an effort

15

to determine which payment was connected to an unlawful scheme and which was lawful. Cf. Nachamie, 91. F. Supp. 2d at 571 (criticizing the government for producing "over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims" but refusing to inform the "defendants which of these claims were false and in what way they were false"); Lino, 2001 WL 8356, at *6 (collecting authority in which courts required the government to identify the particular statements it alleged were false). And unlike in Lino, 2001 WL 8356, at *2, the 33 recorded conversations and meetings involving the defendant that have already been turned over to him in discovery span about ten hours, rather than the 1,100 hours of recorded conversations in Lino. See also Bortnovsky, 820 F.2d at 575 (observing that the government does not "fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"). The defendant's counsel can review the recorded conversations at issue here.

Finally, defendant's argument that the Coronavirus pandemic makes "the need for more-particularized allegations especially serious" (Def. Br. at 17-18) is equally unavailing. While the Coronavirus pandemic has made travel to and from certain states difficult, defendant has failed to demonstrate how travel restrictions imposed as a result of the pandemic have created a particularized need for a specific piece of information set forth in his motion. See United States v. Shkreli, No. 15-CR-637, at 11 (KAM), 2016 WL 8711065, at *4 (explaining that information sought must be necessary and that not receiving it would prejudice the defendant).

## **CONCLUSION**

Through the complaint, indictment and information disclosed in discovery, the defendant has been sufficiently informed of the nature of the charges against him and his own alleged conduct; he is not entitled to the "evidentiary detail" he seeks through his motion. As a result, and for the reasons set forth above, the government respectfully submits that the defendant's motion is without merit and should be denied.

Dated: Brooklyn, New York
November 17, 2020

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By: /s/
Mark E. Bini
Andrey Spektor
Assistant U.S. Attorneys
(718) 254-8761 (Bini)

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
U.S. Dept. of Justice

By: /s/
Derek Ettinger
Jonathan Robell
Clayton Solomon
Trial Attorneys
(202) 616-3504

DEBORAH L. CONNOR
Chief, Money Laundering & Asset Recovery Section
Criminal Division
U.S. Department of Justice

By: /s/
Ann Brickley

17

                                                        Adam Schwartz  
                                                        Trial Attorneys  
                                                        (202) 598-2345

cc:     Alex Spiro, Esq. (by ECF)  
        Richard C. Smith, Esq. (by ECF)