```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,                     :
                                              :   MEMORANDUM & ORDER
              -against-                       :
                                              :   1:20-cr-390 (ENV)
JAVIER AGUILAR,                               :
                                              :
                        Defendant.            :
                                              :
------------------------------------------------------------ x
```

VITALIANO, D.J.

Defendant Javier Aguilar was arrested in July 2020 for his alleged role in a conspiracy to bribe foreign officials, in violation of the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd-2, 78dd-3, and to launder money, in violation of 18 U.S.C. § 1956.  *See* 18 U.S.C. § 371; Dkt. 13 ("Indictment").  With discovery ongoing and the trial date uncertain due to the COVID-19 pandemic, on November 3, 2020, Aguilar demanded a bill of particulars.  Dkt. 25 ("Def's Mot.").  For the reasons discussed below, defendant's motion for a bill of particulars is denied in its entirety.

## Background

Aguilar was arrested on the strength of a July 10, 2020 sealed complaint.  Dkt. 1 ("Compl.").[1]  On September 22, 2020, the complaint was unsealed after a grand jury had returned a two-count indictment against Aguilar alleging that he, together with others,

---

[1] The complaint is significantly longer than the indictment and contains greater detail on certain aspects of the bribery scheme, particularly concerning the flow of money between individuals and entities.  *E.g.* Compl. ¶¶ 25–26.  For simplicity, the term "indictment" refers generally to both of these instruments, except when used as a citation to a specific paragraph in the indictment.

1

orchestrated a conspiracy to bribe Ecuadorian officials and to mask the source of the bribery funds. Compl. ¶¶ 16–26; Indictment ¶ 2. As set forth in the indictment, Aguilar, who worked for the American subsidiary of an international trading company, is alleged to have conspired with others to send funds from the trading company to shell companies in Curacao, which had entered into sham contracts with a consulting company in the Cayman Islands. Compl. ¶¶ 25–26; Indictment ¶ 2. Consultants at the company, in turn, allegedly sent a portion of this money as bribes to certain Ecuadorian officials or their associates to help the trading company obtain desired contracts to purchase oil. *Id.*

## Legal Standard

"The [trial] court may direct the government to file a bill of particulars," *see* Fed. R. Crim. P. 7(f); a decision that rests within its sound discretion, *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003). Such an order is appropriate where needed "to apprise [the defendant] of the charges with sufficient precision so as to enable him to 'prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *Id.* (citation omitted). Thus, "[a] bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (citation omitted).

Importantly, an order directing the government to file a bill of particulars is not necessary "where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Id.* For this reason, "the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000), *aff'd sub*

2

*nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008). "Moreover, a bill of particulars is not to be used as a discovery device to seek and compel disclosure of the Government's evidence prior to trial." *United States v. Walters*, 963 F. Supp. 2d 125, 134 (E.D.N.Y. 2013) (citation omitted). "The ultimate test in determining whether a bill of particulars is appropriate is whether the information is necessary, not whether it is helpful to the defendant." *United States v. Wilson*, 493 F. Supp. 2d 364, 370 (E.D.N.Y. 2006) (citation omitted). When the sufficiency of disclosure is disputed, a defendant bears the burden of showing necessity, as well as any prejudice that will result from the denial of his request. *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019).

Discussion

Defendant's demand for a 17-part bill of particulars is, seemingly, an indiscriminate broadside against nearly every aspect of the government's indictment and disclosures—as the motion tells it, Aguilar professes to be critically unaware of the "who", "what", "when" and "how" of the case. Dkt. 25-1 ("Def's Mem.") at 1.[2] To obtain a bill of particulars on such a wide swath of information is a tall order, as "courts generally deny requests for bills of particulars concerning the 'wheres, when, and with whoms' of the crime." *United States v. Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012) (citation omitted); *see also United States v. Drivas*, No. 10-CR-771 NG, 2012 WL 3011023, at *3 (E.D.N.Y. July 19, 2012). Defendant argues that his case stands out from many knee-jerk demands for bills of particulars due to its complexity, as evidenced by the nearly 600,000 pages of documents produced by the government. Dkt. 30 ("Def's Reply") at 11. Flipping the government's shield of generous

---

[2] For ease of reference, the 17 numbered requests are referred to by the word "Request" followed by the corresponding numeral (*e.g.* "Request 1").

3

discovery into a sword, Aguilar argues that "the government cannot rely on the sheer quantity of the documents produced during discovery as an automatic substitute for identifying the charges with the necessary specificity." *United States v. Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003); *see* Def's Mem. at 13.

At times, though, the difference between a sword and a shield may not be apparent. Courts, therefore, must be on guard to ensure that a defendant, by a demand for a bill of particulars, does not "use the vastness or complexity of the alleged conspiracy and its attendant documentary evidence as a sword against the government when the indictment, discovery, and other information provided by the government adequately notify [defendant] of the charges against [him]." *Rigas*, 258 F. Supp. 2d at 305.[3] Keeping in mind the need to maintain this balance, each categorical group of particulars demanded by Aguilar will be separately examined.

I.   The Identity of Co-Conspirators and Unnamed Entities

Requests 2 and 16 together seek the names of all unindicted co-conspirators and all entities (including bank accounts) or co-conspirators allegedly used to direct payments to foreign officials. Def's Mot. at 5. These requests zero in on references in the indictment to unnamed "others" who participated in the conspiracy or were otherwise used as instrumentalities to further the conspiracy. *See, e.g.*, Indictment ¶¶ 1–2. In support of his request, defendant points to other complex prosecutions in which courts in the Second Circuit have granted bills of particulars. But, as aptly noted by one such court, "[a] review of the case law in this district reveals no clear distinction among circumstances in which courts grant a request for the names of known

---

[3] Defendant also contends that the coronavirus pandemic has exacerbated the need for a bill of particulars in his case by making communication with his attorneys and review of evidence more cumbersome. Yet, while the challenges presented by COVID-19 may require interventions by the Court, they do not move the needle in favor of defendant's motion for a bill of particulars.

4

unindicted co-conspirators and circumstances in which they do not." *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000)

In short, as the court in *United States v. Kahale* declared, "[t]here is no clear rule in the Second Circuit as to when a bill [particularizing] unindicted co-conspirators should be granted." 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009).[4]  The divergence in outcomes is perhaps not surprising in light of the six-factor test that is often used in such circumstances, which looks to:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to coconspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*United States v. Barrett*, 153 F. Supp. 3d 552, 572 (E.D.N.Y. 2015).

Tacked to this frame, given the size and complexity of the alleged conspiracy, which involved individuals affiliated with several companies and took place over the course of some five years, the first two factors tend to favor Aguilar.  Indeed, in its briefing and in the indictment, the government has made no effort to downplay the complexity of the bribery scheme alleged in the indictment.

Factors three and four are a wash in this case.  The government has identified by name the four most prominent co-conspirators in the indictment, Gov't Opp'n at 8, which should dispel

---

[4] *Compare United States v. Kanekar*, No. 17 CR 353, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) ("The request for the names of unindicted co-conspirators is a fairly common request and one that is generally granted by the district courts.") (quoting *United States v. Failla*, 1993 WL 547419 (E.D.N.Y. 1993)), *with United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others allegedly involved.").

a large part of Aguilar's professed uncertainty about the charges. But, clearly, there are others who are not specifically named. As for the large volume of pretrial disclosure in this case, on the other hand, the court in *Barrett* found that voluminous discovery weighed in support of the defendant's demand for particulars. 153 F. Supp. 3d at 573. Yet, at the same time, "the Government has provided extensive discovery, minimizing the need for a bill of particulars identifying the unindicted co-conspirators in this case." *United States v. Chalmers*, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006). So, it is true that there is weight on both sides and, in that dynamic, the scale does not tip.

The fifth and sixth factors are more helpful, as they shed light on what are generally important sources of the government's reluctance to provide particulars. While the government does not expressly discuss the possibility of danger to co-conspirators here, it does argue that its investigation into the alleged bribery scheme is ongoing and that there is a risk that unnamed co-conspirators located abroad may evade arrest. Dkt. 27 ("Gov't Opp'n") at 14. Indeed, the risk of flight is a far greater concern where, as here, investigations are international in scope, and this consideration has weighed heavily in other cases. *See, e.g.*, *Chalmers*, 410 F. Supp. 2d at 286.

Accordingly, in light of the professed potential of harm to the government's investigation and apprehension of individuals involved in the alleged bribery scheme, Request 2 is denied. Simply put, Aguilar has not met his burden to show that his countervailing desire for this information rises to the level of necessity demarked in *Barrett*. Precedent, moreover, makes clear that "[w]hile knowing the identity of unindicted coconspirators might be useful to the defense, the question is not whether the information would be useful to the defense, but rather whether it is necessary." *United States v. Solomonyan*, 451 F. Supp. 2d 626, 642 (S.D.N.Y. 2006) (internal quotations marks and citation omitted).

This rationale applies with even greater force to the related and significantly broader Request 16, which seeks the names of any entities that defendant or other co-conspirators used to direct payments to foreign officials. To the extent such information is necessary to enable Aguilar to understand the charges against him, the Court is satisfied that the government has made sufficient disclosures about these entities. *See* Gov't Opp'n at 11 (identifying various entities cited by defendant, as well as the banks at which accounts were held). While additional, more granular detail might help defendant, it is not required of the government through a bill of particulars. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.").

II.     Foreign Officials and Laws

Request 3 asks for the identities and roles, positions, or titles of the foreign officials who were allegedly bribed. These officials, referred to in the charging instruments as Ecuadorian Official #1 and #2, are respectively described as a "senior manager" at Petroecuador from 2010 to May 2017 and a holder of "various positions" in the Ecuadorian Ministry of Hydrocarbons from 2013 to 2016. Compl. ¶¶ 13–14. The government also states in its briefing that it has separately provided defendant with the actual identities of these individuals. Gov't Opp'n at 8. Defendant nonetheless maintains that this is insufficient, as the government has still not provided those officials' duties or responsibilities. Def's Reply at 6–7.

Clearly, between the government's description of these individuals' past roles and its provision of their actual identities, defendant has the necessary information to understand the nature of the charges against him as they pertain to these foreign officials and to build his defense. Defendant may uncover any additional desired information about these individuals through his review of document productions or his own investigation, but "a bill of particulars is

7

not a general investigative tool," *United States v. Abakporo*, 959 F. Supp. 2d 382, 389 (S.D.N.Y. 2013), and this particularization is not required.

As for defendant's Request 17, which asks for the specific provision of Ecuadorian penal law allegedly violated, it appears that the government has disclosed this information in its opposition briefing. *See* Gov't Opp'n at 4 (identifying Article 280 of the 2014 Ecuadorian Penal Code). With that disclosure, no bill of particulars is necessary on this point.

III.     Statements and Overt Acts

Nine of defendant's requests ask for a grab bag of information about the conspiracy, including requests concerning the date and content of alleged statements (Requests 1, 4, 5, 8, 11, 14), recordings (Requests 12, 13),[5] and overt acts (Request 10). Aguilar's chief complaint with the indictment and disclosures is that they are open-ended and non-exhaustive when discussing various statements and overt acts. Def's Reply at 5–6.

Upon review of the indictment and subsequent disclosures made by the government, Gov't Opp'n at 8–11, the Court is satisfied that Aguilar's grasp for the government's investigatory file far exceeds permissible bounds, and none of these particulars are needed "to apprise [him] of the essential facts of the crime[s] for which he has been charged." *United States v. Solnin*, 81 F. Supp. 3d 193, 209 (E.D.N.Y. 2015). As the very caselaw cited by defendant makes clear, the government is not obligated to exhaustively disclose, through a bill of particulars, all overt acts in furtherance of a conspiracy. *See, e.g.*, *Nachamie*, 91 F. Supp. 2d at 574 (requests for "the date that each conspirator joined the alleged conspiracy" are "routinely

---

[5] As acknowledged by defendant, the government has provided a chart listing the dates and participants in the calls in the various recordings that it has produced. Gov't Opp'n at 10; Def's Reply at 4 n.2. As a result, the Court deems Requests 12 and 13 resolved without a bill of particulars, and the bill sought by these requests is denied.

8

denied"); *Shkreli*, 2016 WL 8711065, at *7 ("[I]t is well-settled that there is no general requirement that the Government disclose in a bill of particulars all the overt acts it will prove in a conspiracy charge."); *see also United States v. Carroll,* 510 F.2d 507, 509 (2d Cir. 1975) (same).

Truly, for all of the ink spilled emphasizing the vastness and complexity of the alleged conspiracy, Aguilar fails to establish the key determinant favoring an order granting a bill of particulars, that is, the necessity of the information requested to his defense. *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). To be sure, Aguilar's indictment and the complaint may not detail every overt act in furtherance of the conspiracy or statement by a conspirator, but they do clearly outline of the course of the conspiracy, which, coupled with document discovery and other disclosures from the government, obviates the need for a bill of particulars. *Cf. Drivas*, 2012 WL 3011023, at *3. "To hold otherwise, would convert a motion for bill of particulars into a motion for wide-sweeping and burdensome discovery which is plainly not contemplated by Fed. R. Crim. P. 7(f)." *United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005). As a consequence, these requests are rejected as well.

IV.     Corrupt Payments

Defendant's Requests 6, 7, 9, and 15 seek details concerning allegedly corrupt payments made to the shell companies and consulting companies and, in turn, to foreign officials. Requests for bills of particulars concerning allegedly corrupt or fraudulent payments are treated with greater solicitude by courts in this Circuit due to the unfair burden that can be shifted to a defendant by forcing him to determine which payment, among many, the government will seek to prove at trial. *See Kahale*, 789 F. Supp. 2d at 376 (noting the "quintessential 'needle in a haystack' problem to defendants . . . faced with sifting through thousands of legitimate

9

transactions in an attempt to discover which transactions the government sought to prove were fraudulent").

The archetypal case for this proposition, relied upon heavily by Aguilar, is *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), in which the Second Circuit found that a bill of particulars was warranted where the government alleged that defendants had fabricated certain burglaries in their insurance claims, but did not specify which burglaries had been allegedly faked and which it believed had, in fact, occurred. *Id.* at 574. *Bortnovsky* held that this had the effect of shifting the burden onto defendants to prove that none of the burglaries had been faked. *Id.* at 575. Nor did the government's large document production ameliorate this problem, as defendants were "left unguided as to which documents would be proven falsified." *Id.*; *see United States v. Mahaffy*, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006) ("The discernible principle, then, is that a large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial.").

The present case is at least superficially similar to *Bortnovsky* in that it involves large volumes of discovery. A key distinction, however, is that the government contends here that *all* payments directed by defendant and his co-conspirators to the Cayman Islands consulting company were for the corrupt purpose of bribing the Ecuadorian officials. *See* Def's Opp'n at 15–16. Thus, the thousands of pages of records concerning these transactions are not a riddle for defendant to solve, but rather a detailed narrative of the allegedly corrupt payments. In other words, Aguilar has not been tasked with finding a "needle in a haystack," *Kahale*, 789 F. Supp. 2d at 376, but has rather been given a stack of needles. *See United States v. Dupree*, No. 10-CR-627 KAM, 2011 WL 5976006, at *7 (E.D.N.Y. Nov. 29, 2011). The impermissible burden shifting highlighted by the Second Circuit in *Bortnovsky* is simply not present here.

10

Defendant also takes issue with indefinite language in the indictment and complaint stating that the corrupt payments alleged are "among others" and "for example". Def's Reply at 15–16 (citing Compl. ¶¶ 18, 31; Indictment ¶ 2). Indeed, courts have granted requests for particulars in cases involving bribery where the government provides a non-exhaustive list of the benefits allegedly conferred as bribes. *See, e.g.*, *United States v. Ganim,* 225 F. Supp. 2d 145, 156–157 (D. Conn. 2002). However, such requests are typically denied where the charging instruments and discovery—including bank records—are sufficient so that "the defendant does not have to guess at the nature of the bribery scheme." *United States v. Issa*, No. 17-CR-00074 (CM), 2018 WL 461131, at *4 (S.D.N.Y. Jan. 9, 2018).

Consequently, the Court is satisfied that Aguilar will be sufficiently on notice of the nature of the alleged bribery scheme, provided that the government exhaustively discloses all records necessary for defendant to identify the payments. In its response to Requests 9 and 15, the government represents that paragraph 18 of the complaint exhaustively identifies the relevant payments. Gov't Opp'n at 9–10. Additionally, in its response to Requests 6 and 7, the government represents that it will produce records "in the coming weeks." *Id.* at 9. Thus, while the government need not supply a bill of particulars on this subject, it must provide the records, as promised, or risk being barred at trial from proving transactions that were not disclosed in a timely fashion.

11

## Conclusion

For the foregoing reasons, Aguilar's motion for a bill of particulars is denied in its entirety.

So Ordered.

Dated: Brooklyn, New York
       February 22, 2021

*/s/ Eric N. Vitaliano*
ERIC N. VITALIANO

United States District Judge