UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA                :
                                        :
                                        :
                                        :    SHORT FORM
         -against-                      :    MEMORANDUM & ORDER
                                        :
JAVIER AGUILAR,                         :    1:20-cr-390 (ENV)
                                        :
                        Defendant.      :
------------------------------------------------------------- x

VITALIANO, D.J.

Defendant Javier Aguilar is the subject of a Foreign Corrupt Practices Act prosecution relating to alleged corruption in the solicitation and award of contracts by foreign governmental entities for the sale of petroleum related products. *See* Superseding Indictment, Dkt. 120. Pretrial motion practice has resulted in the issuance of several orders, the most recent of which granted defendant's motion to dismiss Counts Two and Four of the Superseding Indictment, which pertained to a Mexico-related scheme, for want of venue. Dkt. 154.

The Court presumes familiarity of the parties with those orders and the underlying facts and procedural history of the case. As the parties are aware, trial in this matter was previously scheduled to commence on July 6, 2023, but has since been continued *sine die*. *See* May 17, 2023 text order. Currently, a status conference is calendared for June 7, 2023 to deal with the post-dismissal state of the Superseding Indictment.

Currently before the Court is the single motion *in limine* that has been filed. The Court, having considered the submissions of the parties, resolves the motion in the manner and for the reasons as set forth below.

1

| I. Government's *In Limine* Motion ||
|---|---|
| Motion | Ruling |
| (A) The government moves "to admit evidence of Aguilar's participation in a contemporaneous scheme to divert money for his own personal benefit from the same pool of funds used, and using the same methods and means employed by him, to further the charged bribery and money laundering schemes" (the "Diversion Scheme") either as direct evidence or under Federal Rule of Evidence 404(b). Gov't Mem., Dkt. 131, at 3.[1] | (A) Evidence of other acts allegedly committed by a criminal defendant can be admitted under either of two theories: either as direct evidence of the charged offense, or as "other crimes" evidence under Federal Rule of Evidence 404(b). *See United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989). Such evidence falls in the former category if it, *inter alia*, is "inextricably intertwined with the evidence regarding the charged offense." *Id.* (quoting *United States v. Weeks,* 716 F.2d 830, 832 (11th Cir. 1983)). The government alleges that all three sets of transactions—the Ecuador-related scheme, the Mexico-related scheme, and the Diversion Scheme—operated using overlapping co-conspirators, accounts, and agreements to create a single "slush fund" from which payments could then be disbursed. Gov't Mem. at 13–14; *see also* Order Denying Severance, Dkt. 140, at 4–5. Other courts in this circuit have admitted evidence of uncharged schemes as direct evidence under the "inextricably intertwined" ground |

---

[1] Page citations to the parties' briefing are with reference to ECF pagination.

2

where those schemes are similarly intertwined with the co-conspirators, operations, and institutions effectuating the charged schemes. *See, e.g., United States v. Tagliaferro*, 530 F. Supp. 3d 295, 300–01 (S.D.N.Y. 2021); *United States v. Faltine*, No. 13 Cr. 315 (KAM), 2015 WL 13309318, at *3 (E.D.N.Y. Feb. 2, 2015); *United States v. Mavashev*, 455 F. App'x 107, 112 (2d Cir. 2012).

Moreover, the government's stated reasons for seeking admission of the evidence include proving Aguilar's control of the accounts and the money within them. *See* Gov't Mem. at 13. To that end, evidence tending to prove that Aguilar used the accounts to send money to himself is also direct evidence of his ability to control the accounts—and therefore the conspiracy—more broadly. *See United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994); *United States v. Williams*, No. 13 Cr. 419 (S-2) (DLI), 2016 WL 4536864, at *5–6 (E.D.N.Y. Aug. 30, 2016). The Court therefore concludes that evidence of the Diversion Scheme constitutes direct evidence of the Ecuador-related scheme as charged in Counts One, Three, and Five.

3

Even if the Court had concluded that evidence related to the Diversion Scheme was not direct evidence, it would nevertheless have concluded that this evidence is admissible under Rule 404(b). The Second Circuit takes "an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (quoting *United States v. LaFlam,* 369 F.3d 153, 156 (2d Cir. 2004) (per curiam)). Such proper purposes for admitting uncharged conduct include to provide background information on the charged conduct, to show a defendant's modus operandi in carrying out the charged conduct, or to prove a defendant's intent or absence of mistake, all of which are relevant here. *See United States v. Siegel*, 717 F.2d 9, 16–17 (2d Cir. 1983), *abrogated in part on other grounds as recognized in Ingber v. Enzor*, 664 F. Supp. 814, 818 (S.D.N.Y. 1987).

Notwithstanding these findings, however, both direct evidence and Rule 404(b) evidence are subject to analysis under Federal Rule of Evidence 403, which

4

provides that evidence should not be admitted if its "probative value . . . is substantially outweighed by its potential for unfair prejudice." *Huddleston v. United States*, 485 U.S. 681, 691, 108 S. Ct. 1496, 1502, 99 L. Ed. 2d 771 (1988); Fed. R. Evid. 403. The probative value of the Diversion Scheme evidence to substantiate the Ecuador-related charges is not negligible, but neither is it particularly great. As discussed above, the government seeks to introduce this evidence to demonstrate Aguilar's control of the accounts involved in the charged conduct. But as Aguilar correctly points out, there are numerous other pieces of evidence from which the government can make this showing, including communications between Aguilar and his co-conspirator Hanst and between Aguilar and government agents. Def.'s Mem., Dkt. 132, at 19, 23. The cumulative nature of this evidence is a mark against admitting it. *See United States v. Nachamie*, 101 F. Supp. 2d 134, 142 (S.D.N.Y. 2000).

More critically, the potential for prejudice from evidence of the Diversion Scheme is significant. When making this determination, evidence should be "excluded as unfairly prejudicial when it is 'more

5

inflammatory than the charged crime.'" *United States v. Smothers*, No. 20 Cr. 213 (KAM), 2023 WL 348870, at *3 (E.D.N.Y. Jan. 20, 2023) (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)). It is easy to see here how the conduct at issue in the Diversion Scheme is more inflammatory than that in the Ecuador-related scheme. For one, the charged scheme allegedly involves Aguilar directing bribes in order to benefit his employer, while the Diversion Scheme allegedly involves him directing his employer's money to his own pockets. *See* Def.'s Mem. at 24. Even though both alleged schemes are criminal, the addition of evidence related to a scheme where Aguilar allegedly stole from his employer to benefit himself inescapably paints him in a significantly more negative light as a bad character. This is especially true where, as here, the pilfered money was allegedly spent on luxury goods and alimony payments, expenditures that many jurors could see as particularly unsavory. *See id.* at 13.

There is also a substantial risk of prejudice from confusion of the issues. As both parties have noted in their briefing, both the Ecuador-related scheme, which is the subject of the remaining charges, and the Mexico-

6

related scheme, which will likely be the subject of a forthcoming motion *in limine*, are complex and involve numerous moving parts. *See* Gov't Mem. at 4; Def.'s Mem. at 18. Adding evidence of another similar scheme that, as noted above, was contemporaneous with, structurally similar to, and used some of the same entities as those two schemes is likely to add to this complexity in a way that will likely cause undue delay and juror confusion. These facts now aid defendant's prejudice argument for the same reason they previously aided the government's "inextricably intertwined" argument. *See United States v. Stein*, 521 F. Supp. 2d 266, 271–73 (S.D.N.Y. 2007) (precluding introduction of evidence of "side payments" in a trial on a tax evasion and conspiracy to defraud scheme where, although "proof of the bare facts would be simple," the side deals' limited probative value was significantly outweighed by "[t]he risk that this evidence would confuse the issues, cause undue delay, and be used for an improper purpose.").

    Neither is this the sort of prejudice that can be resolved through limiting instructions. Although it is theoretically possible that the character issues could be

7

adequately mitigated through a jury instruction, the delay and confusion issues cannot be. If untangling the jumble of evidence of the Diversion Scheme from that of the charged scheme through a jury instruction were possible, doing so would be unnecessary, as defendant would be able to resolve the confusion itself in its case in chief.

Because the Court concludes that the slim probative value of the evidence of the Diversion Scheme is substantially outweighed by its potential for unfair prejudice, that evidence shall not be admitted either as direct evidence or as Rule 404(b) evidence.

So Ordered.

Dated: Brooklyn, New York
       June 1, 2023

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge

8