Case 1:20-cr-00390-ENV   Document 160   Filed 07/07/23   Page 1 of 10 PageID #: 2646

Clerk's Office
Filed Date: 7/7/2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE
JC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
UNITED STATES OF AMERICA,  :
                                                       :     MEMORANDUM & ORDER
        -against-  :
                                                     :     1:20-cr-390 (ENV)
JAVIER AGUILAR,  :
                                                     :
                           Defendant.  :
----------------------------------------------------------------- x

VITALIANO, D.J.

      Defendant Javier Aguilar moves to suppress certain electronically-stored information ("ESI") seized from third party Google LLC by the government pursuant to a warrant signed by Magistrate Judge Robert Levy on August 1, 2020. Def.'s Mem., Dkt. 129-1, at 5, 7–10; Spiro Decl. Ex. B, Warrant, Dkt. 130-9, at 3.[1] For the reasons discussed below, defendant's motion is denied.

## Background[2]

      On July 31, 2020, the government applied for a warrant to obtain from Google the contents of two of Aguilar's email accounts; Magistrate Judge Levy signed the warrant the following day. Def.'s Mem. at 7–10; Gov't Mem., Dkt. 139, at 5–7. The warrant authorized the government to seize any information that "constitutes fruits, contraband, evidence and instrumentalities of violations of the federal wire and bank fraud statutes, money laundering statutes, the Foreign Corrupt Practices Act ('FCPA'), bank fraud and statutes proscribing conspiracy to commit [those

---

[1] Page citations to the parties' memoranda and exhibits are with reference to ECF pagination rather than internal pagination.

[2] The underlying charges, the government's factual contentions, and the prior proceedings in the course of this prosecution have been extensively discussed in the Court's prior decisions in this case. *See United States v. Aguilar*, No. 20 Cr. 390 (ENV), 2022 WL 3139100, at *1–3 (E.D.N.Y. Aug. 5, 2022) (denying motion to suppress); Mem. & Order, Dkt. 140, at 1–3 (denying severance). These details will not be repeated here except for contextual clarity.

offenses], involving Javier Aguilar and occurring from July 1, 2015 to and including July 9, 2020." Gov't Mem. at 6 (quoting Warrant at 8) (internal citations omitted); Def.'s Mem. at 9.

Google produced the accounts and their contents, consisting of "more than 30 gigabytes of data" across approximately 174,300 individual records, on August 25, 2020. Gov't Mem. at 7. A week later, on September 1, 2020, a government "filter team" identified documents that were potentially privileged or from outside the time window authorized by the warrant, then released the remaining documents, of which there were approximately 160,000, to a separate government "case team" for full review for responsiveness. *Id.* at 8. On October 7, 2020, the case team released Bates-stamped copies of all 160,000 documents in its possession, irrespective of whether those documents were responsive, to Aguilar. *Id.* at 8–9. On October 8, 2020, the filter team did the same with the approximately 10,400 potentially privileged documents in its possession. *Id.* at 9.

Several reviews and related processes then took place in parallel over the succeeding two-and-a-half years. The case team reviewed the documents in its possession, including both the 160,000 released documents referenced above and additional documents from several other productions received between March 2020 and September 2022, through a series of targeted searches. *Id.* at 9, 17–18, 17 n.8, 18 n.9. Separately, Aguilar and the filter team worked to determine which potentially privileged documents were, in fact, privileged; the non-privileged documents were then released to the case team for review. *Id.* at 9. Following the filing of the Superseding Indictment, the case team revised its search terms. *Id.* at 9–10. Shortly thereafter, the case team learned of a subset of approximately 9,700 documents that were not searchable and which therefore had not been included in its review, which it then began reviewing manually. *Id.* at 10–11. At the time the government submitted its memorandum in opposition to the instant

motion, that final review was set to be complete "within two weeks," following which the responsiveness review of documents seized under the warrant would be complete. *Id.* at 11–12.

## Legal Standard

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const., amend. IV. This includes a requirement that, when evidence is seized pursuant to a warrant, that warrant must both be facially reasonable and be executed in a reasonable manner. *See United States v. Ganias*, 824 F.3d 199, 209–10 (2d Cir. 2016) (en banc). When a search or seizure is unreasonable, courts may impose an appropriate remedy, including, as a "last resort" to deter future similar bad behavior by courts or law enforcement officials, suppression of evidence collected pursuant to the unreasonable search or seizure. *Davis v. United States*, 564 U.S. 229, 237, 131 S. Ct. 2419, 2427, 180 L. Ed. 2d 285 (2011) (quoting *Hudson v. Michigan,* 547 U.S. 586, 591, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006)).

## Discussion

### I.  Standing

To demonstrate standing to challenge a search or seizure, a movant must show a "legally cognizable privacy interest in the searched premises." *United States v. Gomez*, 199 F. Supp. 3d 728, 738 (S.D.N.Y. 2016), *aff'd*, 751 F. App'x 63 (2d Cir. 2018) (quoting *United States v. Ruggiero*, 824 F. Supp. 379, 392–93 (S.D.N.Y. 1993)). Courts have found that people have such a privacy interest in personal email accounts of the kind at issue here. *See United States v. Nagi*, No. 15 Cr. 148A, 2017 WL 11528978, at *4 (W.D.N.Y. Jan. 6, 2017), *report and recommendation adopted*, 254 F. Supp. 3d 548 (W.D.N.Y. 2017) (collecting cases). The government does not dispute that these email accounts were Aguilar's (indeed, that is the reason they seized the records therein) or that Aguilar had a privacy interest in those accounts. *See* Gov't Mem. at 8–9, 22.

Without serious question, it is apparent that Aguilar has standing to challenge the warrant and its execution.

    II.    <u>Reasonableness of warrant</u>

Aguilar facially challenges the warrant as overbroad. This argument fails. In making this point, Aguilar contends that "[a] warrant authorizing the seizure of hundreds of thousands of records without limitation to the subject matter of the government's investigation . . . is unconstitutional." Def.'s Mem. at 19. But as Aguilar himself notes, the warrant here only allowed the government to "obtain" the accounts and their contents, "'search'" them for responsive materials, and "'seize' only the responsive materials for use in the government's investigation." Def.'s Mem. at 8–9 (quoting Warrant). Moreover, the warrant specifically outlined the offenses that were responsive—such as "[e]vidence concerning payments . . . from or to Vitol" or the alleged co-conspirators, "[e]vidence related to bribery, corruption, or money laundering," and "[e]vidence indicating [Aguilar's] state of mind as it relates to the crimes under investigation"—which fit squarely within the scope of the crimes charged in the Indictment and the Superseding Indictment. *See* Gov't Mem. at 6–7 (quoting Warrant at 8–9).

Indeed, the very caselaw Aguilar cites in his brief shows that such warrants are reasonable. For example, although the court in *United States v. Metter* concluded that a particular search and seizure was unreasonable, it first concluded that the warrants underlying that search and seizure "comport[ed] with modern standards of reasonableness" insofar as they "requested permission to seize computer hard drives and email accounts and to image them offsite" and "included detailed descriptions of the type of documents and information indicative of the criminal activity at issue in this case." 860 F. Supp. 2d 205, 214 (E.D.N.Y. 2012). This makes sense given courts' routine approval of "a two-step process" through which law enforcement "seize[s] or cop[ies] the entire

4

storage medium" and then investigators "review [the seized records] later to determine what electronically stored information falls within the scope of the warrant." *United States v. Estime*, No. 19 Cr. 711 (NSR), 2020 WL 6075554, at *13 (S.D.N.Y. Oct. 14, 2020) (quoting Fed. R. Crim. P. 41(e)(2)(B), 2009 Advisory Committee Notes).  Because this warrant follows a similar process and lays out with particularity the documents to be seized and the relevant documents to be kept following review, the Court concludes that the warrant was facially reasonable.

III.     Reasonableness of execution

As his primary argument, Aguilar alleges that the government's execution of the warrant was unreasonable.  He makes this claim on several bases.  First, he notes that many of the documents that the government initially seized in August 2020 and then produced back to him in October 2020 were not relevant.  *See* Def.'s Mem. at 6, 10, 15–16.  However, as discussed above, this is unsurprising, as seizures of ESI can, and often do, require seizures of all documents in a particular file or drive prior to a comprehensive review of the files seized to determine which are relevant and can be kept.  *See United States v. Zottola*, No. 18 Cr. 609 (HG), 2022 WL 3682222, at *4 (E.D.N.Y. Aug. 25, 2022) ("It is the nature of electronic data that irrelevant, personal materials will be comingled with relevant evidence, requiring seizure of the devices in question to separate the wheat from the chaff.").  Courts have specifically held that it is reasonable, before a responsiveness review has been completed, to make an initial production to the defendant of the full set of documents seized.  *See id.* at *4 & n.1.

Next, Aguilar contends that the government took too long to complete its review of the production.  He notes that the time between the government's receipt of the ESI and the conclusion of its review lasted more than two-and-a-half years.  Def.'s Mem. at 6.  However, "there is no established upper limit as to when the government must review seized electronic data to determine

5

whether the evidence seized falls within the scope of a warrant." *Metter*, 860 F. Supp. 2d at 215. While it is true that such review must be completed within a reasonable amount of time, numerous cases have held that "a delay of several months or even years between the seizure of electronic evidence and the completion of the government's review of it is reasonable." *United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) (quoting *United States v. Jarman*, 847 F.3d 259, 267 (5th Cir. 2017)); *see also United States v. Almaleh*, 17 Cr. 25 (ER), 2022 WL 602069, at *20 (S.D.N.Y. Feb. 28, 2022) (same); *United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 1017533, at *12 (S.D.N.Y. Mar. 2, 2019) (same); *cf. United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 313 n.14 (S.D.N.Y. 2018) (*Metter* "stands for the principle that the Government may not retain electronic data 'with no plans whatsoever to *begin* review of that data,' not that the Government may not retain data where encryption impedes its efforts to begin review." (quoting *Metter*, 860 F. Supp. 2d at 215)).

District courts in this circuit have routinely found reviews even more directly analogous to this one to be reasonable. One court found that a review that "commenced shortly after execution" of the warrant and concluded "nearly three months prior to defendant's scheduled trial" was reasonable. *Sosa*, 379 F. Supp. 3d at 222. Another court found that a responsiveness review that continued "roughly three years after issuance of the first search warrant in April 2014 and only one year after issuance of the last warrant in 2016" was "reasonable under the circumstances," particularly given that the returns included "over one million documents in at least three different languages." *United States v. Nejad*, 436 F. Supp. 3d 707, 735 (S.D.N.Y. 2020). Yet another noted that such reviews are likely to take longer and to necessitate longer retention of documents that initially seem non-responsive where code words, such as "potatoes" in place of "cocaine," are used. *In re Google Email Account*, 33 F. Supp. 3d 386, 398 (S.D.N.Y. 2014), *as amended* (Aug.

6

7, 2014). Clearly, while these cases do not create a composite bright-line rule, they are highly instructive. For example, although the review at issue here was somewhat smaller than that in *Nejad*, it still covered over 30 gigabytes of data spread across over 170,000 documents and over 500,000 pages in at least two languages. Def.'s Mem. at 10; Gov't Mem. at 7, 17–19. It also required an involved back-and-forth between the parties on possible privilege issues, a supplemental review of nearly 10,000 files that were discovered to be "non-searchable," and several additional productions received by the government on a rolling basis between March 2020 and September 2022. Gov't Mem. at 7–12, 17–18, 17 n.8, 18 n.9. Here, almost exactly like in *Sosa*, the government began its review almost immediately upon receipt of the files, worked with Aguilar throughout its process of reviewing them, and had nearly concluded its review at the time that its memorandum was filed, four months before trial was then scheduled to begin and even longer before it will in fact begin. *See id.* at 7–12. And like in *Google Email*, the government allegedly discovered over the course of its investigation that, as it alleges in the Superseding Indictment, Aguilar and his co-conspirators used a variety of code words, such as "shoes," "medicine," "invitations," and "coffee," to refer to the alleged bribes. *See id.* at 18–19.

Aguilar also cries foul as to the government's continued retention of documents that it had determined were non-responsive. But continued retention of a complete copy of all seized documents until trial concludes is normal. *See, e.g.*, *Mendlowitz*, 2019 WL 1017533, at *13 ("Mendlowitz fails to cite controlling precedent requiring the Government to divest itself of non-responsive ESI from an electronic device prior to trial."); *Almaleh*, 2022 WL 602069, at *20 ("The government has properly retained the electronic devices that remain in its possession, because it 'has an interest in preserving seized electronic devices for purposes of introducing data stored therein at trial.'") (quoting *Mendlowitz*, 2019 WL 1017533, at *12). The ostensibly contrary

7

precedent to which Aguilar points does not adequately support his position. The Second Circuit explicitly declined to consider the constitutionality of prolonged retention of non-responsive documents in its opinion affirming the reasonableness of the seizure in *United States v. Ganias*, 824 F.3d 199, 220–21 (2d Cir. 2016) (en banc). The court in *United States v. Wey* "reache[d its] conclusion based on the [w]arrants' lack of particularity and overbreadth" rather than on officers' execution of the warrant. 256 F. Supp. 3d 355, 410–11 (S.D.N.Y. 2017). And the court's observations in *United States v. Romain* regarding retention of unresponsive records relied heavily on the original panel's decision in *Ganias*, which was reversed on *en banc* review. No. 13 Cr. 724, 2014 WL 6765831, at *8 (S.D.N.Y. Dec. 1, 2014) (quoting *United States v. Ganias*, 755 F.3d 125, 136 (2d Cir. 2014), *rev'd en banc*, 824 F.3d 199). In light of all of these facts, particularly the reasonableness of the underlying warrant and the government's following of the ordinary process of executing such a warrant, the Court concludes that the government's execution here was reasonable.

    IV.    <u>Inappropriate remedial demand</u>

Because the Court concludes that the search and seizure here were reasonable, it need not decide on a remedy. Nevertheless, the Court notes that, "even if the Government's retention of electronic media containing both responsive and non-responsive data was unreasonable, blanket suppression, as [Aguilar] advocates, would not be appropriate and is not supported by the law." *Mendlowitz*, 2019 WL 1017533, at *13. As discussed above, blanket suppression is a "last resort" to be deployed only when absolutely necessary, *Davis*, 564 U.S. at 237 (quoting *Hudson*, 547 U.S. at 591), while the "normal remedy" for such improper retention of certain documents is "suppression and return of those items" only, rather than suppression of all items identified in the search. *Mendlowitz*, 2019 WL 1017533, at *13 (quoting *United States v. Matias*, 836 F.2d 744,

8

747 (2d Cir. 1988)).  The government's conduct here, even if it were deemed unreasonable, was clearly not in "flagrant disregard" of the terms of the warrant or of the law, *Matias*, 836 F.2d at 747 (quoting *United States v. Medlin*, 798 F.2d 407, 411 (10th Cir. 1986)), and therefore would not warrant the extreme remedy of blanket suppression.

V.    An evidentiary hearing is unnecessary

Aguilar has not demonstrated the need for an evidentiary hearing on this issue, even though, as the movant, it is his burden to do so by "showing the existence of disputed issues of material fact."  *United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) (quoting *United States v. Washington,* No. 12 Cr. 146 (JPO), 2012 WL 5438909, at *8 (S.D.N.Y. Nov. 7, 2012)).  For the reasons explained in detail above, Aguilar has failed to demonstrate that "contested issues of fact going to the validity of the search are in question."  *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (quoting *United States v. Licavoli,* 604 F.2d 613, 621 (9th Cir. 1979)).  His speculation regarding the precise timeline and methodology of the government's review and his repeated frustration with the fact that some irrelevant documents were seized, *see* Reply Mem., Dkt. 143, at 16, make no difference, given that, as also discussed above, the review fit within acceptable bounds and the seizure was proper.  And his reliance on the Second Circuit's recent decision in *United States v. Lauria* is also unavailing, as the court's ruling in that case, in contrast to this Court's ruling here, depended on the "numerous misstatements" in the affidavits at issue. 70 F.4th 106, 116 (2d Cir. 2023); *see also* Def.'s Notice, Dkt. 157; Gov't. Resp., Dkt. 158.

<u>Conclusion</u>

For the foregoing reasons, defendant's motion to suppress the ESI seized pursuant to the search warrant issued by Magistrate Judge Robert Levy is denied.

So Ordered.

Dated: Brooklyn, New York
       June 24, 2023

                                            /s/ Eric N. Vitaliano
                                            ERIC N. VITALIANO
                                            United States District Judge