UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

   - against -

JAVIER AGUILAR

            Defendant.

– – – – – – – – – – – – – – – – – – – – – – – – –X

No. 20 Cr. 390 (ENV)

**Served Via ECF On August 9, 2023**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE MEXICO-RELATED PORTION OF COUNT FIVE AS DUPLICITOUS**

---

                        **QUINN EMANUEL URQUHART
                         & SULLIVAN, LLP**

                         Alex Spiro
                         Daniel R. Koffmann
                         George T. Phillips
                         51 Madison Avenue, 22nd Floor
                         New York, NY 10010
                         (212) 849-7000
                         alexspiro@quinnemanuel.com
                         danielkoffmann@quinnemanuel.com
                         georgephillips@quinnemanuel.com

                         Michael T. Packard
                         111 Huntington Avenue, Suite 520
                         Boston, MA 02199
                         (617) 712-7100
                         michaelpackard@quinnemanuel.com

                         *Counsel for Defendant Javier Aguilar*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND.......................................................................................................................... 3

    A.    The Alleged Ecuador and Mexico Bribery Schemes.................................................. 3

    B.    This Court's Prior Rulings ......................................................................................... 4

    C.    The New Indictment in the Southern District of Texas ............................................. 5

LEGAL STANDARD .................................................................................................................. 6

ARGUMENT............................................................................................................................... 7

I.    Count Five is Duplicitous Because it Charges Two Distinct Offenses in One Count........ 7

II.    Count Five's Duplicity Prejudices Mr. Aguilar................................................................. 9

III.    Narrowing Count Five Protects Mr. Aguilar's Constitutional Rights and Promotes Judicial Economy Without Prejudicing the Government. ............................................... 14

IV.    Dismissal is the Only Appropriate Remedy. ................................................................. 15

CONCLUSION............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Aracri,*
968 F.2d 1512 (2d Cir. 1992) ........................................................................................ 9

*Ashe v. Swenson,*
397 U.S. 436 (1970) ................................................................................................ 13, 14

*United States v. Borden Co.,*
308 U.S. 188 (1939) ...................................................................................................... 16

*Bruton v. United States,*
391 U.S. 123 (1968) ...................................................................................................... 10

*United States v. Cook,*
557 F.2d 1149 (5th Cir. 1977) ....................................................................................... 10

*United States v. Cooper,*
966 F.2d 936 (5th Cir. 1992) ......................................................................... 6, 7, 11, 13

*United States v. Felix,*
503 U.S. 378 (1992) ...................................................................................................... 14

*United States v. Gordon,*
844 F.2d 1397 (9th Cir. 1988) ......................................................................................... 7

*United States v. Hardy,*
762 F. Supp. 1403 (D. Haw. 1991) ................................................................................ 16

*United States v. Henry,*
848 F.3d 1 (1st Cir. 2017) .............................................................................................. 11

*United States v. Holley,*
942 F.2d 916 (5th Cir. 1991) ........................................................................................... 8

*United States v. Kakos,*
483 F.3d 441 (6th Cir. 2007) ..................................................................................... 7, 16

*United States v. Killeen,*
No. 98 Cr. 143 (AGS), 1998 WL 760237 (S.D.N.Y. Oct. 29, 1998) ........................ 14, 15

*United States v. Margiotta,*
646 F.2d 729 (2d Cir. 1981) ..................................................................................... 7, 8, 9

*United States v. McDermott*,
  245 F.3d 133 (2d Cir. 2001)................................................................................. 10

*United States v. Munoz-Franco*,
  986 F. Supp. 70 (D.P.R. 1997)............................................................................ 16

*United States v. Murray*,
  618 F.2d 892 (2d Cir. 1980)............................................................ 6, 8, 9, 13, 15

*United States v. Novak*,
  443 F.3d 150 (2d Cir. 2006)................................................................................ 12

*United States v. Pietrantonio*,
  637 F.3d 865 (8th Cir. 2011).......................................................................... 12, 16

*Rep. of Turkey v. Christie's, Inc.*,
  527 F. Supp. 3d 518 (S.D.N.Y. 2021)................................................................. 11

*United States v. Ricciardi*,
  40 F.R.D. 135 (S.D.N.Y. 1965).......................................................................... 7, 16

*United States v. Rigas*,
  605 F.3d 194 (3d Cir. 2010) (en banc)................................................................. 7

*United States v. Rosenblatt*,
  554 F.2d 36 (2d Cir. 1977).................................................................................... 8

*United States v. Saavedra*,
  223 F.3d 85 (2d Cir. 2000).................................................................................. 13

*United States v. Schlei*,
  122 F.3d 944 (11th Cir. 1997)............................................................................. 12

*United States v. Shepherd*,
  739 F.2d 510 (10th Cir. 1984)............................................................................. 11

*United States v. Shorter*,
  874 F.3d 969 (7th Cir. 2017)............................................................................... 11

*United States v. Sturdivant*,
  244 F.3d 71 (2d Cir. 2001)......................................................................... 7, 14, 15

*United States v. Viserto*,
  596 F.2d 531 (2d Cir. 1979)............................................................................ 7, 16

## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. III, § 2, cl. 3 ...................................................................... 12

U.S. Const. amend. V ....................................................................1, 6, 9, 13

U.S. Const. amend. VI.................................................................1, 6, 9, 12

18 U.S.C. § 1952 ............................................................................................. 5

Tex. Penal Code § 32.43 .............................................................................. 5

Fed. R. Crim. P. 8..................................................................................1, 6, 14

Fed. R. Crim. P. 12............................................................................... 1, 6

Fed. R. Crim. P. 18................................................................................... 12

Fed. R. Evid. 402........................................................................................ 2, 11

Fed. R. Evid. 403........................................................................................ 2, 11

Fed. R. Evid. 404....................................................................................2, 4, 11, 15

## Other Authorities

1A Wright & Miller, *Federal Practice & Procedure – Criminal* § 143 (5th ed. Apr. 2023 update)......................................................... 6

Defendant Javier Aguilar moves the Court under Rules 8(a) and 12(b)(3)(B)(i) of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the U.S. Constitution to dismiss the Mexico-related portion of Count Five, the money-laundering conspiracy charge.[*]

## **PRELIMINARY STATEMENT**

The Court should dismiss the Mexico-related portion of Count Five because, as charged, Count Five is duplicitous; the duplicity is prejudicial to Mr. Aguilar; not even the most painstaking jury instructions or special verdict form can cure that prejudice; and the prejudice is entirely unnecessary now that the government has indicted Mr. Aguilar separately in the Southern District of Texas on five charges arising out of the same allegations underlying the Mexico-related portion of Count Five.

The Superseding Indictment before this Court is clear on its face that the alleged Ecuadorian and Mexican schemes are separate and distinct. The only apparent connections between the two are that Mr. Aguilar was the alleged payor working for his employer, Vitol, and that Lionel Hanst and "Co-Conspirator #1" processed transfers to alleged coconspirators. Otherwise, the two alleged schemes involve different countries; different alleged coconspirators; different alleged foreign officials; different alleged modes of execution; and different kinds of contracts, commodities, and economic objectives. Nor can the government credibly argue otherwise: it chose to charge the Mexico- and Ecuador-related schemes as *separate* conspiracies and *separate* substantive violations of the Foreign Corrupt Practices Act ("FCPA") in this Court, and now—having dismissed all but one vestige of the Mexico-related charges from this case—it has charged the Mexico-related scheme anew in a *separate case* in a *separate district*.

---

[*]    Unless otherwise indicated, this brief omits from quotations and citations all internal quotation marks, alterations, footnotes, and citations. The "Mexico-related portion" refers to the part of Count Five that concerns the alleged "Mexico Bribery Scheme" described in the Superseding Indictment. *See* ECF No. 120 § III.C, ¶¶ 37–46, 50–54.

Yet despite the many differences between the two alleged schemes, the government has crammed both into a single charge before this Court through Count Five. This is improper. Combining these distinct sets of allegations is duplicitous, prejudicial to Mr. Aguilar, and unduly burdensome for the Court and the jury. Count Five's duplicity threatens Mr. Aguilar's right to a unanimous and properly considered verdict because even the most eager and attentive jury cannot reasonably be expected to disentangle the web of substantive and potential limited-purpose evidence for multiple alleged schemes after this months-long trial concludes. That duplicity also may enable the government to introduce evidence about the alleged Mexico scheme that otherwise would be barred or limited by Rules 402, 403, and 404(b) of the Federal Rules of Evidence. This, in turn, unduly burdens the Court and jury by adding weeks of testimony to an already lengthy trial involving complex financial and accounting records, translators and translated documents, and the arcane economics of state-to-state oil deals. And given the government's concession that this district lacks venue over the Mexico-related offense conduct, this duplicity continues to threaten Mr. Aguilar's right to have each distinct offense tried in a constitutionally compliant venue.

All these forms of prejudice are unnecessary and excessive now that the government has opened a second front in its yearslong prosecution of Mr. Aguilar, charging him in the Southern District of Texas in a five-count indictment that includes two counts of substantive money laundering for the *exact same* alleged conduct that undergirds the Mexico-related portion of Count Five. There is no reason to jam the alleged Mexico scheme into one needlessly complex, multi-month trial in this district when the government will try that very same scheme separately in the Southern District of Texas. Nor is there any reason to threaten Mr. Aguilar's right against double jeopardy by trying the alleged Mexico scheme in Brooklyn, solely through a duplicitous

2

charge, with the government poised to take a second bite at the apple by trying the same alleged scheme again in Houston.

Mr. Aguilar deserves the chance to defend himself against the Ecuador-related charges that actually belong in this district without the prejudice, complications, and distractions of defending against the Mexico-related allegations that the government now has brought elsewhere. This Court, and the jury this Court will seat, will benefit too, by ensuring that Mr. Aguilar is tried fairly and efficiently in a focused, streamlined proceeding, rather than a protracted, needlessly complicated trial with intractable jury instructions. Meanwhile, the government suffers no prejudice—*none*—before it travels to Texas to try Mr. Aguilar on the Mexico scheme. And all involved, including the government and two courts, will benefit from avoiding the obvious double jeopardy issues that inevitably will follow from trying the Mexico scheme in this Court before trying it again in a different court.

The Court should grant the motion.

## BACKGROUND

### A.      The Alleged Ecuador and Mexico Bribery Schemes

The government superseded its indictment against Mr. Aguilar in December 2022 to add, among other things, new allegations about a purported "Mexico Bribery Scheme." ECF No. 120 § III.C. The government distinguished the alleged "Mexico Bribery Scheme" from the previously charged "Ecuador Bribery Scheme" by setting them out in different paragraphs and different sections of the indictment. *Compare id.* § III.B., ¶¶ 25–36, 47–49 (Ecuador), *with id.* § III.C, ¶¶ 37–46, 50–52 (Mexico); *see also id.* ¶ 54 (table separately identifying the "Ecuador" and "Mexico" "Scheme[s]"). It also separated the two distinct schemes by underscoring their different means, methods, and objectives: the two schemes allegedly involved bribing different foreign officials, in different countries, at different times, through different groups of middlemen, to get

3

different "improper advantages," in connection with different kinds of contracts, involving different commodities. *See id.* (same comparisons).

Recognizing the distinction between the alleged Ecuador and Mexico schemes, the government charged them separately. Counts One and Three charged conspiracy and substantive violations of the FCPA involving the alleged Ecuador scheme, while Counts Two and Four separately charged those same crimes for the alleged Mexico scheme. *See id.* ¶¶ 47–54. None of those counts charged both schemes together. Even the conspiracy counts were separate: one for Ecuador and another for Mexico. *See id.* (Counts One and Two).

Only Count Five—the money-laundering conspiracy count—jams these two separate schemes into one charge. *See id.* ¶¶ 55–56. It alleges that Mr. Aguilar and unspecified "others" conspired to launder money to promote and conceal several distinct "Specified Unlawful Activities," namely: (1) "felony violations [(plural)] of the FCPA," and (2) "offenses against a foreign nation involving bribery of a public official" or misuse of public funds by a public official in violation of both the "Ecuadorian Penal Code" and the "Mexican Penal Code." *Id.* ¶ 56.

### B.    This Court's Prior Rulings

After receiving the Superseding Indictment, Mr. Aguilar moved to sever and to dismiss for lack of venue Counts Two, Four, and the Mexico-related portion of Count Five. *See* ECF Nos. 127, 145, 147. The Court declined to sever the two schemes, holding that the alleged Ecuador and Mexico bribery schemes, although distinct, were "related enough to justify joinder," and that Mr. Aguilar was not prejudiced because the Court likely would admit evidence of one scheme to prove the other under Rule 404(b). ECF No. 140 at 7, 12–13. After additional briefing, the Court dismissed Counts Two and Four—the Mexico-related FCPA charges—because the government conceded that "no part of the underlying Mexico-related scheme took place in this district." ECF No. 154 at 2, 6. But the Court left Count Five intact, even though it charged a single conspiracy

4

"to launder the proceeds of both the Ecuador- and Mexico-related schemes." *Id.* at 3. The Court acknowledged that the question of what to do with the Mexico-related portion of Count Five was "complicated" given the government's venue concession, but ultimately declined to dismiss the Mexico-related portion "without prejudice to its renewal at trial" should the government "fail[] to show by the preponderance of the evidence that venue is proper as to that count." *Id.* at 2, 4.

## C.    The New Indictment in the Southern District of Texas

It is now clear that the government will seek first to try Mr. Aguilar on both alleged bribery schemes in this district, and then to try him again on the alleged Mexico scheme in the Southern District of Texas. On August 3, 2023, the government obtained an indictment in that district charging Mr. Aguilar with five counts—each concerning only the alleged Mexico scheme. ECF No. 166-1 (Indictment, *United States v. Aguilar*, No. 4:23 Cr. 335 (GCH) (S.D. Tex.)). The first two counts in the new indictment are the same Mexico-related conspiracy and substantive FCPA charges that this Court dismissed for lack of venue. *See id.* ¶¶ 30–36. The third count asserts that Mr. Aguilar violated the Travel Act by committing commercial bribery of private-sector fiduciaries in violation of Texas state law. *See id.* ¶¶ 37–38 (citing 18 U.S.C. § 1952 and Tex. Penal Code § 32.43). The fourth and fifth counts are substantive money-laundering counts relating to the alleged Mexico scheme. *Id.* ¶¶ 39–40.

All these counts arise from the same alleged "Mexico Bribery Scheme" that is before this Court only through Count Five. *See id.* § III.B. None concerns the alleged Ecuador scheme, which the government has charged only in this district. The new indictment never mentions any variant of the word "Ecuador."

5

*    *    *

As a result of this Court's prior rulings and the government's charging decisions, the government no doubt will attempt to introduce at trial in this district *all* its evidence of *both* the alleged Ecuador and Mexico bribery schemes—all while getting a second crack at the Mexico scheme through a separate trial in Houston. This improper and inefficient outcome is possible for one reason: because the government crammed both these distinct schemes into *one* money-laundering conspiracy count in this district, rather than charging them separately in two different counts, in two different indictments, in two different and properly venued districts.

## LEGAL STANDARD

Under Rule 8(a) of the Federal Rules of Criminal Procedure, the government may charge a defendant "with two or more offenses" only if the indictment sets those offenses out "in separate counts." Because the rule demands "separate counts" for each distinct "offense[ ]," the government may charge a single offense only once in an indictment, and each count must contain only one offense. *See* 1A Wright & Miller, *Federal Practice & Procedure – Criminal* § 143 (5th ed. Apr. 2023 update). The latter requirement triggers the prohibition against "duplicity." *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980); *see also* Fed. R. Crim. P. 12(b)(3)(B)(i) (defendants may challenge "defect[s] in the indictment," such as a charge that "join[s] two or more offenses in the same count (duplicity)").

The prohibition against duplicity derives from "[i]mportant policy considerations" fundamental to a defendant's rights under the Fifth and Sixth Amendments. *Murray*, 618 F.2d at 896 ("[T]he prohibition of duplicity is said to implicate [among others] a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution."); *accord, e.g., United States v. Cooper*, 966 F.2d 936, 939 n.3 (5th Cir. 1992) (noting similar constitutional concerns and adding

6

that a duplicitous count may result in "prejudicial evidentiary rulings at trial"). The rule against duplicity thus has "constitutional dimensions," and is no "mere pleading requirement." *United States v. Rigas*, 605 F.3d 194, 212 (3d Cir. 2010) (en banc).

To establish that an indictment is "impermissibly duplicitous," a defendant must show (1) that the indictment "combines two or more distinct crimes into one count," and (2) "the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 & n.3 (2d Cir. 2001) (Sotomayor, J.). Courts consider the language and structure of the indictment to determine whether a count is duplicitous. *See, e.g.*, *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988) ("[A] duplicity objection can easily be made before trial because a duplicity claim is directed at the *face* of the indictment and not at the evidence presented at trial." (original emphasis)).

If a count is duplicitous, a court may remedy it before trial by, among other things, directing the government to choose which offense it wants to proceed on while dismissing the remaining offense(s) contained in that count, *Sturdivant*, 244 F.3d at 79, or by making that choice itself by dismissing all or part of that count, *see, e.g.*, *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007) (defendants may "request that a duplicitous indictment be dismissed"); *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir. 1979) (same); *United States v. Ricciardi*, 40 F.R.D. 135, 135 (S.D.N.Y. 1965) ("[i]n a proper case, a count in an indictment which is bad for duplicity should be dismissed").

## ARGUMENT

### I.    COUNT FIVE IS DUPLICITOUS BECAUSE IT CHARGES TWO DISTINCT OFFENSES IN ONE COUNT.

Count Five is duplicitous because it charges two distinct conspiracies to launder money for two different alleged bribery schemes—one for Mexico, another for Ecuador. A count is duplicitous where (as here) it "contains several allegations that could have been stated as separate

7

offenses," and warrants relief when it "risks unfairness to the defendant." *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981); *see also United States v. Holley*, 942 F.2d 916, 928 (5th Cir. 1991) (if each separate part of a count "would constitute a crime," then "each should be alleged in a separate and distinct count of the indictment" because the failure to do so violates the rule against duplicity).

Although applying the duplicity rule to a conspiracy charge can "pose[ ] unique issues" when it is unclear whether there were multiple conspiracies or "a single agreement [ ] encompass[ing] multiple illegal objects," *Murray*, 618 F.2d at 896–97, there are no such complexities here, *see, e.g.*, *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) (reversing conviction and ordering dismissal of indictment where indictment charged two conspiracies in a single count). The government affirmatively charged the Ecuador and Mexico bribery schemes as two distinct conspiracies in this district, ECF No. 120 (Counts One and Two), and then doubled down on the two schemes' distinctions by charging Mr. Aguilar in the Southern District of Texas with conspiracy as to *only* the alleged Mexico scheme, ECF No. 166-1 (Count One). The government has never disputed that it could have charged the Ecuador- and Mexico-related money-laundering schemes separately. Nor could it make such an argument, given that it has charged multiple individuals with conspiracy to commit money laundering as to *only* the alleged Mexico scheme. *See* Spiro Decl., Exs. A–B (indictments charging Carlos Espinosa Barba and Gonzalo Guzman Manzanilla with money-laundering conspiracy). The government's decision to charge Mr. Aguilar in Houston with two counts of substantive money laundering concerning only the alleged Mexico scheme further underscores the two alleged schemes' distinctions. *See* ECF No. 166-1 (Counts Four and Five).

Having charged the alleged Mexico and Ecuador bribery schemes in distinct substantive FCPA and FCPA conspiracy counts—and, now, distinct money-laundering counts—the

8

government cannot credibly dispute that they are fundamentally separate sets of allegations. If they actually were part of one overarching criminal agreement, then the government should—and would—have charged them together, in one conspiracy count, in one district. It did not. It charged them separately, and in separate districts, because it recognized that these alleged schemes involved different groups of alleged coconspirators working to achieve different purportedly unlawful objectives—and so were *not* "a single continuing scheme." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). It appears the only reason the government charged Mr. Aguilar with substantive money-laundering counts in Houston—rather than money-laundering conspiracy—is its recognition that it has already charged a money-laundering conspiracy regarding the alleged Mexico scheme in this district. The government's charging decisions thus vividly illustrate the distinctness of the two schemes. Yet the government continues to insist on packing these distinct schemes into one duplicitous money-laundering conspiracy charge—a maneuver that, as explained further below, is improper and "risks unfairness to" Mr. Aguilar. *Margiotta*, 646 F.2d at 733.

## II.    COUNT FIVE'S DUPLICITY PREJUDICES MR. AGUILAR.

Count Five's duplicity substantially prejudices Mr. Aguilar in at least four ways that implicate his constitutional rights under the Fifth and Sixth Amendments. *See supra* at 6–7 (collecting cases listing examples of the forms of unconstitutional prejudice that warrant remedying a duplicitous charge).

*First*, Count Five's duplicity needlessly creates a strong risk of juror confusion and lack of unanimity. *See* ECF No. 152 at 8–10 (describing these same concerns); *see also, e.g.*, *Murray*, 618 F.2d at 896 (noting that duplicity implicates these forms of prejudice). Although the Court signaled a willingness to "instruct the jury precisely and carefully that it must identify the specified

9

unlawful activity or activities upon which it unanimously agrees," ECF No. 154 at 4, that will be no match for the fatigue and confusion resulting from two-plus months of a complicated case tried through translators. There will remain an unacceptable risk that the jury will render a verdict based on nonunanimous findings. *See, e.g.*, *Bruton v. United States*, 391 U.S. 123, 132 n.8 (1968) (courts cannot and should not ask jurors to do "mental gymnastic[s]"); *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001) ("where the prejudicial spillover [is] so overwhelming," limiting instructions "cannot be presumed to be effective"); *United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) ("limiting instruction[s are] particularly likely to be ineffective" in "long and complicated conspiracy type case[s]" where "the jury [is] faced with a difficult task at best" and must "sort out all the evidence and [] use it only for specifically designated purposes"). The complex and compound structure of Count Five thus continues to expose Mr. Aguilar to an impermissible and unconstitutional risk of an unlawful conviction—as the Court already recognized in denying the government's motion *in limine*. *See* ECF No. 155 at 6–7 (noting that both the alleged Ecuador and Mexico bribery schemes "are complex and involve numerous moving parts," which raises the risk of "undue delay and juror confusion"); *id*. at 7–8 (noting, in light of this case's complexity, that "delay and confusion issues cannot be" "adequately mitigated through a jury instruction"). Of course, this prejudice is wholly unnecessary now that the government has charged, and will try, the alleged Mexico scheme in a separate proceeding in Houston. There is no need to force a jury in Brooklyn to endure a complex, multi-month trial on both alleged schemes when the government will try each scheme in separate and shorter proceedings in different districts before two different juries—an outcome that will help mitigate these significant juror confusion and unanimity concerns.

10

*Second*, this duplicity opens an improper backdoor for the government to try to introduce evidence related to the alleged Mexico scheme that otherwise would be excluded or limited by Rules 402, 403, and 404(b). *See* ECF No. 140 (foreshadowing that Mexico-related evidence "will likely be admissible under Rule 404(b) in a trial . . . on only the Ecuador-related charges"). By smuggling Mexico-related events into the charged conduct, this duplicitous charge may enable the government to bypass those rules' limitations and introduce far more Mexico-related evidence at trial in this district than it otherwise could. *See, e.g.*, *United States v. Shepherd*, 739 F.2d 510, 513 (10th Cir. 1984) (reversing and remanding convictions when the government "took up approximately half of the trial time with" Rule 404(b) evidence that "diverted" jury's attention, causing it to "overlook" the weaknesses in substantive proof); *Rep. of Turkey v. Christie's, Inc.*, 527 F. Supp. 3d 518, 525 (S.D.N.Y. 2021) (Nathan, J.) (Rule 404(b) evidence is inadmissible under Rule 403 when it "would take up significant amounts of time and result in multiple side-show trials about the circumstances of the other acts"). This prejudices Mr. Aguilar. *See, e.g.*, *United States v. Shorter*, 874 F.3d 969, 977 (7th Cir. 2017) (a defendant "may be prejudiced by evidentiary rulings" because of a duplicitous count); *Cooper*, 966 F.2d at 939 n.3 (duplicity risks "prejudicial evidentiary rulings" against a defendant). This risk is particularly acute because if the Mexico-related evidence were subject to Rule 404(b), then the Court undoubtedly would place tight limits on it because of its similarities to the alleged Ecuador scheme. *See, e.g.*, *United States v. Henry*, 848 F.3d 1, 9 (1st Cir. 2017) (when evaluating Rule 404(b) evidence under Rule 403, the "similarity" between charged and uncharged conduct "increases the risk that the jury will draw an improper inference of propensity that unfairly prejudices the defendant's case"). There is no legitimate reason to impose this prejudice on Mr. Aguilar now that the government can try each scheme separately in two trials before different juries.

11

*Third*, this duplicity needlessly undermines Mr. Aguilar's constitutional right to have each distinct offense tried in a proper venue. U.S. Const. art. III, § 2, cl. 3; *id.*, amend. VI; *see* Fed. R. Crim. P. 18. Because "the government concedes that no part of the underlying Mexico-related scheme took place in this district," ECF No. 154 at 2, there can be no serious dispute that had the government properly charged the Mexico-related portion of Count Five as its own separate count, it could not be tried in this district, *see, e.g.*, *United States v. Novak*, 443 F.3d 150, 161 (2d Cir. 2006) ("venue must be proper with respect to each count"). Had the government tried to include such a charge in the Superseding Indictment, the Court no doubt would have dismissed it for lack of venue, just like Counts Two and Four. The government was able to assert that venue was proper over the entirety of Count Five as charged *only* because the government combined one properly venued offense (an Ecuador-related money-laundering conspiracy) with a separate and *improperly venued* offense (a Mexico-related money-laundering conspiracy). *See* ECF No. 154 at 3. That impermissible charging decision prejudices Mr. Aguilar by depriving him of his venue rights as to the Mexico-related portion of Count Five. *See, e.g.*, *United States v. Pietrantonio*, 637 F.3d 865, 871–72 (8th Cir. 2011) (reversing and remanding conviction on duplicitous count because the district court lacked venue over one of the offenses charged within that combined count); *United States v. Schlei*, 122 F.3d 944, 979–80 (11th Cir. 1997) ("Because the Olson transaction and the Tampa transaction are two distinct offenses, each should have been alleged in a separate and distinct count of the indictment. The failure to do so creates a venue problem."). There is no reason to threaten Mr. Aguilar's venue rights in this way when the government easily can try the Ecuador-related portion of Count Five here, while trying the Mexico-related portion in the Southern District of Texas. Failure to separate these offenses would violate binding precedent requiring the government to try that distinct money-laundering conspiracy charge alongside the

12

new substantive Mexico-related money laundering charges that the government brought in Houston. *See* ECF No. 166-1 (Counts Four and Five); *United States v. Saavedra*, 223 F.3d 85, 89 (2d Cir. 2000) ("Where, as in the case at hand, a defendant is charged with conspiracy as well as substantive offenses, venue must be laid in a district where all the counts may be tried.").

*Finally*, Count Five's duplicity imperils Mr. Aguilar's rights under the Double Jeopardy Clause—a concern that is particularly acute now that the government has charged him in connection with the alleged Mexico scheme simultaneously in two different districts. U.S. Const. amend. V; *see Murray*, 618 F.2d at 896 (duplicity prejudices a defendant by implicating the "protection against double jeopardy in a subsequent prosecution"); *accord, e.g.*, *Cooper*, 966 F.2d at 939 n.3 (duplicity threatens "prejudice in obtaining appellate review and prevention of double jeopardy"). If a jury in this district acquits Mr. Aguilar on Count Five using a general verdict form, there inevitably will be a dispute about whether the jury did so by unanimously agreeing that the government failed to prove the *Mexico*-related portion of that count, thereby triggering double jeopardy defenses in the Southern District of Texas. *See Ashe v. Swenson*, 397 U.S. 436, 444 (1970) ("[w]here a previous judgment of acquittal was based upon a general verdict," the Fifth Amendment "requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration"). And even if this Court required a special verdict form showing that the jury unanimously acquitted Mr. Aguilar on that portion, similar disputes would likely still occur, with the government contending that the charges in the Southern District of Texas are legally distinct and Mr. Aguilar contending that the jury's findings preclude a second prosecution. *Compare id.* ("[C]ollateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with

13

realism and rationality."), *with United States v. Felix*, 503 U.S. 378, 389 (1992). By inviting such serious and complex disputes over double jeopardy—and potentially giving the government an effective "dry run" at prosecuting the Mexico-related charges in this Court before it does so in Houston, *Ashe*, 397 U.S. at 447—Count Five's duplicity prejudices Mr. Aguilar.

Because Mr. Aguilar has shown that Count Five charges not one but two "separate offenses," Fed. R. Crim. P. 8(a), and because he will suffer many forms of severe prejudice from that improper charging decision, he has met his burden to establish that Count Five is "impermissibly duplicitous," *Sturdivant*, 244 F.3d at 75 & n.3.

## III. NARROWING COUNT FIVE PROTECTS MR. AGUILAR'S CONSTITUTIONAL RIGHTS AND PROMOTES JUDICIAL ECONOMY WITHOUT PREJUDICING THE GOVERNMENT.

The Court should remedy this duplicitous charge not only because it will prevent undue prejudice to Mr. Aguilar, but because it will promote judicial economy and simplify the issues for the jury and future courts, while causing no legitimate harm to the government's case. As explained above, dismissing the Mexico-related portion of Count Five will streamline the presentation of evidence, as well as simplify the Court's instructions and the jury's deliberations when this complex, multi-month trial reaches its close. *See supra* § II. Focusing trial in this district solely on the alleged "Ecuador Bribery Scheme" thus serves the parties', this Court's, and the jury's shared interest in efficiency, while minimizing jury confusion and unanimity concerns and the prospect of future disputes over double jeopardy.

This Court can promote those important shared interests without materially affecting the government's case or its broader investigation of Mr. Aguilar. *See United States v. Killeen*, No. 98 Cr. 143 (AGS), 1998 WL 760237, at *2 (S.D.N.Y. Oct. 29, 1998) (government agreed to "supersede the indictment and to separate the conspiracy count into three separate counts" covering

14

three different "schemes" to moot defendant's duplicity motion). After all, this Court already has suggested a willingness to allow the government to introduce evidence regarding the Mexico-related charges under Rule 404(b). *See supra* at 11. And the government will still get a chance to introduce all its Mexico-related evidence against Mr. Aguilar in a separate trial before a focused jury in Texas. Remedying Count Five's duplicity thus will affect the government's presentation of evidence in Brooklyn only to a limited degree—a narrowing of the evidentiary aperture that will streamline trial and shave days, if not weeks, off the trial length, with no prejudice to the government's ability to put on its full Mexico case in a trial in Houston, where those charges will remain pending.

Nor does Mr. Aguilar seek any windfall by excising the Mexico-related portion of Count Five. To the contrary, he seeks this relief knowing that "the government could, post-dismissal, try to reindict him" on "that portion of Count Five" in the Southern District of Texas through a superseding indictment, even if that means potentially increasing his overall sentencing exposure. ECF No. 152 at 10. As a result, this is not a case where a defendant might benefit from—rather than be prejudiced by—a duplicitous charge. *Cf. Murray*, 618 F.2d at 897–98 (defendants failed to show prejudice from any duplicity because the combined count meant that "they were sentenced as if they had violated only one of the statutes" instead of both).

## IV.    DISMISSAL IS THE ONLY APPROPRIATE REMEDY.

Because the other remedies for an impermissibly duplicitous charge will not cure the significant prejudice to Mr. Aguilar, the Court should dismiss outright the Mexico-related portion of Count Five. Courts sometimes remedy a duplicitous charge through jury instructions and special verdict forms, or "by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count." *Sturdivant*, 244 F.3d at 79. But jury instructions and special verdict forms cannot reliably remedy the prejudice to Mr. Aguilar in a case

15

as complicated as this, where the jury must endure weeks of painstakingly in-the-weeds evidence and testimony presented largely through translators. *See supra* § II. And it would make no sense under the circumstances to give the government the option to proceed to trial on only the Mexico-related portion of Count Five—while dismissing the Ecuador-related portion—because this Court concededly lacks venue over the Mexico-related portion. *See* ECF No. 154 at 2 ("no part of the underlying Mexico-related scheme took place in this district"). If the government were to elect to try only that portion, then Mr. Aguilar would promptly (and successfully) move to dismiss the rest of Count Five for lack of venue. Such rigamarole serves neither the parties' nor the Court's interests.

The Court therefore should remedy Count Five's duplicity by dismissing the Mexico-related portion of Count Five and permitting the government to proceed to trial on only the Ecuador-related portion of that count. *See, e.g.*, *Pietrantonio*, 637 F.3d at 872 (reversing and remanding conviction "with directions . . . to dismiss the indictment" because duplicitous charge contained an improperly venued offense); *Kakos*, 483 F.3d at 444 (before trial, a defendant may "request that a duplicitous indictment be dismissed"); *Viserto*, 596 F.2d at 538 (same); *United States v. Munoz-Franco*, 986 F. Supp. 70, 72 (D.P.R. 1997) (dismissing duplicitous conspiracy count); *United States v. Hardy*, 762 F. Supp. 1403, 1410 (D. Haw. 1991) (dismissing duplicitous conspiracy count, rather than relying on jury instructions, because "an ounce of prevention is worth a pound of cure," "particularly [when] the preservation of defendants' Fifth and Sixth Amendment rights hangs in the balance"); *Ricciardi*, 40 F.R.D. at 135 ("[i]n a proper case, a count in an indictment which is bad for duplicity should be dismissed"). *See also United States v. Borden Co.*, 308 U.S. 188, 193–94 (1939) (dismissing appeal from the district court's dismissal of a duplicitous conspiracy count).

## CONCLUSION

For all these reasons, the Court should, following oral argument, grant Mr. Aguilar's motion and dismiss the Mexico-related portion of Count Five.

Respectfully submitted,

Dated:  August 9, 2023

**QUINN EMANUEL URQUHART
    & SULLIVAN, LLP**

By: _____
Alex Spiro
Daniel R. Koffmann
George T. Phillips
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com
danielkoffmann@quinnemanuel.com
georgephillips@quinnemanuel.com

Michael T. Packard
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
michaelpackard@quinnemanuel.com

*Counsel for Defendant Javier Aguilar*

cc:  Counsel of Record (via ECF)

17