# EXHIBIT A

```
              THE UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION


                     *  *  *  *  *

UNITED STATES OF AMERICA     *     NO. 4:23-CR-335-1
                             *     Houston, Texas
VS.                          *
                             *     2:03 p.m.- 2:28 p.m.
JAVIER ALEJANDRO AGUILAR     *
MORALES                      *     August 21, 2023

                     *  *  *  *  *
```

**INITIAL APPEARANCE/ARRAIGNMENT**

```
            BEFORE THE HONORABLE YVONNE Y. HO
              UNITED STATES MAGISTRATE JUDGE

                     *  *  *  *  *
```

```
      Proceedings recorded by electronic sound recording
        Transcript produced by transcription service
```

*GLR TRANSCRIBERS*
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1610

1   **APPEARANCES:**

2   For the United States:

3       MS. SHERIN S. DANIEL
        **U.S. Attorney's Office**
4       1000 Louisiana, Suite 2300
        Houston, TX 77002
5
        MR. JONATHAN ROBELL
6       **U.S. Department of Justice**
        Criminal Division, Fraud Section
7       1400 New York Avenue NW
        Washington, DC 20005
8
    For the Defendant:
9
        MR. DANIEL R. KOFFMANN
10      **Quinn Emanuel Urquhart & Sullivan, LLP**
        51 Madison Avenue, 22nd Floor
11      New York, NY 10010

12      MR. GARY J. ZIMMERMAN
        **Spencer Fane, LLP**
13      3040 Post Oak Boulevard
        Suite 1300
14      Houston, TX 77056

15  Case Manager:

16      RACHEL WILLBORG

17  Electronic Recorder:

18      DANIEL BERGER

19

20

21

22

23

24

25

1               **P R O C E E D I N G S**

2            **2:03 P.M. - AUGUST 21, 2023**

3          THE COURT:  Good afternoon, everyone.  Please

4    be seated.

5               The first case is 4:23-CR-335-1, United

6    States vs. Javier Alejandro Aguilar Morales.

7          MS. DANIEL:  Good afternoon, Your Honor.

8    Sherin Daniel for the United States.  And along with

9    me are my co-counsels for DOJ Assistant Chief Jonathan

10   Robbell and my Deputy Chief [u/i].

11         THE COURT:  All right, thank you.

12              And then for -- I see you have counsel for

13   Mr. Aguilar.

14         MR. KOFFMANN:  Yes, good afternoon, Daniel

15   Koffmann on behalf of Mr. Aguilar, who is here with me

16   in court, as well as Gary Zimmerman.

17         THE COURT:  All right, good afternoon,

18   everyone.

19              All right.  Mr. Aguilar, the purpose of

20   today's proceeding is to advise you of the charges

21   against you, to advise you about your rights, to

22   consider the question of counsel, to consider the

23   conditions of your release, if any, and set a date for

24   your next court appearance.

25              Have you received a copy of the Indictment

1   that was filed?

2           DEFENDANT AGUILAR MORALES:  Yes.

3           THE COURT:  Okay, I'm going to briefly review

4   those allegations with you.  Give me a moment.

5           MR. KOFFMANN:  Your Honor, if it would help

6   the Court, we would waive reading.

7           THE COURT:  Well, I don't think I can waive

8   reading this go-around, but I can for the arraignment.

9   Okay.

10          This Indictment alleges that you and

11  others engaged in an international bribery and money

12  laundering scheme in which you knowingly, willfully,

13  corruptly offered and paid certain bribes to Mexican

14  officials to obtain and retain business for a company

15  called Vitol, Inc. with and related to Petroleos

16  Mexicanos, which is a state owned oil company in

17  Mexico, also called PEMEX, and its subsidiary, PEMEX

18  Procurement International, Inc.

19          There are five counts alleged in the

20  Indictment.

21          Count One alleges a conspiracy to violate

22  the Foreign Corrupt Practices Act under 18 U.S.C. 371.

23  This count alleges that starting around 2017 until

24  around July 10, 2020, within this Court's jurisdiction,

25  that you and others knowingly and willfully conspired

1   to commit violations of the Foreign Corrupt Practices

2   Act, first, by willfully and corruptly using mails and

3   means and instrumentalities of interstate commerce in

4   furtherance of an offer of payment, promise to pay, and

5   authorization of payment of money and something of

6   value to a foreign official, foreign political party,

7   and official thereof, while knowing that all or a

8   portion of the money or thing of value that was given

9   or promised to that person was for the purpose of

10   influencing the acts and decisions of that person in

11   the person's official capacity, inducing that person to

12   do and refrain from doing acts that violate the

13   person's lawful duties, inducing that person to use his

14   or her influence with the foreign government and its

15   agencies and instrumentalities to affect and influence

16   acts and decisions of the Government and its agencies

17   and instrumentalities in order to assist you, Vitol,

18   Inc, and others to obtain and retain business for, and

19   with and direct business to Vitol and others, which is

20   contrary to 15 U.S.C. 788DD/2.

21         And then as a second offense, while within

22   the U.S. Territory, the Government alleges that you

23   willfully and corruptly made use of the mails and means

24   of instrumentalities in interstate commerce and

25   committed other acts in furtherance of an offer and

1   payment and promise to pay, an authorization of payment

2   of something of value, and any money to a foreign

3   official, foreign political party, and official

4   thereof, while knowing that all or a portion of the

5   money or thing of value would be and had been offered

6   and given and promised to that person for the purpose

7   of influencing the acts and decisions of that person in

8   the person's official capacity, inducing the official

9   to do and refrain from doing something that violates

10  the person's lawful duties, securing an improper

11  advantage, and inducing the official to use his or her

12  influence with the foreign government and its agencies

13  and instrumentalities to affect and influence acts and

14  decisions of that government to assist a citizen of

15  Mexico, who resides in Harris County, Texas, and is

16  identified in this Indictment as Intermediary No. 1, as

17  well as others, in obtaining and retaining business for

18  and with, and directing business to Vitol, Inc. and

19  others, which violates 15 U.S.C. 788DD/3.

20          Count Two alleges a violation of the

21  Foreign Corrupt Practices Act under 15 U.S.C. 788DD/2,

22  and Section 2.

23          In addition to the allegations I've

24  explained to you in connection with Count One, this

25  count further specifies that around August 6, 2018,

1   that you allegedly used a Gmail address identified in

2   the Indictment as *FirstAguilar7Account* to send an email

3   to a Mr. Lionel [Hantz], attaching various documents

4   that included a sham Executed Services Agreement

5   between a company, Lyon Oil BV, and an entity

6   identified as shell company No. 2 in this Indictment,

7   as well as between Lyon Oil and another company, Shell

8   Company No. 5, as described in the Indictment.

9            Count Three alleges a violation of the

10  Travel Act and Texas Commercial Bribery under 18 U.S.C.

11  1951(a)(1)(A), 1952(A)(3)(a), and Section 2.

12           This count claims that around October 12,

13  2018 through on or around October 31, 2018, within this

14  Court's jurisdiction and elsewhere, that you and others

15  traveled in and used the mail, as well as one or more

16  facilities in interstate or foreign commerce, with the

17  intent to distribute the proceeds of an unlawful

18  activity, specifically commercial bribery, in violation

19  of Texas Penal Code, Section 32.43, and otherwise

20  promoted, managed, established, carried on, facilitated

21  that unlawful activity, and then knowingly and

22  willfully performed and attempted to perform the

23  distribution of the proceeds of that unlawful activity,

24  and that you aided, abetted, counseled, procured, and

25  willfully caused others to do the same, specifically by

1  using a Gmail account described as

2  *FirstAguilar007Account* to send an email to Mr. Lionel

3  [Hantz] that attached sham invoices from a Shell

4  Company No. 4 to Lion Oil and [Zanza] Oil, each of

5  which were for a total, the sum of approximately

6  $121,518 U.S. dollars.

7            Counts Four and Five allege money

8  laundering under 18 U.S.C. 1956(a)(2)(B)(1) and Section

9  2.  This claims that you knowingly and intentionally

10 committed and aided others to unlawfully transport,

11 transmit, attempt to transport or transmit certain

12 money instruments and funds from within and through the

13 United States to and through one or more places outside

14 the United States, while knowing that those monetary

15 instruments and funds represented the proceeds of

16 unlawful activity, and knowing that these transmissions

17 and transfers were designed to conceal and disguise the

18 nature, location, source, ownership, and control of

19 those proceeds of unlawful activity.  And the relevant

20 unlawful activity allegedly consists of felony

21 violations of the FCPA, as detailed elsewhere in the

22 Indictment, and one or more offenses against a foreign

23 nation that involved bribery of a public official and

24 the misappropriation, theft, and embezzlement of public

25 funds by and for the benefit of a public official, in

1  violation of the Mexican Penal Code, as defined in 18

2  U.S.C. 1956(c)(7)(B)(iv); and violations of the Travel

3  Act, 18 U.S.C. 1952(a)(1)(A), and 1952(a)(3)(A).

4          Counts Four and Five identify two specific

5  wire transfers involved.  Both occurred on October 21,

6  2018, where you allegedly [u/i] a wire transmission of

7  $36,000 from a bank account in Mexico in the name of

8  Shell Company No. 2 to a bank account for the benefit

9  of a Mr. Gonzalo Guzman in the Southern District of

10  Texas.

11          Count Five concerns a wire transmission of

12  $40,000 from a bank account in Mexico in the name of

13  the Shell Company No. 2 to a bank account for the

14  benefit of a Carlo Espinoza Barba, also within the

15  Southern District of Texas.

16          The Government is also seeking forfeiture,

17  which means if you are convicted of any of the offenses

18  in Counts through Five, the Government is seeking to

19  forfeit any property that constitutes or is derived

20  from proceeds that are traceable to those offenses.

21          And also, if you are convicted of the

22  offenses in Counts Four and Five, the Government is

23  also seeking a money judgment against you and could

24  also seek to forfeit other property owned by you as

25  substitute property if provided and permitted under

1   federal law.

2            What is the potential penalty for these

3   offenses?

4        MS. DANIEL:  Yes, Your Honor, for Counts One,

5   Two and Three, which are conspiracy to violate the

6   FCPA, 18 U.S.C. 371, Count Two substantive FCPA

7   violation 15 U.S.C. 788DD/2, and Count Three Travel Act

8   violation under 18 U.S.C. 9052, all three of these

9   carry a penalty range of no more than five years, a

10  fine of no more than $250,000, a hundred dollar special

11  assessment, and no more than three years of supervised

12  release.

13           For Counts Four and Five, which is

14  international concealment money laundering, substantive

15  violation of 18 U.S.C. 1956, and Count Five, another

16  money laundering charge, violation of 18 U.S.C. 1956,

17  they both carry a penalty range of no more than 20

18  years, a fine of no more than $250,000, a hundred

19  dollar special assessment, and three years supervised

20  release.

21       THE COURT:  Now, Mr. Aguilar, without telling

22  me whether you think the allegations are true, do you

23  understand what the Government is claiming that you've

24  done?

25       DEFENDANT AGUILAR MORALES:  Yes.

1          THE COURT:  Now I'm going to review your basic

2    rights.

3               First, you have the right to remain

4    silent.  If you make any statement, it could be used

5    against you.  You're not on trial today.  You don't

6    have to say anything to me or any court personnel about

7    the facts of your case.  You can't be required to be a

8    witness or to testify or to gather witnesses or

9    evidence.  You don't have to discuss the case with any

10   law enforcement officials or answer any of their

11   questions.  If you've already made a statement, you

12   don't have to say anything else.  If you start to make a

13   statement later, you can stop at any time.  If you talk

14   to any person other than your lawyers about the case,

15   that person could be forced to testify against you even

16   if they don't want to.  So the only person you should

17   talk to about your case is your attorneys.  Anything

18   you say to your attorneys is privileged and can't be

19   shared with anyone.

20               Do you understand your right to silence as

21   I've explained it to you?

22          DEFENDANT AGUILAR MORALES:  Yes, I do.

23          THE COURT:  You also have the right to be

24   represented by an attorney at all stages of your case.

25   If you can't afford an attorney, you can ask the Court

1  to appoint one for you.  And I see that you're

2  appearing here with counsel today; is that correct?

3          DEFENDANT AGUILAR MORALES:  Correct.

4          THE COURT:  So you're not asking the Court to

5  appoint you an attorney at this time?

6          DEFENDANT AGUILAR MORALES:  No.

7          THE COURT:  All right.

8              Under Rule 5(f) I'm instructing counsel

9  for the United States to comply with its disclosure

10 obligations under *Brady vs. Maryland* and its progeny.

11 Failure to do so could result in dismissal of charges,

12 exclusion of evidence, adverse jury instructions,

13 contempt proceedings, and sanctions.

14              Does the Government understand its

15 disclosure obligation?

16          MS. DANIEL:  Yes, Your Honor, we do.

17          THE COURT:  I'll enter an order to that

18 effect.

19              What is the Government's position

20 regarding release for Mr. Aguilar?

21          MS. DANIEL:  Your Honor, the defendant is

22 currently on bond in the Eastern District of New York

23 for open charges, and we are asking that the same

24 conditions be imposed in the Southern District of Texas

25 as well.

1          THE COURT:  How do those compare with the

2    conditions that were proposed by the Pretrial Services

3    Office?

4          MS. DANIEL:  I believe those are a mirror

5    image of the same conditions as they are in New York.

6    I haven't had a chance to look at them.

7          THE COURT:  Mr. Koffmann, why don't you take a

8    look and discuss these with your client.

9          MR. KOFFMANN:  Thank you, Your Honor.

10          *[Pause]*

11          Yes, Your Honor, these are the same

12    conditions that were imposed originally when the case

13    began in the Eastern District of New York.  There have

14    been some modifications, principally related to travel

15    that we would propose to include in the [u/i] package

16    in this court.

17          And then there's one open issue, which is

18    with respect to the GPS monitoring.  There's a motion

19    pending in the Eastern District of New York to remove

20    the condition of Mr. Aguilar's conditions of release.

21    We would propose to Your Honor to not include GPS

22    monitoring in the conditions in this court so that it

23    sort of rises and falls with the motion in the Eastern

24    District.  If he's going to have a bracelet, he's going

25    to have a bracelet, whether in this court or the

1  Eastern District Court.

2  　　　　　But otherwise, I think these conditions,

3  with the additional travel, are the conditions that we

4  would propose, Your Honor.

5  　　　　THE COURT:  So what travel conditions are --

6  have been modified since then?

7  　　　　MR. KOFFMANN:  So the three principal ones,

8  there have been some [runoff] travel requests.  But

9  putting those aside, Mr. Aguilar has been granted

10  permission to travel within the entire state of Texas,

11  all judicial districts in Texas, also to Southern

12  District of Florida and to Central District of

13  California, as well as surrounding airports in order to

14  facilitate that travel.

15  　　　　THE COURT:  All right, I don't have access to

16  those --

17  　　　　MR. KOFFMANN:  I have a copy here I can hand

18  to your deputy.  I just gave a copy to Ms. Daniel.

19  　　　　THE COURT:  Is this consistent with your

20  understanding, Ms. Daniel?

21  　　　　MS. DANIEL:  Your Honor, the modification as

22  to travel is consistent with our understanding, and

23  we're fine with the modifications made in New York.

24  　　　　　As far as the GPS monitoring is concerned,

25  there is an open motion, I believe, in front of the

1  judge in New York, and it is still pending and the
2  judge hasn't ruled on that.  So our position is we're
3  asking Your Honor to keep the ankle monitoring until
4  the judge in New York rules on that pending motion.
5          THE COURT:  Well, I mean, if he's actively
6  being monitored right now, it seems the most efficient
7  thing is just to let that ride with the Eastern
8  District of New York.  And if the judge there decides
9  to remove that, then the monitoring will go away,
10 because it's not like there are two different Pretrial
11 Services Departments that would be monitoring the same
12 monitor; right?
13         MR. KOFFMANN:  Well, actually, Your Honor,
14 there are.  There is both the Eastern District Pretrial
15 Services, as well as Southern District of Texas.
16             I would note for the record that
17 Mr. Aguilar's Southern District of Texas Pretrial
18 Services Officer consented to our motion in the Eastern
19 District of New York to remove the ankle monitoring.
20 In other words, the Southern District of Texas Pretrial
21 has essentially said they don't see that GPS monitoring
22 or any monitoring is necessary.
23         THE COURT:  I mean, given how broad these
24 travel restrictions are, I mean, it doesn't sound like
25 the Government has any serious concerns.  I mean, a

1  monitor itself doesn't necessarily prevent somebody

2  from failing to appear.  But, I mean, I'm inclined to

3  just let it be and let the Eastern District of New York

4  let the first case decide whether the monitoring is

5  going to continue.

6            Do you know what type of monitoring is

7  being done there?  Is it stand-alone?

8            MR. KOFFMANN:  It's GPS.

9            THE COURT:  Okay, GPS monitoring.  So it would

10  be the same here.

11            Let me ask Pretrial Services, how does

12  that work if someone is being monitored and has ankle

13  monitoring in connection with two different cases?  I

14  mean, who's getting the data, just the sharing

15  information?

16            PRETRIAL SERVICES:  We would be monitoring

17  him, Your Honor.

18            THE COURT:  Okay.

19            PRETRIAL SERVICES:  And he's currently on GPA

20  right now.

21            THE COURT:  Okay, so that data would just be

22  transferred to your office until --

23            PRETRIAL SERVICES:  We're already receiving

24  it, Your Honor.

25            THE COURT:  Okay, you're already receiving it,

1  okay.  Well, then if the Eastern District of New York

2  decides to do away with monitoring, then that will

3  terminate the need for monitoring.

4          PRETRIAL SERVICES:  Yes, Your Honor.

5          THE COURT:  I think I'll leave it off and

6  let -- since that motion is already pending, we'll let

7  that judge decide what to do there.

8               Is there any -- are there any other

9  conditions that you would like to address?

10          MS. DANIEL:  None, Your Honor, as far the

11  Government is concerned.

12          PRETRIAL SERVICES:  Your Honor?

13          THE COURT:  Yes.

14          PRETRIAL SERVICES:  I have a question.  Is it

15  a secured bond or an unsecured bone?

16          MR. KOFFMANN:  It is secured with a 10,000 --

17  it's a $100,000 bond secured by a $10,000 check that

18  was submitted in 2020.

19          THE COURT:  Well, that's already been

20  deposited; right?

21          MR. KOFFMANN:  Correct.

22          THE COURT:  So we don't need to have another

23  $10,000.  Okay, thanks for the clarification.

24               All right, Mr. Aguilar, you will be

25  released until trial in this case as long so long as

1  you follow certain conditions that I'm about to go over
2  with you.  If you have any questions about these
3  conditions, please raise them now.  If you violate any
4  of these conditions, then I expect the Government will
5  come back to court and ask you be detained in custody
6  until the trial of your case.
7            The first condition, you will need to post
8  $100,000 unsecured bond.  And this means that you could
9  be forced to pay $100,000 if you don't comply with the
10  conditions of release.
11            There are some general conditions you have
12  to comply with:
13            First, you cannot violate any federal,
14  state, or local law while you're on release.
15            You will need to cooperate in the
16  collection of a DNA sample, if that's permitted by 34
17  U.S.C. 40702.
18            You need to advise the Court or Pretrial
19  Services Office in writing before making any change to
20  your residence or to your telephone number.
21            And you will need to appear in court as
22  required.  And if you are convicted, you will need to
23  surrender to serve any sentence that the Court might
24  impose.
25            You will need to submit to the supervision

 1   by, and report to supervision here in this courthouse

 2   to the Pretrial Services Officer.  We'll provide that

 3   contact information for you.

 4              You will need to -- well, let me ask

 5   Mr. Koffmann, does your client have a passport?

 6         MR. KOFFMANN:  He does not.  He surrendered it

 7   in 2020.

 8         THE COURT:  All right.  So do not obtain any

 9   new passport or travel documents.

10              Your travel will be restricted to the

11   following locations:  The state of Texas, the Southern

12   District of Florida, the Central District of

13   California, and the Eastern District of New York.

14              Did I get that right?

15         MR. KOFFMANN:  Also Southern District of New

16   York.  And I believe the District of D.C. was also an

17   original condition.  I missed that in the original --

18   the Pretrial Report, I apologize.

19         THE COURT:  All right, let me give the

20   complete list:  The state of Texas, the Southern

21   District of Florida, Central District of California,

22   and both the Southern District of New York and Eastern

23   District of New York.  I have no idea what the

24   geographic boundaries of those are, so make sure you

25   double check.  And if you have questions about that,

1  contact your Pretrial Service Officer in advance of any

2  travel.

3         MR. KOFFMANN:  Forgive me, Your Honor, there's

4  also D.C.

5         THE COURT:  Oh, District of -- yeah, District

6  of Colombia.  Thank you.  All right, we'll include that

7  within your travel boundaries.

8              You need to avoid all contact with any

9  co-defendants, witnesses, victims, or potential victims.

10             Do not possess any firearms, destructive

11  devices, or other dangerous weapons.

12             Mr. Koffmann, are there any firearms at

13  Mr. Aguilar's residence?

14         MR. KOFFMANN:  I understand that there are

15  none, Your Honor.

16         THE COURT:  Okay.  Do not use alcohol

17  excessively.  Do not use or unlawfully possess any

18  narcotic drug or other controlled substances unless

19  they are prescribed by a licensed medical practitioner.

20  Also, don't use or consume any products containing or

21  marketed as containing CBD.

22             You will need to comply with all of your

23  existing court obligations in the Eastern District of

24  New York.

25             And if you have any contact with law

1  enforcement, even for something as minor as a traffic

2  stop, make sure you report that to the Pretrial

3  Services Offices within 72 hours.

4          It is extremely important that you follow

5  all these conditions carefully.  If you violate any of

6  them, that could result in the immediate issuance of a

7  warrant for your arrest, your release could be revoked,

8  you could be jailed until trial, and you could be fined

9  or prosecuted for contempt of court.

10          If you commit a crime while you're on

11  release, the sentence could be more severe than if you

12  committed the same crime at any other time, and the

13  sentence would be added onto any potential sentence you

14  might receive in this case.

15          It is also a crime to attempt to influence

16  a juror, to threaten or attempt to bribe a witness or

17  other person who might have information about the case,

18  to retaliate against someone from providing

19  information about the case, or otherwise obstruct the

20  administration of justice.  Those crimes are punishable

21  of up to 10 years imprisonment or a maximum $250,000

22  fine.

23          Failure to appear in court, as required,

24  is also a crime that result in imprisonment.  That

25  sentence would be consecutive to any potential sentence

1 │ you might receive in this case.

2 │          Mr. Aguilar, do you understand these

3 │ conditions?

4 │          DEFENDANT AGUILAR MORALES:  Yes, I do.

5 │          THE COURT:  We'll provide you a copy, a

6 │ written copy of these conditions, and there will be

7 │ some paperwork to sign for the unsecured bond.

8 │          The next hearing in this case will be

9 │ before Judge George Hanks.  Here is the schedule for

10 │ the case.

11 │          Motions are due August 31, 2023.

12 │ September 8th is the deadline for responding to

13 │ motions.  The Pretrial Conference will be before Judge

14 │ Hanks on October 6, 2023 at 10:00 a.m.  And

15 │ Mr. Aguilar, you will need to be present for that.

16 │ The case is set for jury trial on October 16, 2023 at

17 │ 9:00 a.m.

18 │          Ms. Daniel, how many days do you estimate

19 │ for the trial?

20 │          MS. DANIEL:  Your Honor, four to six weeks.

21 │          THE COURT:  And Mr. Koffmann, does your client

22 │ waive speedy trial at this time?

23 │          MR. KOFFMANN:  No, Your Honor.

24 │          THE COURT:  All right.  Mr. Koffmann, is your

25 │ client ready to proceed to arraignment?

 1        MR. KOFFMANN:  Yes, Your Honor.  Just before

 2   moving on, I don't -- I was listening.  I'm not sure if

 3   you said it as well, but surrounding airports in the

 4   areas to which Mr. Aguilar is permitted to travel, I'm

 5   just thinking if he flies to New York, for example, go

 6   to New York.

 7        THE COURT:  Oh, I guess that's in -- yeah,

 8   that's in Jersey.  I don't know whether that's within

 9   the Southern District of New York.  Maybe not.

10        MR. KOFFMANN:  It's not.  It's in the

11   jurisdiction of New Jersey.

12        THE COURT:  Okay, all right.  Let me clean

13   that up because I know Ms. Willborg is frantically

14   trying to document this, too.

15           Okay.  So travel, make sure -- okay, so

16   the entire state of Texas, Southern District of Florida,

17   Central District of California, Southern District of

18   New York, Eastern District of New York, District of

19   Colombia, and the airport serving those areas?

20        MR. KOFFMANN:  Yes, I believe that's what we

21   have in the Eastern District.

22        THE COURT:  Is that the right way to

23   characterize it?

24        MS. DANIEL:  Yes, Your Honor.

25        THE COURT:  Okay.  All right, so those are

1  your travel boundaries.

2          All right.  Mr. Aguilar, the arraignment

3  is the proceeding where you'd enter a formal plea of

4  either not guilty or guilty to the charges against you.

5          Mr. Koffmann, is your client waiving

6  formal reading of the charges?

7      MR. KOFFMANN:  Yes, Your Honor.

8      THE COURT:  Okay.  Mr. Aguilar, have you

9  discussed the charges in this case with your attorney?

10     DEFENDANT AGUILAR MORALES:  Yes.

11     THE COURT:  Are you ready to enter a plea, yes

12 or no?

13     DEFENDANT AGUILAR MORALES:  Yes, not guilty.

14     THE COURT:  All right.  I'm entering a not

15 guilty plea on your behalf, and you have the schedule

16 for the case.

17          Is there anything else that we can do for

18 Mr. Aguilar?

19     MS. DANIEL:  Nothing further from the

20 Government.

21     MR. KOFFMANN:  Nothing from the defense.

22 Thank you, Your Honor.

23     THE COURT:  All right.  Thank you.  You are

24 excused.

25     *[2:28 p.m. - Proceedings adjourned]*

C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript of the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Gwen Reed

8-22-23

*GLR TRANSCRIBERS*
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1610