JPL/MRG
F. #2019R01460

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                              Docket No. 20-CR-390 (S-1) (ENV)

JAVIER AGUILAR,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S RESPONSIVE MOTION *IN LIMINE*

                                                                   BREON PEACE
                                                                  UNITED STATES ATTORNEY
                                                                  Eastern District of New York
                                                                  271 Cadman Plaza East
                                                                  Brooklyn, New York 11201

Jonathan P. Lax
Matthew R. Galeotti
Assistant United States Attorneys

Derek J. Ettinger
Assistant Chief, Fraud Section
Clayton P. Solomon
Trial Attorney, Fraud Section
     (Of Counsel)

D. Hunter Smith
Trial Attorney, Money Laundering and Asset Recovery Section
     (Of Counsel)

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.   THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE TO RENEWAL AT TRIAL ............................................................................................ 1

    II.  AGUILAR MISCONSTRUES THE SCOPE OF THE CHARGED SCHEMES AND THE RELEVANCE OF EVIDENCE TO THOSE SCHEMES ................................... 4

    III. THE COURT HAS ALREADY PRECLUDED EVIDENCE OF THE DIVERSION SCHEME ............................................................................................................... 7

CONCLUSION .................................................................................................................... 10

## **PRELIMINARY STATEMENT**

The government respectfully submits this memorandum in opposition to the defendant's responsive motion in limine. See ECF Dkt. No. 192-1 ("Mot." or the "Motion").

The Court should deny the Motion for several reasons. First, the defendant's objections to the admissibility of specific pieces of evidence are best handled on a case-by-case basis after the government has laid a foundation for that evidence at trial. The defendant is not entitled to a detailed pre-trial preview of the government's theories as to the relevance and admissibility of each and every piece of evidence that the government may later seek to admit. Second, the Motion misconstrues both the scope of the charged schemes as well as the relevance of specific pieces of evidence to them. Third, this Court has already precluded the government from proving or otherwise implying to the jury the existence of the diversion scheme (unless the defendant testifies or otherwise opens the door to it). See ECF Dkt. No. 155. The Court need not enter the same order again. Nor is there any reason for the Court to expand that order (as the defendant asks) by excluding all exhibits that merely "relate, at least in part," Mot. 4, to the diversion scheme, even where those exhibits may also relate to the charged offenses and can be discussed without revealing the existence of the diversion scheme to the jury.

## **ARGUMENT**

### I. THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE TO RENEWAL AT TRIAL

The Court should deny the Motion without prejudice to its renewal when the government seeks to admit specific pieces of evidence at trial.

As an initial matter, the relief the defendant seeks is as vague as it is sweeping. The Motion describes eight "illustrative—but not exhaustive—examples" of evidence that it seeks to exclude. Mot. 3; see id. at 3-8. It then asks the Court to exclude both the "illustratively listed"

examples and "any other uncharged unnoticed conduct that the government may seek to admit at trial." Id. at 18. The broad and undefined nature of the relief that the Motion seeks is reason enough for the Court deny the Motion without prejudice to its renewal when the government seeks to admit evidence at trial. Neither the Court nor the government should be forced to guess what the defendant believes his listed examples have "illustrated."[1]

The Court should defer ruling even as to the listed "examples" of evidence that the Motion does discuss. When the government seeks to admit that evidence at trial, it will lay the proper foundation for it. But it is impractical and unnecessary for the government to explain (or for the Court to evaluate) the government's theories of relevance as to each of the examples now. In a wide range of procedural contexts, courts deny criminal defendants' attempts to obtain unwarranted "preview[s] of the Government's case before trial." United States v. Conley, No. 00 CR 0816, 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002); United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) (government not required to give "a preview of its evidence or legal theories" or "the manner in which it will attempt to prove the charges"); United States v. Sindone, No. 01 CR. 517 MBM, 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("the government is not required to turn over information that will permit a defendant to preview the government's case"); United States v. Ahmed, 94 F. Supp. 3d 394, 438 (E.D.N.Y. 2015); United States v. Rowland, No. 3:14CR79 JBA, 2014 WL 3908115, at *1 (D. Conn. Aug. 11, 2014).

Indeed, this Court has repeatedly denied Aguilar's own attempts to obtain a pretrial "roadmap [of] . . . the government case." ECF Dkt. No. 165; see id. (denying Aguilar's third

---

[1] Moreover, the Motion seeks to exclude "any evidence" that "relat[es] to . . . any uncharged conduct." Mot. 18. But, of course, everything "relates" in some sense to uncharged conduct. Though the Motion does not say it, the government presumes the defendant seeks to exclude evidence that relates only to uncharged conduct (that is, evidence that does not "relate" in any way to the charged conduct).

2

motion for a bill of particulars); ECF Dkt. No. 117 (denying second such motion); ECF Dkt. No. 39 (denying first such motion). As the Court is aware, the government has already provided Aguilar a far more extensive preview of its evidence than a criminal defendant would ordinarily be entitled through its charging documents (filed against both him and his conspirators), e.g., ECF Dkt. No. 120, its payments disclosure, ECF Dkt. No. 203-2, its list of co-conspirators, ECF Dkt. No. 198-1, its extensive pre-trial briefing, e.g., ECF Dkt. No. 198 at 6-15; ECF Dkt. No. 205, and its early production of 18 U.S.C. § 3500 material and exhibits, ECF Dkt. Nos. 187, 188.

None of this, however, has stopped Aguilar from trying to obtain a further such preview. See ECF Dkt. No. 185-1 at 17-20 (seeking pre-trial James hearing on alleged co-conspirators); United States v. Aguilar, 4:23-cr-00335 (S.D.Tx.), ECF Dkt No. 40 (Aguilar's fourth motion for a bill of particulars). The present Motion appears to be his latest such attempt.

But, as the cases cited above and this Court's own rulings suggest, "an admissibility ruling during trial is preferable" to providing a defendant unwarranted pretrial preview of the government's case. United States v. Solomonyan, 451 F. Supp. 2d 626, 648 (S.D.N.Y. 2006). Making admissibility rulings during the trial not only preserves the government's flexibility to present its case as it deems appropriate, but it is also more efficient: the Court will be better able to consider evidence in context after the government has laid a foundation for it. Moreover, Aguilar does not identify any particular prejudice that might result if the Court defers admissibility rulings until trial.[2]

For the foregoing reasons, the Court should defer ruling on the admissibility of specific pieces of challenged evidence until the government seeks to admit them at trial. Though

---

[2] As discussed below, unless Aguilar testifies or opens the door to it, the government does intend to suggest the existence of the diversion scheme to the jury.

3

the Court could deny the entire Motion without prejudice to subsequent renewal, the government addresses below two broader disputes between the parties that the Court may wish to address before trial.

## II. AGUILAR MISCONSTRUES THE SCOPE OF THE CHARGED SCHEMES AND THE RELEVANCE OF EVIDENCE TO THOSE SCHEMES

The Court may wish to address—and reject—Aguilar's renewed effort to exclude evidence on the basis that he has been charged "exclusively" with conspiring to obtain the 2016 Fuel Oil Contract in Ecuador and ethane supply contracts in Mexico.  Mot. 10-11; see ECF Dkt. No. 185-1 at 5-13 (making the same argument).  As the government has previously explained, the charged conspiracies are not so limited.  See ECF Dkt. No. 198 at 5-6.  Instead, Count One charges Aguilar with a conspiracy to obtain "business for Vitol with and related to Petroecuador."  ECF Dkt. No. 120 at ¶ 22 (emphasis added); see id. at ¶ 48.  Further, as Aguilar himself has observed, the Superseding Indictment alleges that that conspiracy began more than a year before the Fuel Oil Contract was signed and continued at least a year after it was "completed."  ECF Dkt. No. 198 at 6.  Such allegations do not limit the charged conspiracy to the Fuel Oil Contract.

Likewise, the Superseding Indictment does not limit the Mexico conspiracy to ethane.  In fact, the Superseding Indictment does even use the word "ethane" in its overview of that conspiracy.  It alleges:

> Beginning in or about August 2017, the defendant JAVIER AGUILAR, together with others, engaged in a bribery and money laundering scheme involving the payment of bribes to Mexican officials, including Gonzalo Guzman Manzanilla and Carlos Espinosa Barba, in exchange for, among other things, securing improper advantages for Vitol in obtaining and retaining business with PEMEX and PPI.

ECF Dkt. No. 120 at ¶ 38 (emphasis added); see id. at 51 (alleging conspiracy to obtain "business" in Mexico).

4

None of the cases Aguilar has cited suggest that the Court should read the Superseding Indictment's broad language as meaning anything other than what it says. See ECF Dkt. No. 204 at 7 (arguing for a narrow interpretation of the charged offenses). In United States v. Zingaro, 858 F.2d 94 (2d Cir. 1988), the Second Circuit held that an indictment did not encompass certain conduct, but only because it gave the defendant "no inkling that [he] was charged with" that conduct and the conduct "fell entirely outside" the schemes that the indictment did describe. Id. at 102-03; see United States v. Danielson, 199 F.3d 666, 670 (2d Cir. 1999) (explaining that Zingaro "concerned behavior entirely separate from that identified in the indictment"); United States v. Patino, 962 F.2d 263, 266–67 (2d Cir. 1992) (same). By contrast, here, the Superseding Indictment "provides details of [the fuel oil and ethane] transactions as part of its account of means and methods and specifications of overt acts in connection with the conspirac[ies]," but it "does not charge the relevant crimes in terms limited to" fuel oil or ethane. United States v. Fasciana, 226 F. Supp. 2d 445, 454 (S.D.N.Y. 2002); see id. (distinguishing Zingaro on this basis). Indeed, Zingaro itself distinguished cases holding that broad language in an indictment (like that of the Superseding Indictment) should be read as encompassing "additional activities of the same character as those specifically charged." Zingaro, 858 F.2d at 103. Here, the other business that the defendant conspired with some of the same conspirators to obtain for the same employer (Vitol) from some of the same Mexican and Ecuadorian state-owned oil companies are "of the same character" as the concededly charged conspiracies.[3]

Nor is this a case where the government has produced "massive discovery" on one subject, then will switch at trial to a completely different subject. See ECF Dkt. No. 204 at 7

---

[3] Defendant's other primary authority—United States v. Kahale, 789 F. Supp. 2d 359 (E.D.N.Y. 2009)—did not even address the scope of an indictment's charges. See ECF Dkt. No. 204 at 7 (arguing that Kahale requires indictment to be interpreted narrowly).

5

(speculating about such a concern). The government's discovery is entirely consistent with the charges in this case and the government's anticipated proof of those charges at trial. Aguilar was obviously aware of that discovery: Even before the government disclosed its exhibits, Aguilar sought to preclude (what he describes as) non-Fuel Oil Contract evidence through his affirmative motions in limine, see ECF Dkt. No. 185-1 at 5-13, and then again to preclude it through the present Motion.

Further, even if the indictment were limited to the 2016 Ecuadorian Fuel Oil Contract and the Mexican ethane supply contracts, much of the evidence that Aguilar has sought to exclude would still be relevant, direct evidence. For example, as the government previously described in its initial motions in limine, see ECF Dkt. No. 178 at 35-46, and again in response to Aguilar's affirmative motions, see ECF Dkt. No. 198 at 6-11, Aguilar and his co-conspirators conspired to obtain a liquified petroleum gas ("LPG") contract with Petroecuador before deciding to pursue the 2016 Fuel Oil Contract. But even then, they still viewed fuel oil as a foot in the door to subsequent and potentially more lucrative LPG deals. What's more, after the 2016 Fuel Oil Contract's term had expired, the defendant still believed it was necessary to pay bribes owed on it to ensure he and Vitol would later have a shot at winning new contracts, including an LPG contract—as he discussed on a recorded call with a co-conspirator. See id. at 10-11.

It is no surprise that Aguilar wants such evidence excluded. But it is directly related to the charged schemes even on the narrowest conceivable construction of the Superseding Indictment. Aguilar now attempts once again to preclude that evidence—this time by seeking to preclude evidence related to ███████████████.[4]  See Mot. 7. What Aguilar fails to

---

[4] The government respectfully requests that this reference to an uncharged entity and other redacted references to excerpts of evidence produced in this case be filed under seal for the same reasons the Court has previously sealed such matters in pretrial filings.

6

mention is that when Aguilar and his co-conspirators first sought to obtain business with Petroecuador, part of their plan apparently was to use ▇▇▇▇ as a sovereign intermediary—much the same way they eventually used another State Owned Entity in the Fuel Oil deal—even though it would be Vitol that ultimately the supplied LPG to Petroecuador. When Aguilar and his co-conspirators' initial efforts to obtain an LPG deal failed, they turned to fuel oil as a different way to get a foot in the door. Thus, it is far from the case that documents relating to ▇▇▇▇ have "***nothing*** to do with the charged offenses," Mot. 11 (emphasis in original), even if the charged offenses were limited to fuel oil and ethane.

For the foregoing reasons, the Court should deny Aguilar's attempt to exclude evidence on the supposed ground that is unrelated to the charged schemes.

## III. THE COURT HAS ALREADY PRECLUDED EVIDENCE OF THE DIVERSION SCHEME

Finally, the Court may also wish to note that it has already precluded evidence concerning Aguilar's scheme to divert Vitol funds to his personal benefit, see ECF Dkt. No. 155, and there is no need for the Court to enter the same order again. The government has no intention of proving or otherwise implying the existence of that scheme to the jury and has also told the defendant that it does not intend to use most of the challenged diversion scheme documents in its case in chief. See ECF Dkt. No. 192-3. Indeed, out of what the government believes is an abundance of caution (and a reflection of its intent to scrupulously comply with this Court's order), the government has also independently sought advance confirmation that the testimony it anticipates eliciting from a witness is consistent with the Court's diversion scheme order. See ECF Dkt. No. 205.

The Court should also reject Aguilar's apparent attempt to expand the Court's diversion scheme order. Aguilar asks the Court to exclude all evidence that merely "relate[s], at

7

least in part" to the diversion scheme. Mot. 4; see id. at 18 (seeking exclusion of "any" such evidence). But evidence that relates in part to the diversion scheme may also relate in part to the charged bribery schemes. Indeed, it often does: as the government has explained (see ECF Dkt. No. 131 at 5-7), both the diversion scheme and the charged bribery schemes operated by the same means and methods, through the same slush fund and shell companies, controlled by the same Curaçao-based co-conspirator (Lionel Hanst), all at the direction of the same person (the defendant). Thus, emails or bank documents often contain statements or reflect transactions that relate to both schemes. In accordance with this Court's prior order, however, the government will seek to admit only such evidence that can be safely discussed without implying to the jury that there was, in fact, a diversion scheme. There is therefore no reason to exclude any and all evidence that merely relates, in part, to the diversion scheme.

Finally, evidence related to the diversion scheme may be admissible if the defendant testifies or opens the door to it. This Court previously ruled that the diversion scheme was relevant, direct evidence of the charged offenses (and, in the alternative, admissible under Rule 404(b)), but then excluded it under Rule 403. See ECF Dkt. No. 155 at 4. But "[t]he weighing of relevance under Rule 403 may be altered when a false impression is created[.]" United States v. Bilzerian, 926 F.2d 1285, 1296 (2d Cir. 1991). For instance, "evidence whose probative value might not ordinarily outweigh its prejudicial effect if offered on direct examination is admissible to rebut testimony elicited on cross examination that created a false impression." Id.; see United States v. Martinez, 775 F.2d 31, 37 (2d Cir. 1985) (same); United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) (similar). Indeed, "[a] party who broaches a subject in almost any way—by argument, by relying on evidence, by putting questions to witnesses called by others, by calling witnesses and adducing their testimony— . . . [cannot] complain about reasonable

8

countermoves by others." 1 MUELLER & KIRKPATRICK, FEDERAL EVIDENCE, Federal Evidence § 1:12 (4th ed.).

The defendant has already invited admission of his self-serving and false statement to federal agents that ███████████████████████████████████████████ ███████████████████████████████ ECF Dkt. No. 185-1 at 16. Should Aguilar make such an argument before the jury, he would have opened the door to the diversion scheme. He would likewise open the door if he were to argue or suggest that the government cannot account for what happened to all the funds that Hanst transferred at Aguilar's direction and that its investigation is therefore somehow faulty or incomplete. Last of all, if the defendant testifies, the Court should permit the government to cross-examine Aguilar regarding the diversion scheme because fraudulent and deceitful theft from one's employer is "probative of [one's] character for truthfulness." Fed. R. Evid. 608(b). See Castillo v. Hogan, No. 3:14-CV-1166 (VAB), 2019 WL 1649944, at *4 (D. Conn. Apr. 16, 2019) (prior acts that "'reflect dishonesty or deceit'" are admissible under Fed. R. Evid. 608(b) (quoting Lewis v. Velez, 149 F.R.D. 474, 481 (S.D.N.Y. 1993)). That is so regardless of the subject of his testimony. See, e.g., 2 MUELLER & KIRKPATRICK, FEDERAL EVIDENCE § 4:43 (4th ed.) (inquiry regarding prior deceitful acts "is proper merely because the defendant or a defense witness testifies"); see also United States v. Havens, 446 U.S. 620, 626–27 (1980) ("It is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.").

## CONCLUSION

For the foregoing reasons, Aguilar's responsive motion in limine should be denied.

Dated:   Brooklyn, New York
         December 17, 2023

                                          Respectfully submitted,

                                          BREON PEACE
                                          United States Attorney

By:           /s/
              Jonathan P. Lax
              Matthew R. Galeotti
              Assistant U.S. Attorneys

              GLENN S. LEON
              Chief, Fraud Section
              Criminal Division, U.S. Dept. of Justice

By:           /s/
              Derek J. Ettinger
              Assistant Chief, FCPA Unit
              Clayton P. Solomon
              Trial Attorney, FCPA Unit

              MARGARET A. MOESER
              Acting Chief, Money Laundering & Asset
                Recovery Section
              Criminal Division, U.S. Dept. of Justice

By:           /s/
              D. Hunter Smith
              Trial Attorney, International Unit