

U.S. Department of Justice

United States Attorney
Eastern District of New York

JPL/MRG
F. #2019R01460

271 Cadman Plaza East
Brooklyn, New York 11201

January 7, 2024

By ECF and E-mail

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Javier Aguilar
                   Criminal Docket No. 20-390 (ENV)

Dear Judge Vitaliano:

The government respectfully moves for an order that any testimony or evidence regarding the laws of foreign countries should be presented to the Court outside the presence of the jury. The defendant has disclosed more than 50 exhibits and sub-exhibits consisting of Mexican legal materials, including the texts of the Mexican Constitution and of several Mexican statutes and decrees (e.g., DX 471, 472, 474, 475, 553, 573), a proposed amendment to a Mexican statute (DX 484), a Mexican Supreme Court decision (DX 552), news reports of yet more Mexican judicial decisions (DX 468), and legal analysis related to several Mexican equivalents of a Freedom of Information Act request (DX 469).[1] The Court would never consider handing the jury a slew of American statutes, articles, legislative history, legal summaries, and the text of the Constitution for the jury to make of it what it will. There is no reason to do so with foreign law materials either. The government therefore also respectfully moves the Court to preclude the submission to the jury of all such exhibits, whose only apparent purpose is to cause confusion about the content of Mexican law.[2]

---

[1] All exhibits referenced herein will be provided to the Court via USAfx.

[2] While the government stated in a prior letter, ECF Dkt. No. 207, that it anticipated calling experts on foreign law to testify before the jury, after reviewing the relevant case law, it is clear that such testimony should be presented to the Court outside the presence of the jury. The defendant's confusing and misleading exhibits underscore why courts have so held and why this Court should do the same.

The government has no objection to the defense's use of such materials in cross-examination, if any, of foreign law experts outside the presence of the jury.

I. Background

This case raises two sets of questions of foreign law, set forth below.

First, the Superseding Indictment alleges "offenses against a foreign nation involving bribery of a public official . . . in violation of the Ecuadorian Penal Code and the Mexican Penal Code," as specified unlawful activities related to the money laundering conspiracy charged in Count Three of the Redacted Superseding Indictment. ECF Dkt. No. 244 ¶ 56; see 18 U.S.C. § 1956(c)(7)(B)(iv) (providing for this specified unlawful activity). Thus, as the government previously explained, see ECF Dkt. No. 207, to instruct the jury on Count Three, the Court will need to instruct the jury on the elements of the relevant bribery offenses under the Ecuadorian and Mexican Penal Codes. See, e.g., United States v. Thiam, 934 F.3d 89, 93 (2d Cir. 2019).

Second, the jury will also need to determine whether Petroecuador, Petróleos Mexicanos ("Pemex") and Pemex Procurement International, Inc. ("Pemex Procurement International") are "instrumentalities" of a foreign government within the meaning of 15 U.S.C. § 78dd-2(h)(2).[3] An "instrumentality" is an "entity controlled by the government of a foreign country that performs a function the controlling government treats as its own." United States v. Esquenazi, 752 F.3d 912, 925 (11th Cir. 2014). "[W]hat constitutes control and what constitutes a function the government treats as its own are fact-bound questions." Id. at 925. Both parties agree that the jury must make the ultimate determination as to whether an entity is an instrumentality. See ECF Dkt. No. 232 at 20-22 (government's request to charge); ECF Dkt. No. 231 at 26-27 (defendant's request to charge). Nonetheless, foreign governments often exercise "control" over entities and define those entities' "function" through law. Accordingly, jurors should be instructed on relevant foreign law to help them determine whether the government has proven that certain entities are instrumentalities of a foreign government.

Here, for example, jurors charged with determining whether Petroecuador, Pemex, and Pemex Procurement International are "instrumentalities" should be instructed that both the Ecuadorian and Mexican constitutions define the petroleum industry as a "strategic sector" that must "come under the decision making and exclusive control of the State." ECF Dkt. No. 207-1 (quoting Art 313 of Ecuadorian Constitution); see also ECF Dkt. No. 207-2 (similar for Arts. 25(¶5) and 28(¶4) of the Mexican Constitution). They should also be instructed that Ecuadorian

---

[3] The FCPA, which criminalizes offers and payments to "foreign officials," 15 U.S.C. §§ 78dd-2(a)(1), (a)(3), defines a "foreign official" as an officer or employee of, or a person acting in an official capacity for or on behalf of, "a foreign government or any department, agency, or instrumentality thereof." 15 U.S.C. § 78dd-2(h)(2) (emphasis added). The Superseding Indictment alleges that the defendant offered and paid bribes to individuals who were either employees of instrumentalities or who, in their official capacities, worked for or on behalf of an instrumentality, or both. See, e.g., ECF Dkt. No. 244 at ¶¶ 9-10 (alleging that Gonzalo Guzman Manzanilla and Carlos Espinosa Barba were both employees of Pemex Procurement International and worked in their official capacity for or on behalf of Pemex).

and Mexican law provide their respective governments legal authority to appoint members of the Board of Directors and executive officers of Petroecuador and Pemex, ECF Dkt. No. 207-1 at 6 (citing Ecuadorian Executive Decree No. 315), ECF Dkt. No. 207-2 at 9-10 (citing *Ley de Petróleos Mexicanos* (the "Pemex Law" or "LPM"), Arts. 15-47), and mandate that state oil company profits that are not reinvested must be transferred to the general governmental budget, ECF Dkt. No. 207-1 at 6-7 (citing Ecu. Const. Art 315); ECF Dkt. No. 207-2 (citing Mex. Const., Art. 27(¶7)). Further, jurors charged with determining whether Pemex Procurement International was an instrumentality of the Mexican government should be instructed regarding the Mexican laws that govern so-called "*empresas filales*" (affiliates) of Pemex. These provisions provide, among other things, that such affiliates fall under Pemex's "special regime" and that the Mexican government, through Pemex, shall have extensive control over their activities. See ECF Dkt. No. 207-2 at 10-14 (citing LPM Arts. 1, 6, 10, 13, 46, 50, 51, 52, 54, 59, 61, 62, 65, 70, 89, 94, 113 and other authorities).[4] In addition, although the defendant has not disclosed any legal experts of his own, he has designated as defense exhibits many Mexican law provisions as an exhibits and presumably will argue that they are relevant to Pemex's and Pemex Procurement International's status as "instrumentalities" under 15 U.S.C. § 78dd-2(h)(2).

> II. Under Federal Rule 26.1, Issues of Foreign Law Should Be Determined By The Court Outside the Presence of the Jury

"Issues of foreign law are questions of law." Fed. R. Crim. P. 26.1. They are thus "for the court rather than the jury to determine." 2A WRIGHT & MILLER, FED. PRAC. & PROC. CRIM. § 431; see Linde v. Arab Bank, PLC, 920 F. Supp. 2d 282, 286 (E.D.N.Y. 2011) ("questions of foreign law are not to be determined through a proffer of expert testimony given to the jury").

Rule 26.1 "makes clear that any questions of foreign law that are relevant and material to a federal criminal case are to be determined by the trial judge." United States v. Bankman-Fried, No. S6 22-CR-0673 (LAK), 2023 WL 6162865, at *1 (S.D.N.Y. Sept. 21, 2023) (emphasis added). Thus, Rule 26.1 applies not only when the jury must be instructed on the elements of a foreign predicate offense, but also to other "incidental foreign law issues" that "may [be] encounter[ed] in [federal criminal] prosecutions." Pasquantino v. United States, 544 U.S. 349, 370 (2005). Pasquantino, for example, was a wire fraud prosecution under 18 U.S.C. § 1343 that did not call for the jury to find—or be instructed on—the elements of any foreign offense. Instead, it called on the jury to determine whether the defendant had devised a scheme to obtain "property" within the meaning of 18 U.S.C. § 1343, and Canadian tax law was relevant to that determination. See id. at 354-70. Rejecting defendant's concerns about the "unmanageable complexity" of foreign tax law, the Supreme Court directed that such "incidental" issues of foreign law should be resolved by the court under Rule 26.1. Id. at 370.

The foreign legal questions in this case should likewise be determined by the Court. First, the Court should determine—outside the presence of the jury—the elements of the Ecuadorian and Mexican bribery offenses alleged as specified unlawful activities under Count Three of the Superseding Indictment, and then instruct the jury on them. E.g., Thiam, 934 F.3d at

---

[4] The foregoing are only representative samples of the foreign law that may be relevant to the jury's instrumentality determination.

93. The Court should likewise determine—and then instruct the jury on—the Ecuadorian and Mexican law that is relevant to the jury's determination of whether certain entities are "instrumentalities" under 15 U.S.C. § 78dd-2(h)(2), because such "incidental" questions of foreign law are also properly decided under Rule 26.1. Pasquantino, 544 U.S. at 370; see Bankman-Fried, 2023 WL 6162865, at *1 & n.6 (precluding testimony on foreign law before the jury, but inviting a proposed jury instruction).

"[I]n deciding such issues [of foreign law] a court may consider any relevant material or source—including testimony." Fed. R. Crim P. 26.1. But that testimony should be before the Court, not the jury. After all, "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge," Marx & Co. v. Diners' Club Inc., 550 F.2d 505, 509–10 (2d Cir. 1977), and Rule 26.1 makes clear that foreign law is no exception. That is because "[i]n a trial there is only one legal expert—the judge." Pivot Point Int'l, Inc. v. Charlene Prod., Inc., 932 F. Supp. 220, 225 (N.D. Ill. 1996); see id. (holding that a jury instruction, rather than witness testimony, is the proper method to instruct jury on the law, including "necessary general information about" the relevant area of law); Bankman-Fried, 2023 WL 6162865, at *1 & n.6 (inviting proposed jury instruction on relevant issues of foreign law). Further, questions of foreign law should not be resolved based on "the credibility of the experts," but instead on "the persuasive force of the[ir] opinions." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 92 (2d Cir. 1998). It is of course the role of the Court, not the jury, to determine the persuasive force of legal opinions.

For similar reasons, the defendant should be precluded from submitting foreign statutes, case law, and legal materials to the jury and from otherwise making legal arguments about the content of foreign law to the jury. Permitting the defendant to introduce his recently disclosed foreign law exhibits would result in precisely the kind of "unmanageable complexity," Pasquantino, 544 U.S. at 370, that Rule 26.1 was designed to avoid and would contravene the basic principle that the jury are "judges of fact and the judges the deciders of law." Jones v. United States, 526 U.S. 227, 248 n.8 (1999). Put simply, "le[aving] the jury adrift," Bammerlin v. Navistar Int'l Transp. Corp., 30 F.3d 898, 901 (7th Cir. 1994), to resolve foreign legal disputes based off its own interpretation of foreign statutes and case law would "invite disaster," Marx & Co., 550 F.2d at 511.[5]

---

[5] In cases where the content or meaning of foreign law is not meaningfully in dispute, witness testimony and exhibits are unlikely to be prejudicial and may be the most efficient way to inform the jury of foreign legal principles. As described below, however, the defendant intends to raise several legal disputes about the meaning of foreign constitutions, statutes and case law. In such circumstances, the Court should not "le[ave] the jury adrift" to resolve these legal disputes as "issue[s] of fact [and] credibility," but should instead resolve all questions of "legal interpretation" and "provide the jury with the proper answer." Bammerlin, 30 F.3d at 901; accord Itar-Tass, 153 F.3d at 92 (foreign law disputes should not be resolved based on "the credibility of the experts").

III. <u>Defendant's Foreign Law Exhibits Underscore the Need for Judicial Gatekeeping and Should be Precluded Under Fed. R. Evid. 403</u>

The defendant's proposed exhibits are confusing and misleading, which highlights the need for the Court to assess foreign law issues and, thereafter, to instruct the jury appropriately. Relatedly—even if expert testimony on foreign law were put before the jury, the defendant's proposed exhibits should be precluded under Fed. R. Evid. 403. The majority of defendant's foreign legal materials appear designed to cause confusion as to the legal status of Pemex and Pemex Procurement International and as to whether the employees of the latter entity are "public servants" under Mexican law. The government describes below how the exhibits the defendant has designated would confuse the jury and distract it from the instructions that this Court should give.

    A. <u>Status of Pemex Procurement International Employees as "Public Servants" Under Article 222 of the Mexican Federal Criminal Code</u>

Both parties agree that Article 222(II) of the Mexican Federal Criminal Code is the relevant Mexican bribery offense for purposes of Count Three of the Redacted Superseding Indictment. ECF Dkt. No. 232 at 41 (government's requests to charge); ECF Dkt. No. 231 at 36 (defendant's requests to charge). The parties also agree that one of the elements of that bribery offense requires there to have been a promise or a payment to a "public servant," ECF Dkt. No. 231 at 36; ECF Dkt. No. 232 at 41, and that Article 212 of Mexican Federal Criminal Code provides the relevant definition of "public servant," ECF Dkt. No. 231 at 36 n.114; ECF Dkt. No. 207-2 at 4.[6]

But, as the government's legal expert has explained:

> In Mexico, there are definitions of the term "public servant" (*servidor publico*) that appear in other bodies of law. For example, Article 108 of the Constitution defines "public servants" as "representatives elected by

---

[6] As David Lopez, Esq., the government's legal expert, has explained, Article 212 is located in the first article of Book Two, Title Ten of the Federal Criminal Code, which is the same Book and Title in which Article 222(II)—the offense itself—is located. ECF Dkt. No. 207-2 at 4. Article 212 provides:

> <u>For the purposes of this Title</u> and the subsequent one, a public servant is any person who performs a job, position or commission of any nature in the centralized Federal Public Administration or in that of the Federal District, decentralized organizations, majority state-owned companies, organizations and entities assimilated to them, public trusts, State productive companies, in autonomous constitutional bodies, in the Congress of the Union, or in the Federal Judiciary, or who manage federal economic resources.

ECF Dkt. No. 207-2 at 4 (quoting Article 212 of Mexican Federal Criminal Code) (emphasis added).

5

> popular vote, members of the Federal Judiciary, officials and employees and, in general, all people who perform a job, position or commission of any nature in the Congress of the Union or in the Federal Public Administration, as well as the public servants of the agencies to which this Constitution grants autonomy." Const. Art. 108(¶ 1). Those definitions apply in the context stated in the law that includes them. For example, Article 108's definition of "public servant" is expressly limited to issues involving the responsibilities alluded to in Title Four of the Constitution, which is the Title that contains Article 108. *Id*. One knows that the definition of "public servant" in Article 212 is the one that applies to Title Ten of the Federal Criminal Code (and the crime of bribery) because that is what Article 212 expressly states.

ECF Dkt. No. 207-2 at 5.

Notably, the definition of "public servant" in Article 108 of the Mexican Constitution is <u>narrower</u> than the definition under Article 212 of Federal Criminal Code because, among other things, the former does not include employees of majority state-owned companies or of organizations and entities assimilated to such companies. ECF Dkt. No. 207-2 at 4 (quoting Article 212 of Mexican Federal Criminal Code). But even though the defendant agrees (in his requests to charge) that Article 212 provides the relevant definition of "public servant," ECF Dkt. No. 231 at 36 n.114, he nonetheless has designated Article 108 of the Constitution as an exhibit. DX 473-B.[7] Even if that exhibit had some relevance in this case, it would be far outweighed by the prejudicial effect that it would have in providing jurors with an inapplicable legal definition of the term "public servant," one that is different (and narrower) than the definition they should apply.

The defendant has also designated a range of other Mexican legal materials that reflect such narrower definitions of the term "public servant," and which should likewise be precluded under Rule 403. For example, the defendant has also designated the Mexican General Law of Administrative Responsibility ("GLAR") (*Ley General de Responsabilidades Administrativas*), DX 455, and designated as sub-exhibits articles of that law that require "public servants" to file disclosures of their net worth and assets. DX 455-A, 455-B. This appears to be an effort to set up an argument that if Espinosa and Guzman did not file such disclosures, they cannot be public servants. But—in a provision of the GLAR that the defendant has declined to translate or designate as a sub-exhibit—the GLAR defines the term "public servant" as having the same meaning as under Article 108 of the Constitution. See DX 455 at 5 (GLAR, Art. 3(XXV)).[8] Thus, whether Espinosa and Guzman filed disclosures of their net worth and assets is irrelevant to whether they are "public servants" within the meaning of Article 212 of Federal Criminal Code.

---

[7] Defendant has designated the <u>entire Mexican Constitution</u> as DX 473, and designated specific portions that he appears to deem relevant as sub-exhibits (such Article 108 as DX 473-B). He has followed a similar practice with Mexican statutes.

[8] The government is in the process of obtaining a translation of this provision of the GLAR.

Likewise, the defendant has marked as exhibits two printouts from a website that supposedly constitutes a "registry of public servants," and which show no "hits" for searches for "Gonzalo Guzman Manzanilla" and "Carlos Espinosa Barba." See DX 549, 563. First, the results are wholly irrelevant because they are dated December 23, 2023 (long after both Guzman and Espinosa ceased to work for Pemex Procurement International, as well as the charged conspiracy). They are also inadmissible hearsay because they are completely irrelevant if not being offered for their truth. Moreover, they are highly prejudicial because they invite the jury to draw erroneous conclusions about whether Guzman and Espinosa were "public servants." The registry from which they are derived appears to be the same registry created pursuant to the GLAR and which applies only to "public servants" within that law's narrower definition of the term. See DX 455 at 11-13 (GLAR, Arts. 26-32). These exhibits will therefore distract the jury from determining whether Guzman and Espinosa satisfy the correct, broader definition of "public servant" under Article 212 of the Federal Criminal Code.

In a similar effort to distract from the true and applicable definition of "public servant," the defendant has designated as DX 469 what appears to be one or more partially translated responses to the Mexican equivalent of a Freedom of Information Act request.[9] One such response reflects that on February 28, 2023, someone (perhaps acting at the request of defendant's counsel) sent the following question to Pemex's "Transparency Unit":

> It is requested to inform whether employees of PEMEX Procurement International, Inc. (a private company) are considered Public Servants of the Mexican State or, where appropriate, if they act in their capacity as private individuals, exposing the legal grounds to support the response.

DX 469 at 13.[10] According to the exhibit, PEMEX's Transparency Unit responded to this vague and leading question by stating that "Mexican legislation regarding transparency is not applicable to" Pemex Procurement International. Id. The response also quoted a different agency's letter that cited Article 108 of the Mexican Constitution and Article 3(XXV) of the GLAR and then states that Pemex Procurement International's employees are not "public servants." This exhibit is not only unfounded hearsay concerning an irrelevant time period, but it is also prejudicial and highly likely to confuse the jury because it relies on a definition of the term "public servant" from Article 108 of the Constitution, which is materially different from the definition in Article 212 of the Federal Criminal Code that the jury is required to apply. As such, it too should be precluded under Rule 403.

---

[9] The exhibit contains Spanish-language responses to "FOIA" (or its equivalent) requests number 330023823001409 and 3300238823001431, but English-language translations of the responses to different requests (330023823001404 and 330023823001405). The exhibit is confusing and prejudicial and should be excluded on that ground alone.

[10] Though the government quotes from the translation provided by the defendant, it reserves the right to object to it and is in the process of obtaining a better translation. Among other things, defendant's translation appears to incorrectly translate "entitades paraestatales" as "state-owned entities."

B. Status of Pemex and Pemex Procurement International as a "Parastatal Entity" and a "Majority State-Owned Company" Under Mexican Law

Despite proposing to put before the jury exhibits reflecting different definitions of the term "public servant," the defendant ultimately agrees that Article 212 of the Federal Criminal Code provides the applicable definition of that term. See ECF Dkt. No. 231 at 36 n.114. As described above, that definition includes "any person who performs a job, position or commission of any nature in . . . majority state-owned companies, [or] organizations and entities assimilated to them." ECF Dkt. No. 207-2 at 4 (quoting Article 212 of Mexican Federal Criminal Code). Thus, the jury will need to determine whether Pemex Procurement International—where Guzman and Espinosa worked—was either a "majority state-owned company" or an organization and entity assimilated to such a majority state-owned company. ECF Dkt. No. 232 at 41. Evidence will show that Pemex Procurement International is wholly owned by Pemex and Pemex is itself the "exclusive property of the [Mexican] Federal Government." ECF Dkt. No. 207-2 at 8 (quoting LPM, Art. 2). This alone provides a basis for the jury to conclude that Pemex Procurement International is a "majority state-owned company."

The defendant, however, has designated a number of exhibits that, if introduced, would confuse and mislead the jury as to whether Pemex Procurement International is a "majority-state-owned company," or an entity assimilated to such a company. For example, the defendant has marked the Mexican Law of the Federal Public Administration (*Ley Orgánica de la Administración Pública Federal*) ("LFPA") as an exhibit, DX 472, designated an article of that law defining "majority state-owned company" as a sub-exhibit, DX 472-A, and has argued that that law's definition of "majority state-owned company" should also apply to the Federal Criminal Code. See ECF Dkt. No. 231 at 37 n.116.

As initial matter, whether the LFPA's definition of a "majority state-owned company" is applicable to the Federal Criminal Code—an entirely different statute—is a legal question that should be decided by the Court, not the jury. Accordingly, there is no basis to admit the LFPA as an exhibit to the jury.

Further, the legal argument that the defendant apparently intends to make—whether to the Court or to the jury—is incorrect. Defendant apparently intends to argue that the LFPA's definition of "majority state-owned company" requires the Mexican federal government to hold a company's stock <u>directly</u> for the company to be a "majority state-owned company."[11] Because

---

[11] The LFPA's definition, as translated by defendant, provides that "the following are majority state-owned companies":

> I. National credit companies incorporated under the terms of their specific legislation;
> II. Companies of any other nature, including national auxiliary credit organizations, as well as national insurance and bonding

Pemex owns Pemex Procurement International's stock, the defendant has argued, Pemex Procurement International is not a "majority state-owned entity." See ECF Dkt. No. 237 at 37 (advancing such an argument in his request to charge). This argument, as described below, is incorrect as a matter of law and defendant's own exhibits demonstrate as much. The argument—and the exhibits the defendant has introduced in support of it—should therefore not be made or introduced before the jury.

First, Article 212 of the Federal Criminal Code defines a "public servant" as an employee of either a "majority state-owned company" or an "organization or entity assimilated to" a majority state-owned company. ECF Dkt. No. 207-2 at 4 (quoting Federal Criminal Code, Art. 212). Even if Pemex Procurement International were not a majority state-owned company itself, it is "assimilated to" its parent company, Pemex, which is directly owned by the Mexican federal government. See ECF Dkt. No. 207-2 at 8 (Pemex is the "exclusive property of the [Mexican] Federal Government" (quoting LPM, Art. 2)). Therefore, Pemex Procurement International's employees are "public servants" within the meaning of Article 212 of the Federal Criminal Code, regardless of whether Pemex Procurement International is itself a "majority state-owned company."

Second, even assuming the LFPA's definition of "majority state-owned company" applies to the Federal Criminal Code, Pemex Procurement International would satisfy it. In fact, defendant's own exhibits and arguments demonstrate as much. As defendant argues, the LFPA defines a "majority state-owned entity" as an entity owned by the Mexican federal government or one or more "parastatal entities." See ECF Dkt. No. 231 at 37 & n.116 (citing LFPA, Art. 46); see also DX 472-A-T (defendant's translation of LFPA, Art. 46). Thus, by defendant's own proffered definition, Pemex Procurement International would be a "majority state-owned entity" if its owner—Pemex—is a "parastatal entity" under Mexican law.

Defendant's own exhibits demonstrate that Pemex is such a "parastatal entity." The defendant has designated as an exhibit a Mexican Supreme Court opinion that holds that Pemex is

---

> institutions, in which one or more of the following requirements are met:
> A) The Federal Government or one or more parastatal entities, jointly or severally, contribute or own more than 50% of the capital stock;
> B) Securities representing capital stock of special series that can only be subscribed by the Federal Government are included in the constitution of its capital stock; or
> C) The Federal Government has the power to appoint the majority of the members of the governing body or its equivalent, or to designate the president or general director, or when it has the power to veto the resolutions of the governing body itself.

DX 472 A-T (LFPA, Art. 46).

9

a (1) "state productive company," and (2) that "state productive companies" are a "new category of parastatal entities" (*una nueva categoría de entidades paraestatales*), which was created by a constitutional reform in 2013. DX 552, 552-T.[12] This opinion—from Mexico's highest court—should be the end of the matter. But it is not all: the defendant has also designated as an exhibit a list of "*Entidades paraestatales de la administracion publica federal*" or "parastatal entities of the federal public administration" apparently from the official journal of the Mexican federal government. See DX 467. "Petróleos Mexicanos" appears under subheading A.IV of this list of parastatal entities. See DX 467-T at 5.

Even though the defendant's own exhibits undermine his argument, the defendant nonetheless maintains that Pemex is not such a "parastatal entity" under Mexican law, and he has cited—and designated as an exhibit—the Mexican Law of Parastatal Entities as his support. See DX 475-A-T; ECF Dkt. No. 231 at 37 n.118. But that law does not support defendant's contention. To the contrary, it states only (according to the defendant's translation) that state productive companies—such as Pemex—"are excluded from the observation of this order." DX 475-A-T; ECF Dkt. No. 231 at 37 n.118. In other words, the law provides that Pemex and other state productive companies are not required to follow all the requirements set forth in the Law of Parastatal Entities. That is because—as the Mexican Supreme Court opinion defendant has marked as an exhibit provides—state productive companies are a "new category of parastatal entities," which have "a special and differentiated legal regime, far from the traditional logic of administrative controls and hierarchy." DX 552-T. But that, of course, does not mean Pemex is <u>not</u> a parastatal entity. Indeed, there would be no reason for the Law of Parastatal Entities to exempt Pemex from the law's requirements, if Pemex were not a parastatal entity in the first place.[13] Defendant's interpretation of the Law of Parastatal Entities is inconsistent with the very exhibits they have designated in support of it: the Mexican Supreme Court opinion and the list of parastatal entities, each of which expressly hold and state that Pemex <u>is</u> a "parastatal entity."[14]

The defendant has also designated what purports to be a <u>Forbes Mexico</u> article from July 21, 2014 with the title "Pemex . . . ceases to be parastatal (*paraestatal[]*)." DX 551, 551-T, as well as a similarly titled article from Elfinanciero.com.mx. DX 550, 550-T. (Defendant has

---

[12] Defendant's translation inaccurately translates the Mexican Supreme Court opinion as holding that state productive companies are a "new category of <u>state-owned entities</u>," DX 552-T (emphasis added), not parastatal entities (*entidades paraestatales*). The government is in the process of obtaining a correct translation.

[13] By contrast, Pemex Procurement International is <u>not</u> a parastatal entity and the relevant legal provision expressly so states. All agree that Pemex Procurement International is an "affiliated company" of Pemex. See ECF Dkt. No. 231 at 37 n.118 (reflecting defendant's agreement). The Pemex Law states clearly (in defendant's own translation) that "Affiliated companies shall not be parastatal entities …." Id. (quoting LPM, Art. 118).

[14] DX 548, which purports to be a list of parastatal entities (*entidades paraestatales*) "subject to the Federal Law of Parastat[al] Entities" is also irrelevant and prejudicial. The list does not include Pemex but, as explained above, that is simply because it is a parastatal entity that is <u>not</u> subject to the Federal Law of Parastatal Entities.

again incorrectly translated the word "paraestatal" in the article's titles as "state-owned."). As the Court well knows (but a jury may not), Forbes Mexico magazine and El Financiero articles are not authoritative sources of law and these articles' incorrect characterization of Pemex's status should be excluded as both unauthenticated hearsay (if offered for the truth) and more prejudicial than probative under Rule 403. These exhibits lay bare the defendant's apparent plan: confuse the jury with a series of legal authorities, thus and hope that they rely on some simple but incorrect article headlines (offered by the defendant for their truth.) These exhibits should be precluded.

      C.      Other Erroneous, Irrelevant and Prejudicial Defense Exhibits Should be Precluded

For similar reasons, the Court should also exclude DX 468, which is an unauthenticated hearsay printout of an article from "reforma.com" reporting on a Mexican court's supposed holding that employees of "PMI Comercio Internacional" did "not act in the capacity of public servants." DX 468-T. The article is unreliable hearsay (if offered for the truth) and PMI Comercio Internacional is not involved in this case, in any event. Nor is it even clear from the article which definition of "public servant"—the Federal Criminal Code's or the Constitution's—the court was supposedly applying.

The Court should likewise preclude DX 554 and DX 484, which appear to be reports on proposals to amend Mexican laws, at least one of which failed. Even were they not unauthenticated hearsay, "it is well established that the views of a later Congress as to the construction of a statute adopted by an earlier Congress have very little, if any, significance," United States v. Mauro, 544 F.2d 588, 594 (2d Cir. 1976), rev'd on other grounds, 436 U.S. 340 (1978); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 354 n.39 (1977), particularly where the proposed amendments failed. It is further not even clear how these reports are relevant under Fed. R. Evid. 401, much less satisfy Fed. R. Evid. 403.

   IV.    Conclusion

It is not the jury's role to evaluate competing legal arguments, nor to make sense of foreign constitutions, statutes, court opinions and other supposed legal authorities. These legal questions should be decided by the Court, and any effort by the defendant to introduce his legal materials before the jury would cause confusion, distract from the Court's instructions or, worse, invite the jury to decide the case on false legal authority.

The Court should take any testimony or evidence it requires regarding the laws of Mexico or Ecuador outside the presence of the jury. And, as is the standard in our system of justice, the Court should instruct the jury on the law that it is relevant to the facts it finds. For the reasons described above, the Court should also preclude the defendant from making erroneous

11

legal argument or presenting DX 455, 467, 468, 469, 471, 472, 473, 474, 475, 484, 548, 549, 550, 551, 552, 553, 554, 563, and 573, and all sub-exhibits thereto, to the jury.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Jonathan P. Lax
Matthew Galeotti
Assistant U.S. Attorneys
(718) 254-6139

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Dept. of Justice

By:     /s/
Derek J. Ettinger
Assistant Chiefs, FCPA Unit
Clayton P. Solomon
Trial Attorney, FCPA Unit

MARGARET A. MOESER
Acting Chief, Money Laundering & Asset
  Recovery Section
Criminal Division, U.S. Dept. of Justice

By:     /s/
D. Hunter Smith
Trial Attorney, International Unit

Enclosure

cc:     Counsel of Record (by ECF)