

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL/MRG  
F. #2019R01460

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 16, 2024

<u>By ECF and E-mail</u>

The Honorable Eric N. Vitaliano  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    <u>United States v. Javier Aguilar</u>  
               <u>Criminal Docket No. 20-390 (ENV)</u>

Dear Judge Vitaliano:

      The government respectfully moves for an order precluding admission of several defense exhibits that relate to federal agents' interview of the defendant at Houston Intercontinental Airport ("IAH") on July 10, 2020.

      In a previous ruling, this Court ruled that the defendant "may not contest the voluntariness of his confession [at IAH] at trial."  12/11/2023 Mem. & Order at 7; see <u>id</u>. at 6-7 (observing that the Court has already determined that Aguilar was not in custody during that interview and that 18 U.S.C. § 3501 applies only to custodial interviews).  Thus, though Aguilar may "impeach the trustworthiness of the testimony of the agents" who interviewed him and may even impeach his own statements, <u>id</u>. at 7-8, this Court barred "argument about or inquiry into what Aguilar deems to be 'coercive circumstances surrounding his encounter with federal agents.'" <u>Id.</u> at 7 (quoting defendant's opposition).

      Aguilar's exhibit list nonetheless contains several exhibits that appear to have no purpose except to argue that he was interviewed under coercive circumstances.  They are therefore precluded under this Court's prior order.  Even if they were not, they should be precluded as inadmissible on other grounds, as described below.

      **Photographs.**  Aguilar has marked as exhibits five photographs of the room in which he was interviewed (DX 131-135).  These photographs, which were taken by the government at the defendant's request in advance of the suppression hearing, should each be precluded both under this Court's prior ruling and under Rule 403.

      The photographs include two close-ups of the chair in which Aguilar supposedly sat during the interview and to which Aguilar has claimed "handcuffs" were attached (DX 131 and

132). The photographs, of course, do not depict any handcuffs because, as this Court has already found, Aguilar's claim that handcuffs were attached to the chair was not credible. See ECF Dkt. No. 106 at 16; see also ECF Dkt. No. 102 at 27-28 (government post-hearing brief responding to Aguilar's speculative arguments about the removal of the handcuffs). These photographs can have no purpose except to relitigate whether the agents interviewed Aguilar under supposedly coercive conditions, and are thus precluded under this Court's prior order. Moreover, even if the Court had not already ruled on this issue, the Court should preclude the photographs under Rule 403.

Two additional photographs (DX 133 and 135) depict Spanish- and English-language posters on the room's wall. The posters advise individuals of their rights if they are in immigration detention. They should also be precluded. First, this Court has already found that Aguilar was not in custody during the interview. The defendant should therefore not be permitted to have the jury second-guess that finding by showing them photographs of the posters to imply he was in fact in detention. Second, the photographs were taken more than a year after Aguilar's interview and, as the Court has already recognized, there is no evidence that the posters were in existence when the interview occurred, much less that the defendant noticed them. See ECF Dkt. No. 106 at 15 n.5 ("The absence of any mention of such posters in Aguilar's affidavit, however, strongly suggests that no such posters were present."). Thus, even if the photographs had some purpose other than relitigating the suppression motion, their minimal probative value would be outweighed by the unfair prejudice and potential jury confusion that their admission would entail.

Nor is there any reason to show the jury a photograph of the room's doorway (DX 134), which Aguilar has alleged was "block[ed]" by two Customs and Border Protection agents throughout the interview. See ECF Dkt. No. 66-2 at 3. That allegation, too, lacked—and continues to lack—any foundation in evidence. See Suppression Hr'g Tr. 36:3-5-11 (SA Zukas's testimony that no one was posted outside door or otherwise blocked it); id. 247:15-22 (same of SA Wood). The photograph is irrelevant and its admission would violate this Court's prior order and Rule 403.

All in all, none of these photographs are necessary or relevant, and all are unduly prejudicial and misleading. If Aguilar wishes to establish that he was seated in a room at the airport during the interview, he can elicit testimony as to that fact. There is no need to permit inquiry into the characteristics of the room's furnishings, let alone admit two close-ups of the chair in which he was seated or photographs of the room itself. Those photographs—taken over a year after the interview—do not tend to prove any fact of consequence in this case, see Fed. R. Evid. 401, much less satisfy Rule 403.

**Law Enforcement Agency Policies on Custodial Interviews.** The defendant has also designated as exhibits Department of Justice ("DOJ") and Homeland Security Investigations ("HSI") policies concerning electronic recording of custodial interviews (DX 136 and 137). As the government explained when it last addressed the defendant's arguments regarding them, those policies create a presumption only that some custodial interviews should be electronically recorded. See DX 136 (U.S. Dep't of Just., Justice Manual ("JM") § 9-13.001) at 1 (creating presumption that interviews "in a place of detention with suitable recording equipment, following arrest but prior to initial appearance" be recorded); DX 137 (Dep't Homeland Sec., Management Directive 047-03, Policy Concerning Electronic Recording of Statements in Federal Criminal Investigations) at 2. The federal agents' interview of Aguilar was not "custodial," so the policies did not apply. Moreover, the policies are "solely intended for internal [agency] guidance," and

"may not be relied upon" by Aguilar "to create any rights or benefits (substantive or procedural)." DX 137 at 2; see JM § 1-1.200 available at https://www.justice.gov/jm/jm-1-1000-introduction#1-1.200. Any attempt to show them to the jury would not only contravene these express admonitions, but also waste time and confuse the jury by requiring the government to explain the purpose and nature of this internal agency guidance.

The policies do not have any apparent probative value. Even if they did, it would be outweighed by the prejudice the government would face in needing to relitigate the suppression motion and explain to the jury that the policies do not apply to non-custodial interviews such as the one here. Accordingly, inquiry about these irrelevant policies, and the policies themselves, should be precluded under this Court's prior order and under Rule 403.

**Law Enforcement Emails, Draft Reports and Other Hearsay.** The defendant also marked as exhibits a ream of law enforcement agents' email correspondence and text messages before (DX 123, 124, 125, 319 to 332, 334, 337, 338) and after (DX 126, 127, 128, 129, 130, 333, 342) the interview, a draft FBI 302 of the interview and its attachment (DX 344, 345), and a transcript of the suppression hearing (DX 122). None of this is admissible on hearsay and multiple other grounds.

The government assumes that the defendant has marked these exhibits to impeach government witnesses on cross-examination. If so, as the Court noted, "the lines of inquiry Aguilar might intend to pursue remain subject to a traditional Rule 401 and Rule 403 balancing test, considering the relevancy of the inquiry against the harms Rule 403 seeks to avoid" and, as this Court has also observed, at least some of the lines of inquiry that Aguilar apparently intends to pursue have at best "minimal" probative value. 12/11/2023 Mem. & Order at 8-9. The government does not at present seek to preclude use of these approximately 45 exhibits in cross-examination, but will do so when and if "the context of trial . . . tilt[s] the scales toward exclusion." Id. at 10.

For the foregoing reasons, the Court should preclude the photographs (DX 131-135) and law enforcement agency policy statements (DX 136, 137), and permit use of the

3

remaining exhibits (DX 123 to 130, 319 to 334, 337 to 347) only for impeachment and subject to Rule 403.

          Respectfully submitted,

          BREON PEACE
          United States Attorney

By:   /s/
          Jonathan P. Lax
          Matthew Galeotti
          Assistant U.S. Attorneys
          (718) 254-6139

          GLENN S. LEON
          Chief, Fraud Section
          Criminal Division, U.S. Dept. of Justice

By:   /s/
          Derek J. Ettinger
          Assistant Chiefs, FCPA Unit
          Clayton P. Solomon
          Trial Attorney, FCPA Unit

          MARGARET A. MOESER
          Acting Chief, Money Laundering & Asset
            Recovery Section
          Criminal Division, U.S. Dept. of Justice

By:   /s/
          D. Hunter Smith
          Trial Attorney, International Unit

Enclosure

cc:    Counsel of Record (by ECF)