**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
danielkoffmann@quinnemanuel.com

January 24, 2024

<u>VIA ECF</u>

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>*United States v. Javier Aguilar*</u>, No. 20 Cr. 390 (ENV) (E.D.N.Y.)

Dear Judge Vitaliano:

We write on behalf of Defendant Javier Aguilar in opposition to the government's letter motion in limine to preclude or limit the use of certain defense exhibits related to the government's interrogation of Mr. Aguilar at George Bush Intercontinental Airport in Houston, Texas ("IAH") on July 10, 2020. ECF No. 253 ("Mot.").

The government's letter largely rehashes arguments it raised in its pretrial motion in limine, ECF No. 181 at 5–7, which the Court already rejected, Mem. & Order 7–10 (Dec. 11, 2023) ("Order"). In its Order, the Court correctly held that Mr. Aguilar is permitted to, among other things: (1) impeach the credibility of the agents who interrogated him at IAH—only one of whom, Homeland Security Investigations Special Agent Matthew Wood, is slated to testify at trial—and (2) undermine the reliability of the statements that Mr. Aguilar allegedly made to the agents. Order 7. The exhibits the government now seeks to exclude are relevant to both points. Thus, they are relevant under Rule 401. And until the cross-examination of Agent Wood is under way, there is no basis to conclude that their probative value is substantially outweighed by any factor set out in Rule 403. The Court should deny the motion (again).

**Photographs of the Interrogation Room**

Photographs depicting the secondary-inspection room where the agents interrogated Mr. Aguilar comply with the Court's Order because they go to Agent Wood's credibility and the reliability of Mr. Aguilar's alleged statements during the interrogation. Order 7 (Mr. Aguilar "is free to attack and impeach the trustworthiness of the testimony of the agents who secured [his]

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON |
LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

statements at the IAH interview"). For example, Mr. Aguilar expects Agent Wood to testify that he chose to interrogate Mr. Aguilar in that enclosed space instead of another suitable location because of concerns about Covid-19, the July heat in Houston, and investigative privacy. ECF No. 98-16 ("Suppression Hr'g Tr.") at 234:22–235:17. The Order allows Mr. Aguilar to discredit any such testimony by, among other things, showing that Agent Wood's true motivation for picking that location was because it was an austere, government-dominated setting—one that Agent Wood has exploited in at least 20 other interrogations. *Id.* at 235:24–236:8; 276:8–9. Likewise, if the government claims—as it has in its prior briefing—that the interrogation occurred in a "common area" or some other anodyne setting, ECF No. 73 at 3, 13, then Mr. Aguilar has a right to disprove that assertion by showing the jury what this room actually looked like.

In addition, it is essential for jurors to see and appreciate the nature of the room where the interrogation took place because it bears on the reliability of Mr. Aguilar's alleged statements. Order 7 ("While Aguilar may not contest the voluntariness of his confession at trial, he is not precluded from offering evidence concerning the credibility of the statements made at IAH."). Depriving the jury of evidence that illustrates the intimidating setting in which Mr. Aguilar allegedly made these statements will distort the factfinding process and unfairly curtail Mr. Aguilar's ability to defend himself. Mr. Aguilar's opposition to the government's original motion in limine previewed precisely this line of cross-examination, ECF No. 179 at 10, and the Court's Order rejected the same arguments the government rehashes here, *see* ECF No. 181 at 5–6 (government acknowledged Mr. Aguilar is "free to attempt to impeach government witnesses and to provide reasonable context for the statements that he made to them").

The government's claim that "[t]hese photographs can have no purpose except to relitigate" whether the chair in which Mr. Aguilar sat had "handcuffs" connected to it, Mot. 1–2, is an incorrect red herring that ignores the probative and permitted purposes for which this evidence may be used. Indeed, the hornbook principle that evidence bearing on a key witness's credibility goes to "important issue[s] in the case" and "the jury is entitled to know of it," *Giglio v. United States*, 405 U.S. 150, 154–55 (1972), carries even greater weight when it comes to the credibility of law enforcement witnesses in a criminal case, *see, e.g.*, *Fraser v. City of New York*, No. 20 Cv. 4926 (CM), 2021 WL 1338795, at *7 (S.D.N.Y. Apr. 9, 2021) ("If police officers are the main witnesses for the prosecution, then the credibility of those officers is undoubtedly 'an important issue in the case.'" (quoting *Giglio*)).

Nor would Rule 403 preclude the admission of these photographs, which will take little time to introduce and use at trial, and which will be essential to complete the story of Agent Wood's interrogation of Mr. Aguilar. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997) (courts must "make [Rule 403] calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case"). If the government elicits testimony from Agent Wood about the interrogation but does not give the jury the necessary context of where and how that interrogation occurred, then Mr. Aguilar has a right to explore those omissions on cross-examination to give the jury a fuller understanding of those events and probe the accuracy of Agent Wood's testimony about it. *See id.* at 187 (Rule 403 entitles parties to "tell[ ] a colorful story with descriptive richness" to "sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict"). And having repeatedly walked witnesses through more than a dozen photographs during their examinations (including many those witnesses could not identify), the government cannot be heard to argue that it is

cumulative and overly time-consuming to bring witnesses' testimony to life through the introduction of photographs.

**Law Enforcement Recording Policies**

The government's claim that policies governing when federal agents should electronically record interrogations are irrelevant to this noncustodial interrogation, Mot. 2–3, ignores the many ways in which the agents' failure to record this interrogation goes to their credibility. Mr. Aguilar previously addressed this very issue in opposing the government's pretrial motion in limine, which the Court correctly denied. *See* ECF No. 179 at 10 ("These [credibility] concerns are all the more acute here because the agents deliberately chose not to record their interrogation of Mr. Aguilar.").

Numerous courts have acknowledged that agents' failure to record an interrogation undermines the credibility of their testimony about that interrogation.* That is especially true where, as here, the agents are subject to detailed policies about the use of electronic recording. Although the Department of Justice's policy applies a "presumption of recording" only to custodial interviews, it nevertheless "*encourages* agents and prosecutors to consider electronic recording in investigative or other circumstances where the presumption does *not* apply." DX 136 at 1 (emphases added). So too for the Department of Homeland Security. DX 137 at 2 ("This policy establishes a presumption that criminal investigators will electronically record statements made by individuals in their custody . . . . This policy also *encourages* Criminal Investigators to consider electronic recording in investigative or other circumstances related to criminal investigations where the presumption does *not* apply, and encourages Criminal Investigators to consult with prosecutors in such circumstances." (emphases added)). The government's letter tellingly overlooks those portions of these policy statements.

Agent Wood's familiarity with the operative policies and his deliberate decision not to record the interrogation of Mr. Aguilar notwithstanding the policies' encouragement that he do so are fair game for cross-examination. Mr. Aguilar is entitled to rely on these policies (among other evidence) to show jurors that the government chose not to create a record that would contain what Agent Wood's FBI colleague Special Agent Paul Zukas agreed would have been "the best evidence we could have of what happened in that room" during this case-critical encounter. Suppression Hr'g Tr. 123:3–7. Because there are few (if any) viable evidentiary alternatives available to undercut Agent Wood's testimony about this interrogation, Rule 403 concerns do not

---

* *See, e.g.*, *United States v. Solano*, 966 F.3d 184, 199–200 (2d Cir. 2020) (vacating and remanding conviction where Homeland Security Investigations agent "admitted that he could have recorded [defendant's] admissions by using his cellphone" but "chose not to," which led to "serious credibility questions"); *United States v. Wright*, 625 F.3d 583, 604 n.10 (9th Cir. 2010) (factfinder may use "the lack of a recording" of an interrogation to "support any disbelief it has of any witness' testimony"), *superseded by statute on other grounds as stated in United States v. Brown*, 785 F.3d 1337, 1351 (9th Cir. 2015); *United States v. Torres-Galindo*, 206 F.3d 136, 144 (1st Cir. 2000) ("recogniz[ing]" that "the FBI's practice of not recording confessions, preferring instead to rely on the testimony of the interviewing agent," "is susceptible to abuse"); *United States v. Thornton*, 177 F. Supp. 2d 625, 628 (E.D. Mich. 2001) ("It certainly harms the prosecution in a close case when the [factfinder] cannot evaluate the actual confession.").

warrant preclusion.  *See Old Chief*, 519 U.S. at 184 (courts must "compar[e] evidentiary alternatives" when applying Rule 403).

**Other Interrogation-Related Exhibits**

The government concedes that the remaining exhibits raised in its motion may be used "to impeach government witnesses on cross-examination," Mot. 3—which is precisely how Mr. Aguilar intends to use them at trial.  The Court accordingly should deny that portion of the government's motion as moot.  In so doing, the Court should disregard the government's premature and one-sided musings about Rule 403.  *See id.*  When assessing these materials case-by-case at trial, the Court should bear in mind the uniquely damaging effect of an alleged confession or admission of guilt—and Mr. Aguilar's corresponding need to rebut such evidence. *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("[a] confession is like no other evidence" and "ha[s] a profound impact on the jury").

\* \* \*

For all these reasons, the Court should deny the government's motion in limine.

Respectfully submitted,

 */s/  Daniel R. Koffmann*

Daniel R. Koffmann
*Counsel for Defendant Javier Aguilar*


cc:  Counsel of Record (via ECF)