quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

January 24, 2024

<u>VIA ECF</u>

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>*United States v. Javier Aguilar*, No. 20 Cr. 390 (ENV) (E.D.N.Y.)</u>

Dear Judge Vitaliano:

We write on behalf of Defendant Javier Aguilar to raise two evidentiary issues that Mr. Aguilar anticipates will emerge during cross-examination of upcoming government witnesses.

**I.    The Attorney-Client Privilege Does Not Preclude Examination About Communications from Third Parties to a Witness's Lawyer.**

Mr. Aguilar anticipates cross-examining cooperating witnesses about information that government prosecutors or agents may have conveyed to those witnesses directly or to those witnesses' lawyers. Such communications would not be hearsay because they would not offered for their truth. Instead, they would be offered for their effect on the listener. For example, if a witness understood that the government had said that it was far along in investigating one particular scheme in which the witness was involved, it would not matter whether the government was bluffing or being sincere in its description of its investigation. The pertinent point would be that the witness made decisions about whether to cooperate—and what to disclose in that cooperation—based on the information that the government conveyed about its investigation. As "a statement offered to show its effect on the listener," such testimony "is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). This is equally true if the witness heard those statements *indirectly* through their counsel—for example, a prosecutor makes a statement to the witness's counsel and counsel informs the witness that the prosecutor made that statement. *See, e.g.*, *M.C. v. Cnty. of Westchester*, No. 16 Civ. 3013 (NSR), 2022 WL 1124920, at *4 (S.D.N.Y. Apr. 13, 2022) (double hearsay admissible to show effect on listener).

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

Nor would such a communication be privileged. The attorney-client privilege does not attach when "counsel serve[s] merely as a conduit for transmission of a message" from another source. *United States v. Hall*, 346 F.2d 875, 882 (2d Cir.), *cert. denied*, 382 U.S. 910 (1965). In *United States v. Fernandez*, the Court of Appeals for the Third Circuit rejected the defendant's claim "that the District Court erred when it permitted the Government to question him regarding what his lawyer told him about the scope of the grand jury investigation." 389 F. App'x 194, 201 n.3 (3d Cir. 2010) (Hardiman, J.). The Court concluded that there was no invasion of the attorney-client privilege because "Fernandez repeated only what his attorney had learned from the prosecutor and the conveyance of such information does not constitute privileged legal advice." *Id.* The Honorable Eugene H. Nickerson reached a similar conclusion in *In re Grand Jury Testimony of Attorney X*: "The information about the grand jury investigation that the Attorney obtained from a third person and relayed to his client is clearly not confidential. Where an attorney is a mere 'conduit' the client may not invoke the privilege." 621 F. Supp. 590, 592 (E.D.N.Y. 1985) (quoting *Hall*). Similar decisions abound.[1]

These decisions compel a straightforward ruling in this case: the Court should overrule any privilege objection to Mr. Aguilar's cross-examination of cooperating witnesses about statements made by third parties irrespective of whether the witness heard the statement directly or heard it indirectly through counsel.

## II. Nor Does Attorney-Client Privilege Bar Mr. Aguilar from Probing Cooperating Witnesses' Tax-Planning Discussions.

Mr. Aguilar also anticipates cross-examining certain cooperating witnesses about potential tax fraud that they committed by hiding criminal proceeds from authorities in the United States and elsewhere. Such testimony is admissible to show a cooperator's potential bias and motivation to testify falsely to incriminate Mr. Aguilar. *See, e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (defendant's confrontation rights violated when court "prohibited all inquiry into the possibility that [witness] would be biased as a result of the state's dismissal of his pending public drunkenness charge"; "a jury might reasonably have found [that benefit] furnished the witness a motive for favoring the prosecution in his testimony"); *United States v. Chandler*, 326 F.3d 210, 221–25 (3d Cir. 2003) (reversing and remanding conviction where court improperly restricted cross-examination into what two cooperators "could have been charged" with and the extent of their potential sentencing reductions); *United States v. Atherton*, 936 F.2d 728, 733 (2d Cir. 1991)

---

[1] *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (Ginsburg, J.) ("[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." (citation omitted)); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (underlying facts do not become privileged via incorporation into an attorney-client communication); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) ("Mr. Silets testified only to what the IRS agent said to him, and that he later relayed those statements to Mr. Defazio. The content of this testimony is unprivileged because it did not reveal, either directly or implicitly, legal advice given Mr. Defazio or any client confidences."); *United States v. Smith*, No. 3:07 Cr. 433 (HEH), 2008 WL 3890351, at *1–2 (E.D. Va. Aug. 21, 2008) ("[T]he attorney-client privilege applies only to 'confidential communications' between a client and an attorney. When an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.").

("In a limited sense, *any* illegal conduct of a government witness can be considered probative of bias, on the theory that the witness is likely to curry the favor of government attorneys in order to avoid prosecution." (original emphasis)).

When Mr. Aguilar recently cross-examined cooperating witness Antonio Pere about his efforts to deprive the United States government of potentially millions of dollars in taxes, the Court correctly rejected the government's improper privilege objection, allowing Mr. Aguilar to probe Mr. Pere's fraudulent representations to his tax lawyer. Trial Tr. 1314:8–24. In a later sidebar, however, the Court determined that it "should not have" "allowed inquiry into Mr. Pere's conversations with his tax lawyer." *Id.* at 1335:20–1336:15. Mr. Aguilar's counsel agreed to abide that ruling for the rest of Mr. Pere's cross-examination. *Id.*

In anticipation of upcoming cross-examinations, Mr. Aguilar submits that the government's privilege objection, and the Court's interpretation of attorney-client privilege in the context of tax planning, are overbroad. The government itself has argued that because tax planning advice primarily involves business or financial advice, rather than legal advice, "a taxpayer should not be able to invoke a privilege simply because he hires an attorney to prepare his tax returns." Brief for the United States 17–18, *In re Grand Jury*, No. 21-1397 (U.S. Dec. 16, 2022) (quotation marks omitted).[2] "Tax return preparation advice that an accountant could give is therefore not legal advice for purposes of the attorney-client privilege, *even when performed by an attorney*." *Id.* at 15 (emphasis added); *see also Al-Bihani v. Obama*, 619 F.3d 1, 46 (D.C. Cir. 2010) (Kavanaugh, J., concurring in denial of reh'g en banc) (executive branch "speak[s] through the Solicitor General"). The government's privilege objection should fail for that reason alone.

Moreover, even if a cooperating witness in this case could meet his burden to show that his tax planning advice could be privileged, the Court must "strictly confine[ ]" the privilege "within the narrowest possible limits underlying its purpose." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991). The privilege's animating purpose—promoting candid exchanges between client and counsel to further legitimate legal advice—is ill served by blocking a defendant whose liberty is on the line from inquiring into the ways that admitted international criminals and money launderers (assisted knowingly or unknowingly by their tax planners) shielded their income from authorities in this country and others through fraudulent financial dealings. *See, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319, 319 (2006) ("Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'" (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986))). Particularly so in a criminal case where (as here) the witness at issue is a cooperator whose potential biases—and potential lies to the government about those sources of bias—are critical to the jury's credibility determinations. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (evidence bearing on a key witness's credibility goes to "important issue[s] in the case" and "the jury [is] entitled to know of it").

---

[2] Available at: https://www.supremecourt.gov/docketpdf/21/21-1397/250234/20221216175930869_21-1397%20grand%20jury.pdf. The Supreme Court granted certiorari in *In re Grand Jury* but later dismissed the writ as improvidently granted. 143 S. Ct. 543 (2023) (per curiam).

Because the government itself claims that the attorney-client privilege does not reach communications about "[t]ax return preparation . . . even when performed by an attorney," Brief for the United States 15, *In re Grand Jury*, No. 21-1397, Mr. Aguilar should not be precluded from examining witnesses on that subject even if the examination calls for communications with tax counsel.

*       *       *

The Court accordingly should allow Mr. Aguilar to cross-examine witnesses about (i) what government prosecutors or agents may or may not have told them, whether directly or through counsel; and (ii) any nonprivileged tax-planning discussions that they had with their counsel.

Respectfully submitted,

 /s/  *Daniel R. Koffmann*

Daniel R. Koffmann
*Counsel for Defendant Javier Aguilar*


cc:  Counsel of Record (via ECF)