

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. #2019R01460

271 Cadman Plaza East
Brooklyn, New York 11201

January 28, 2024

By ECF

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Javier Aguilar
     Criminal Docket No. 20-390 (ENV)

Dear Judge Vitaliano:

  In accordance with the Court's January 24, 2024 ruling, the government submits this offer of proof regarding testimony and evidence that the government seeks to introduce regarding the "Diversion Scheme." As discussed below, such evidence will include limited testimony and documents establishing that, beginning in February 2017, the defendant instructed Lionel Hanst to send portions of money Hanst received from Vitol to accounts controlled by the defendant—in several instances, from the same "slush fund" that Hanst used to pay other intermediaries for the purposes of bribing Ecuadorian and Mexican officials. The government expects that such evidence may first be presented during the testimony of Lionel Hanst, who may begin testifying as early as Monday, January 29, 2024.

  Regarding the arguments made in the defendant's January 27, 2024 letter (ECF Dkt. No. 269), such arguments are untimely, particularly since the only cooperating witnesses who could speak to the kickbacks paid to Raymond Kohut have already testified and any damage from their testimony, combined with the defendant's arguments in opening statement, is already done. As discussed below, the defendant was well aware that the Court's prior rulings on the Diversion Scheme hinged on the Court's determination that such evidence, while admissible as direct evidence, was excludable under Rule 403's balancing test. Therefore, the defendant understood even before opening statements that he risked tipping the scales under Rule 403 by inviting the jury to infer—erroneously—that he was unaware of the bribery scheme based on the fact that, unlike Kohut, he did not receive kickback payments from Antonio and Enrique Pere. The

defendant simply took his "piece of the action" at an earlier link in the money laundering scheme. Cf. Trial Tr. 1662:11.[1]

Now that the scales have been tipped, the government is entitled to present limited testimony and evidence necessary to correct the false and misleading impression left on the jury. Such evidence is summarized below.

**Background**

On March 3, 2023, the government moved in limine under Rule 404(b) of the Federal Rules of Evidence to admit evidence of Aguilar's participation in a "contemporaneous scheme to divert money for his own personal benefit from the same pool of funds used, and using the same method and means employed by him, to further the charged bribery and money laundering schemes." ECF Dkt. No. 131 at 1. As the government explained, it sought to use such evidence (1) to establish "Aguilar's control, through Hanst, over the Lion Oil and Zanza Oil bank accounts and the proceeds that followed through them," and (2) as "direct evidence of the charged crimes in that they establish that Aguilar purposefully and knowingly disbursed funds from Lion Oil and Zanza Oil as he intended, and that he had the power to do so." Id. at 11.

On June 2, 2023, the Court found that the evidence sought to be introduced was admissible both as direct evidence and as other-acts evidence under Federal Rule of Evidence Rule 404(b) but that the probative value of such evidence was substantially outweighed by the potential prejudice to the defendant, especially where "the pilfered money was allegedly spent on luxury goods and alimony payments . . . ." June 2, 2023 Order, ECF Dkt. No. 155 at 3-6. The Court therefore precluded such evidence under Federal Rule of Evidence 403.

In accordance with the Court's ruling, the government did not reference the diversion scheme during its opening statement. In the defendant's opening statements, however, counsel for the defendant argued that evidence at trial would show that Raymond Kohut, a Gunvor trader who also paid bribes to Ecuadorian officials through the Antonio and Enrique Pere, demanded that the Pere brothers pay him a kickback from the funds they were using to pay bribes. Trial Tr. at 62:22 – 63:5. Counsel stated, "[t]he evidence is undisputed that in this case Mr. Aguilar did not receive a penny from the amount of money that the Pere brothers received." Id. at 62:10-12.

---

[1] Contrary to the defendant's characterizations, in United States v. Mont, 306 F.2d 412 (2d Cir. 1962), the Second Circuit did not require a "specific warning" any time a defendant risks opening the door to previously excluded evidence, nor even did it suggest that trial courts should give such a warning. Instead, the Second Circuit merely noted that the defendant, in that case, had opened the door despite having received such a warning. Id. at 415. In any event, the government and the Court provided the defense such a warning here. See Tr. at 490:19-22 (permitting one more question, but "that's it."). Similarly, in United States v. Murph, 452 F. App'x 31 (2d Cir. 2011), the Second Circuit held only that it was not error for the district court to have given such a warning. Id. at 35.

2

The following week, during the defense's cross-examination of the government's first witness, defense counsel returned to this theme, asking Nilsen Arias whether he understood that Kohut was getting a kickback from Antonio and Enrique Pere. After Arias answered affirmatively, counsel then asked, "But the Peres never told you that they were paying a cut of their money to Mr. Aguilar, did they?" Tr. 483:4-8. The government objected to this line of questioning and stated at sidebar, "[o]ur objection is on the basis of the Court's prior rulings regarding the diversion scheme. I think we are getting awfully close here to opening the door . . . ." Id. at 484:5-7. The government added, "[t]he risk we're running here is leaving the jury with the misimpression that [the defendant] didn't siphon off some of the money from the scheme himself . . . and that's a clear misunderstanding the jury is going to have based on this misleading testimony if we allow one in and not the other." Id. at 485:18-25.

After counsel for the defendant represented that the line of questioning goes "100 percent to the state of mind of these individuals" (Arias and Antonio Pere, presumably), the Court allowed counsel to ask one additional question on the subject, "but that's it." Id. at 490:19-22. Nonetheless, the following week, during the defense's cross-examination of Antonio Pere, counsel for the defendant again returned to this line of questioning, asking Pere a series of questions about Kohut, including about the fact that Kohut solicited kickbacks from Pere, while the defendant had not. Id. at 1051-1056.

On January 25, 2024, after hearing argument from counsel, the Court determined that the defendant had "opened the door" to the Diversion Scheme. Specifically, the Court noted that the defense's cross-examinations had "equate[d] knowledge with kickback [and] the absence of kickback [with] the absence of knowledge." Tr. 1662:19-21. Thus, the Court ruled that the government should be permitted to introduce evidence of the Diversion Scheme if it could make an offer of proof that the defendant (1) took a kickback from a Hanst account "on that trip from Vitol to Pere during the stop at Hanst," and that (2) he had not taken a kickback before such a payment. Tr. 1663:3-1664:7.

## Offer of Proof

As alleged in the Superseding Indictment, from in or about 2015 through July 2020, the defendant, together with others, including but not limited to Antonio Pere, Enrique Pere, and Lionel Hanst, caused Vitol to transfer funds to accounts held in the name of Lion Oil and Zanza Oil, which accounts were controlled by Hanst. Evidence at trial has shown and will show that the transfers were concealed and purportedly justified by sham contracts and invoices, and that portions of those funds were used to pay bribes to Ecuadorian and Mexican government officials. For example, as already proven at trial, the first of the transfers from Lion Oil to Energy Intelligence Consulting ("EIC") – the "success fee" – occurred in three tranches on January 19, February 2, and February 9, 2017, totaling €472,022.33 (approximately $510,000). See, e.g., GX-4203-B.

The evidence will also show that from in or about and between February 2017 and August 2018 (beginning after the first two tranches of the success fee were sent from Lion Oil to EIC), the defendant caused Hanst to send portions of those same funds sourced from Vitol to shell companies in Mexico and that such funds were used, in part, to pay kickbacks to or for the benefit of the defendant. Consistent with the charged bribery schemes, such transfers were concealed and

3

purportedly justified by sham contracts and invoices. The defendant used both "007" alias email accounts (perezmarcos007 and sixtotomas007) in connection with both the Ecuador and Mexico bribery schemes, as well as in connection with the Diversion Scheme.

The government anticipates that evidence regarding the Diversion Scheme would be introduced through limited testimony from three government witnesses whom the government already intends to call at trial: (1) Lionel Hanst is expected to testify, among other things, that the defendant instructed him how, when, where and in what amount to make payments to shell companies in Mexico used to make payments to the defendant; (2) FBI Special Agent Ludys Barringer is expected to testify, among other things, regarding communications to and from the defendant's "007" email accounts related to the Diversion Scheme; and (3) Michael Petron is expected to establish through a review of various bank records that the payments to the defendant are traceable to funds paid from Vitol to Hanst, and that defendant and Hanst used the same pool of funds to pay bribes to Ecuadorian and Mexican officials that he used to pay companies that ultimately made payments to the Defendant. Each of these witnesses is already on the government's witness list and the government intends to call them even if the government were not going to put on evidence of the Diversion Scheme.

Specifically, these witness's testimony and evidence will establish, among other things, that:

- **Success Fee Payments:** The first payments from Vitol to Hanst (and from Hanst to the Pere brothers) in connection with the Ecuador and Mexico bribery schemes occurred before the commencement of the Diversion Scheme. As shown in Government Exhibit 6000 (which was previously provided to the Defendant but has not yet been admitted at trial), which is attached hereto as Exhibit A:

    o On or about September 27, 2016 and January 13, 2017, Vitol wired approximately $1.5 million to Lion Oil;

    o On or about and between January 19, 2017 and February 9, 2017, Hanst wired a portion of such funds, totaling approximately €472,000, to EIC; and

    o On or about and between December 11, 2018 and December 20, 2018, Antonio and Enrique Pere wired a portion of such funds, totaling approximately €268,734, to accounts held for the benefit of Nilsen Arias. Such funds represented Arias's portion of the OTI Fuel Oil Contract "success fee."[2]

- **Diversion Scheme Payments:** The first payment from Vitol to Hanst in connection with the Diversion Scheme (of which the government is aware) occurred on or about

---

[2] In addition, on July 21, 2015 and June 14, 2016, Vitol wired Hanst approximately $307,500 and $753,500, respectively. Hanst used a portion of those payments, totaling $18,000, to an account in the name of Xavier Rodriguez.

4

February 8, 2017—the same month that Hanst sent the Pere brothers the second and third tranches of the "success fee" payments. Specifically:

- o On or about May 4, 2017, Hanst wired a portion of the approximately $515,000 he received from Vitol, totaling approximately €174,000, to a shell company used by a Mexico-based intermediary to pay kickbacks to the defendant; and

- o On or about and between May 11, 2017 and May 16, 2017, the Mexico-based intermediary wired a portion of such funds, totaling approximately 3,240,019 Mexican Pesos (approximately $172,700), through various shell companies to a bank account in Mexico controlled by the defendant.

- **Commingled Funds:** Certain payments from Vitol to Hanst were used to make payments to the Peres in connection with the Ecuador bribery scheme, to associates of Mexican officials in connection with the Mexico bribery scheme, and to the defendant, through Mexico-based shell companies, in connection with the Diversion Scheme. For example, as shown in Government Exhibit 6011, which is attached hereto as Exhibit B:

  - o On or about April 20, 2018, Vitol made two payments, one in the amount of $750,000, and another in the amount of $1,113,200, to Zanza Oil and Lion Oil, respectively;

  - o On or about and between June 5, 2018 and June 25, 2018, Hanst wired a portion of such funds, totaling approximately €202,000, to Oil Pacific Ventures ("OPV"), a company controlled by the Peres;

  - o On or about June 18, 2018, Hanst wired an additional portion of such funds, totaling approximately €167,983, to a shell company used by a Mexico-based intermediary to pay kickbacks to the defendant; and

  - o On or about and between June 28, 2018, and June 29, 2018, the same intermediary wired a portion of such funds, totaling approximately 1,456,700 Mexican Pesos (approximately $81,000), through another Mexico-based shell companies to a bank account in Mexico controlled by the defendant.

- Between February 2017 and August 2018, the defendant received at least $617,269 in kickbacks traceable to payments from Vitol to Hanst into a bank account he controlled in Mexico. Of that $617,269, approximately $135,473 was further transferred into accounts controlled by the defendant in the United States.

- The defendant used his 007 email accounts to communicate with his co-conspirators in both the Ecuador and Mexico bribery schemes, as well as the Diversion Scheme. For example, as shown in Government Exhibits 1596 and 1596-A, which are attached here to as Exhibit C, on or about November 15, 2019, an individual using the alias "Alejandro Lopez" sent

5

the defendant an email at one of his 007 email accounts, attaching a spreadsheet that summarizes over 40 payments from Hanst to shell companies controlled by Mexico-based intermediaries, including nine transfers designated for "Javier."

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:    /s/
        Jonathan P. Lax
        Matthew Galeotti
        Assistant U.S. Attorneys
        (718) 254-6139

        GLENN S. LEON
        Chief, Fraud Section
        Criminal Division, U.S. Dept. of Justice

By:    /s/
        Derek J. Ettinger
        Assistant Chiefs, FCPA Unit
        Clayton P. Solomon
        Trial Attorney, FCPA Unit

        MARGARET A. MOESER
        Acting Chief, Money Laundering & Asset
          Recovery Section
        Criminal Division, U.S. Dept. of Justice

By:    /s/
        D. Hunter Smith
        Trial Attorney, International Unit

Enclosures (Filed Under Seal)

cc:    Counsel of Record (by e-mail)