**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

January 29, 2024

**VIA ECF**

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *United States v. Javier Aguilar*, No. 20 Cr. 390 (ENV) (E.D.N.Y.)

Dear Judge Vitaliano:

We write on behalf of Defendant Javier Aguilar in response to the government's January 28, 2024 letter regarding its "offer of proof" of the alleged and uncharged "Diversion Scheme."  ECF No. 274.  Mr. Aguilar submits this response without waiving or forfeiting the arguments asserted in his January 27, 2024 letter.  ECF No. 269.

The Court's preliminary ruling asked the government to demonstrate that it could prove two things before the Court might admit evidence of the Diversion Scheme:  (1) that Mr. Aguilar received kickbacks of Vitol money from Lionel Hanst *after* he engaged the Pere brothers as consultants, and (2) that Mr. Aguilar *did not* receive any kickbacks from Mr. Hanst *before* Mr. Aguilar engaged the Pere brothers.  *See* Trial Tr. 1660:21–1664:16.  Although the government concedes that this is the offer of proof the Court required, *see* ECF No. 274 at 3, the government's letter makes no apparent effort to address—let alone satisfy—the second showing that the Court required.  As a result, even if the Court were to consider admitting evidence of the Diversion Scheme based on the proceedings to date—which, as Mr. Aguilar has explained, it should not—the government's failure to meet the Court's requirements means that the Diversion Scheme remains inadmissible.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON |
LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

I.     **THE GOVERNMENT CANNOT MAKE AN OFFER OF PROOF THAT THERE ARE NO ALLEGED KICKBACKS PRIOR TO THE FIRST PAYMENTS TO THE PERE BROTHERS.**

A.     **The Government's Letter Makes No Attempt to Make the Required Showing.**

The government's offer of proof fails to establish that Mr. Aguilar did not improperly divert Vitol money from Mr. Hanst to himself prior to 2017, the point at which Mr. Aguilar first directed payments to the Pere brothers.  *See* ECF No. 274 at 4 (alleging Mr. Aguilar first paid the Pere brothers in January 2017).  In its letter, the government discusses a tracing analysis of financial transfers from 2017 and 2018 that purport to show the flow of money from Vitol to Mr. Hanst to a series of downstream entities before reaching an account affiliated with Mr. Aguilar.  *See, e.g.*, ECF No. 274 at 4–5 & Ex. B (GX 6011).  In GX 6011, for example, the government purports to trace money from LionOil to an entity called "Opetosa," which allegedly pays an entity called "Opebrax," which in turn allegedly pays Mr. Aguilar.  *See id.*, Ex. B (GX 6011).

But for all its bluster, the government's letter asserts only that Mr. Aguilar received kickbacks "between February 2017 and August 2018."  *Id.* at 3.  It does not assert—as it was required to do in order to make the offer of proof the Court required—that there were *no* kickbacks *prior* to when Mr. Aguilar authorized payments to the Pere brothers.  The government's letter expressly concedes that the "first payment" it can identify "in connection with the Diversion Scheme" is merely the first one "*of which the government is aware*."  *Id.* at 4 (emphasis added).  That showing is insufficient.  Under the Court's ruling, the government must show the existence of kickbacks after 2017 *coupled with* the absence of such kickbacks prior to 2017.  The government's professed ignorance of any earlier payments cannot satisfy the Court's required showing.

There are numerous payments from Mr. Hanst's companies prior to 2017 to entities that, like Opetosa, have no apparent connection on their face to Mr. Aguilar.  While the government apparently investigated the Opetosa payment and traced the flow of money to Mr. Aguilar, it does not appear to have conducted a similar analysis regarding any of the myriad payments from Mr. Hanst's companies prior to 2017.  For example, GX 4139 and GX 4193 (each enclosed) reflect hundreds of thousands of dollars of payments in 2015 and 2016 from Lion Oil to two entities named "CMI Sinergia SA de CV" and "Hamelle Corp."  But the government evidently has not investigated whether any of those funds were diverted to Mr. Aguilar or those close to him.  Nor did the government investigate payments Mr. Hanst processed prior to 2017 to dozens of other entities listed in these and other financial records to determine whether Mr. Aguilar diverted any of those funds.  The government has not even attempted to show that payments to CMI Sinergia, Hamelle Corp., or any of other entities that received funds from Mr. Hanst were not alleged diversion payments to Mr. Aguilar.  Having failed to do so, the government cannot plausibly make an offer of proof that there are no alleged diversion transfers prior to when Mr. Aguilar began directing payments to the Pere brothers.

To make the offer of proof the Court required, the government had to show that there were no alleged diversion payments prior to the time that Mr. Hanst began paying the Pere brothers.  The government failed to make that showing.  As a result, the government has not justified the admission of the alleged Diversion Scheme.

**B.** **The Discovery Record Does Not Provide a Basis for the Government to Make the Required Showing.**

Based on Mr. Aguilar's review of the voluminous discovery in this case—assisted by forensic accountants—it appears that the government *cannot* disprove the existence of any earlier alleged kickbacks on the current record.  The government claims that allegedly diverted funds reached not just "the personal bank accounts of Aguilar," but also the accounts of "one or more of Aguilar's family members, and others for Aguilar's benefit or otherwise at his direction." ECF No. 131 at 6.  As a result, in order to make the offer of proof the Court has required, the government must be able to proffer that it can show there were *no* alleged diversion payments to any of these unnamed "family members and others" for Mr. Aguilar's benefit that occurred before 2017.  As summarized in the enclosed Appendix, however, the government has not obtained financial records from Mr. Aguilar's family members from any period prior to 2017.  Nor has the government shown that it obtained financial records from 2015 and 2016 for all the unknown number of unidentified "others" who received diverted funds at Mr. Aguilar's direction.  While the government has access to detailed account statements and financial-transfer data for Mr. Aguilar and for Mr. Hanst's entities for 2015 and 2016, *see, e.g.*, GX 4139; GX 4143, the government failed to obtain financial records from alleged *recipients* of diverted funds from 2015 and 2016.  As a result, the government cannot credibly suggest that it has the ability to disprove the existence of earlier alleged kickbacks from Mr. Hanst to those recipients.

**C.** **The Government Does Not Even Suggest That it Can Prove Any Alleged Diversion Payments Were Not Authorized by Vitol.**

Even if the government had attempted to disprove the existence of alleged diversion payments prior to 2017 (it didn't), and even if there were a documentary record from which the government could attempt to make such a showing (there isn't), the government cannot proffer that every alleged payment to or for Mr. Aguilar was, in fact, an unlawful diversion payment.  If a Vitol executive authorized Mr. Aguilar to take a distribution from the funds under Mr. Hanst's control—for example, as reimbursement of expenses Mr. Aguilar incurred on behalf the company in connection with its growing business in Mexico—that would not constitute a diversion, kickback, or anything else improper.  The government's letter provides no basis at all (reliable or otherwise) to conclude that these payments were *not* legitimate reimbursement for expenses that Mr. Aguilar incurred himself on Vitol's behalf.  Nor can the government credibly claim that it could prove that no Vitol executive authorized Mr. Aguilar to receive funds from Mr. Hanst for entirely legitimate purposes.

*     *     *

Because the government failed to address—much less satisfy—one of the two prongs required under the Court's order, it has not carried its burden to justify admission of the alleged, uncharged, inflammatory, and highly prejudicial Diversion Scheme.

**II.      REQUIRING MR. AGUILAR AFFIRMATIVELY TO REBUT THE GOVERNMENT'S OFFER OF PROOF WOULD, WITHOUT ADDITIONAL PROTECTIONS, VIOLATE HIS FIFTH AMENDMENT RIGHT.**

Even if the government had carried its burden (it hasn't), requiring Mr. Aguilar to prove that he received personal payments at any point—including prior to 2017—raises intractable constitutional concerns.  Faced with a choice between either (1) seeking to show that he *did* receive improper personal payments prior to 2017 in order to justify the exclusion of the alleged Diversion Scheme; or (2) remaining silent and thereby paving the way for admission of the Diversion Scheme, Mr. Aguilar effectively is punished both for speaking *and* for exercising his constitutional privilege to remain silent rather than incriminate himself.  This is improper.  *See, e.g.*, *Simmons v. United States*, 390 U.S. 377, 393–94 (1968) (reversible error to require criminal defendant to "surrender[]" Fifth Amendment privilege in exchange for keeping inadmissible evidence precluded from trial).  It also would pervert the Court's preliminary ruling, which required the government—*not Mr. Aguilar*—to make an offer of proof.  Requiring Mr. Aguilar to do so would require him affirmatively to prove that he committed uncharged crimes in order to ensure that his trial on the charged crimes remains fair under the Constitution and the Federal Rules of Evidence.  That too is improper.

Mr. Aguilar thus respectfully submits that requiring him to prove the existence of alleged diversion payments prior to 2017 in order to justify exclusion of the Diversion Scheme would constitute unconstitutional reversible error absent immunity from prosecution (or penalty) for such conduct consistent with *Kastigar v. United States*, 406 U.S. 441 (1972).

\* \* \*

For all the reasons stated in Mr. Aguilar's pretrial briefing (*e.g.*, ECF Nos. 214 & 219), in prior oral argument before the Court (*e.g.*, Trial Tr. 1073:23–1077:15; 1543:12–1543:1), and in Mr. Aguilar's January 27, 2024 letter (ECF No. 269), and because the government has not satisfied its burden with respect to the offer of proof that the Court requested, the Court should reiterate its prior ruling that the Diversion Scheme remains inadmissible at trial.  If the Court instead requires a substantive counteroffer of proof from Mr. Aguilar, Mr. Aguilar would be prepared to provide one subject to the protection of *Kastigar v. United States*, 406 U.S. 441 (1972).

Respectfully submitted,

 /s/  Daniel R. Koffmann

Daniel R. Koffmann
*Counsel for Defendant Javier Aguilar*

cc:  Counsel of Record (via ECF)

Enclosures:  Appendix, GX 4139, and GX 4143 (via email)

-4-