**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

February 4, 2024

**VIA ECF**

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Javier Aguilar*, No. 20 Cr. 390 (ENV) (E.D.N.Y.)

Dear Judge Vitaliano:

We write on behalf of Defendant Javier Aguilar to reply to several arguments made for the first time in the government's response concerning Mexico's antibribery law. ECF No. 283.

***First***, the government erroneously states that no Mexican court has held that employees of affiliate companies such as Pemex Procurement International, Inc. (PPI) are not public servants for purposes of Article 212 of the Federal Penal Code. *Id.* at 4. But as Mr. Aguilar noted in his January 31, 2024 letter, a court in Mexico reached exactly that conclusion fewer than two weeks ago. *See* ECF No. 282 at 4–5; ECF No. 282-2 (translation). In that decision, a judge "[s]pecialized in the Accusatory Criminal System of the Federal Criminal Justice Center in Mexico City" concluded that two employees of CFE International—an affiliate company of a state productive company exactly analogous to PPI—are *not* public servants:

> [The defendants] signed the contracts[ ] as part of CFE International, which is a private company for commercial purposes incorporated in the United States of America, which is entirely separate and independent from CFE (Comision Federal de electricidad [Federal Electricity Commission]). Hence, it cannot be considered that those who signed the contracts did so as public servants . . . .

ECF No. 282-2 at 1, 5. It is well settled that federal courts should "defer to the judgment of foreign courts construing their own laws." *Liuksila v. Turner*, 351 F. Supp. 3d 166, 182 (D.D.C. 2018); *United States v. Trabelsi*, 845 F.3d 1181, 1192 (D.C. Cir. 2017) ("U.S. courts will defer to the

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

judgment of foreign courts construing their own laws."); *In re Schumann*, No. 18 Cr. 283 (YBK), 2018 WL 4777562, at *4 (N.D. Ill. Oct. 3, 2018) ("This court will defer to a foreign nation's interpretation of its own laws."); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 714 (5th Cir. 1999) ("Recognizing the difficulty of interpreting foreign law, courts may defer to foreign government interpretations.").

By contrast, the government is unable to cite a single decision in which a Mexican court has held that employees of companies such as PPI *are* public servants for purposes of Article 212 (or any other Mexican law). It urges this Court to be the first in the world do so, on the basis of little more than a dictionary definition that it claims provides a decisive answer to the question. But it has long been the law that "a tribunal unfamiliar with foreign law should be cautious in dealing with it no matter how exhaustively presented." *Stewart v. Godoy-Sayan*, 153 F. Supp. 544, 545 (S.D.N.Y. 1957). That is especially true in a criminal case. This Court should decline the government's invitation to place individuals in this country in jeopardy based on unproven theories of Mexican criminal liability—especially in the face of a decision from a Mexican court rejecting exactly the theory the government asks this Court to adopt.

***Second***, the government incorrectly states that Mr. Aguilar relies exclusively on a single chapter heading in the Organic Law of the Federal Public Administration to establish that majority state-owned companies and entities assimilated to them are, by definition, parastatal. *See* ECF No. 283 at 7. Not so. As Articles 1 and 3 of that statute make clear, the statute's entire purpose is to define the categories of centralized and parastatal government entities and their relationship to one another. Every type of parastatal entity is defined in successive provisions of this statute: "decentralized organizations" in Article 45; "majority state-owned companies" and entities "assimilated to" them in Article 46; and "public trusts" in Article 47. The government has identified no other statute or regulation in the entire body of Mexican law that contains a definition of "majority state-owned companies" or entities "assimilated to" them. Yet the government nevertheless argues, without citing any legal authority, that "majority state-owned companies" and entities "assimilated to" them need not be parastatal. Dr. Mariana Mureddu Gilabert— an experienced former Mexican judge who specializes in administrative law—has explained authoritatively why that interpretation is wrong. Decl. of Mariana Mureddu Gilabert ¶¶ 11, 43 (Jan. 27, 2024) (ECF No. 270-4); *see also* ECF No. 270-1 at 8. The government has no response— *none*—to Dr. Mureddu's analysis nor any argument why it should not be credited.

***Third***, the Court should reject the government's argument concerning the meaning of "assimilated to" ("*asimilada*") in Article 212. *See* ECF No. 283 at 5. The government asks the Court to adopt one dictionary definition of that term but ignores another definition that makes more sense in this context. The leading Spanish-language dictionary, the Dictionary of the Spanish Language published by the Royal Spanish Academy, defines "assimilated to" as being synonymous with "equal to" or "equivalent to."[1] The Pan-Hispanic Dictionary of Legal Spanish likewise cites several instances in which legislatures and courts have used the word *asimilada* to mean "legally equivalent to."[2] Many more such examples can be found in the United States Code

---

[1] Real Academia Española, *asimilar*, https://dle.rae.es/asimilar#40I3nc4 (last visited Feb. 4, 2024).

[2] Pan-Hispanic Dictionary of Legal Spanish, *asimilada*, https://dpej.rae.es/dpej-lemas/asimilada (last visited Feb. 4, 2024).

and the decisions of our own courts.[3] This definition makes clear that the phrase "entities assimilated to majority state-owned companies" means "entities that are legally equivalent to" majority state-owned companies—a clear, unambiguous meaning that comports with the statute's purpose.

Whether an entity is legally equivalent to a majority state-owned company is necessarily a legislative determination, not a question of fact for the jury. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990) (Scalia, J.) ("Whether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes is properly a matter for legislative consideration which cannot adequately or appropriately be dealt with by this Court." (cleaned up)). Mexico's legislature made that determination when it enacted Article 46 of the Organic Law of the Federal Public Federation and defined entities "assimilated to" majority state-owned companies as "civil partnerships and civil associations in which the majority of the partners are agencies or entities of the Federal Public Administration or Federal Public Servants." ECF No. 270-14. This Court therefore should not instruct the jury that it may find PPI is an entity "assimilated" to a majority state-owned company, because the parties agree that PPI is neither a civil partnership nor a civil association.

The Court should reject the government's proposed dictionary definition of "assimilated to" not only because there is no evidence it is the one the legislature intended, but also because it does nothing to give the term "assimilated to" the clear, definite meaning required by Mexican law. The government asks the Court to instruct the jury that "assimilated to" means "to make an organization, a person or an entity part of something; to incorporate something into oneself." ECF No. 283 at 5. In the context of PPI and PEMEX, however, this just substitutes one

---

[3] *See, e.g.*, *Santana v. Garland*, No. 22-2114, __ F.4th __, 2024 WL 390128, at *4 (4th Cir. Feb. 2, 2024) ("To be 'assimilated' means, in this context, that a noncitizen residing in the United States, and who applies for an adjustment of status, is to be evaluated like an applicant for admission, despite the noncitizen being then physically located in the United States."); 46 U.S.C. § 70502(c)(1)(b) ("[T]he term 'vessel subject to the jurisdiction of the United States' includes . . . a vessel assimilated to a vessel without nationality under . . . the 1958 Convention on the High Seas."); 37 U.S.C § 1003 ("Chapters 3 and 5 . . . of this title apply equally to persons who are not serving as members of a uniformed service but whose pay or allowances, or both, are assimilated under law . . . to the pay or allowances, or both, of commissioned officers, warrant officers, or enlisted members."); *Pope & Talbot v. Hawn*, 346 U.S. 406, 416 (1953) (Frankfurter, J., concurring) ("In *Sieracki*, this Court assimilated longshoremen to seamen and held that they could recover for unseaworthiness." (citing *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946)); *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 61 (1944) (Frankfurter, J., dissenting) ("For jurisdictional purposes federal courts have been assimilated to the courts of the States in which they may sit."); *City of New York v. Saper*, 336 U.S. 328, 337 (1949) ("[By] the Chandler Act, Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest."); *Meyer v. Fleming*, 327 U.S. 161, 164 (1946) ("[T]he title and powers of the trustee are by s 77, sub. c(2), assimilated to those of trustees in ordinary bankruptcy proceedings."); *United States ex rel. Bojarchuk v. Shaughnessy*, 206 F.2d 238, 240 (2d Cir. 1953) ("[T]he status of the relator when he was ordered permanently excluded is to be assimilated to that of a resident alien entitled to a hearing.").

set of ambiguous words for another. Like all subsidiaries, PPI is owned and in some respects controlled by PEMEX, but PPI is a separate corporation.[4] The jury cannot reasonably be asked to decide whether PPI is "part of" or "incorporated" into PEMEX without inviting it to engage in guesswork about the proper meaning of those words in this context. The government's proposed definition simply invites legal argument to the jury about the proper way to characterize a subsidiary company's relationship to its parent. That is improper.

Moreover, the Court should reject the government's proposed dictionary definition of "assimilated to" because dictionary definitions—particularly unhelpful ones—are not the beginning and end of statutory construction. Instead, courts must look to the "specific context in which [the statutory] language is used, and the broader context of the statute as a whole" to ascertain its meaning. *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality op.) (cleaned up). In this case, the statute's purpose is to define "public servants" by listing all of the different components of the federal government in which an individual might be employed. The Organic Law of the Federal Public Administration is the law that identifies the components of the Executive branch. Indeed, Article 212 of the Federal Penal Code lists the components of the Executive branch using *exactly the same* terminology and in *exactly the same* order as they appear in the Organic Law of the Federal Public Administration. That is the context in which the term "assimilated to" is used in Article 212. The Mexican legislature gave every indication in drafting Article 212 that it intended "assimilated to" to have the same meaning in Article 212 as that phrase has in Article 46 of the Organic Law of the Federal Public Administration. The Court should reject the government's invitation to assign a statutory term an unhelpful dictionary definition for which the government can cite *no* support in Mexican law.

***Fourth***, the government incorrectly suggests that the legislature could not have intended to exclude PPI employees from the scope of Article 212 because doing so would give them a license to commit bribery. ECF No. 283 at 1, 12. Article 212, however, is not the only law that proscribes bribery; it is just the one that applies to public servants. PPI employees are subject to the same criminal, civil, and employment sanctions that apply to all private-company employees who steal from or defraud their employers by engaging in bribery, embezzlement, or other forms of corrupt conduct. The legislature's decision to exclude them from Article 212 merely reflects the reality that PPI employees are not government employees. They enjoy none of the benefits, privileges, or immunities of Mexican public servants, so it makes senses that the legislature would exclude them from other laws that apply to public servants, including those in Title 10 of the Federal Penal Code. The government's argument is just empty rhetoric.

***Finally***, the government's request that the Court disregard the Declaration of Dr. Mariana Mureddu Gilabert has no legal basis. "Discovery rules for experts . . . are focused on disclosure of expert testimony to be used at trial," but when "the question before the court is determining foreign law . . . for purposes of applying that law to the facts of the case, then application of

---

[4] The government suggests that it is "undisputed that evidence will show that Pemex Procurement [International] is entirely . . . controlled by Pemex." ECF No. 283 at 13. But the extent of Pemex's purported control over PPI and its implications for, among other things, the jury's determination of PPI's status as an instrumentality of the Mexican federal government remains a contested issue of fact.

discovery rules is anathema to the purposes of" procedural rules regarding the determination of foreign law.  *Gan Teck Kar Invs. Pte Ltd. v. Thermal Constr. Co. LLC*, No. 20 Civ. 1050 (CJW), 2022 WL 1321290, at *6 (N.D. Iowa May 3, 2022); *see BCCI Hldgs. (Luxembourg) v. Khalil*, 184 F.R.D. 3, 9 (D.D.C. 1999) (declining to strike expert declaration for noncompliance with Rule 26(a)(2) of the Federal Rules of Civil Procedure because plaintiff complied with Rule 44.1 of the Federal Rules of Civil Procedure); *see also* Fed. R. Crim. P. 26.1, advisory committee notes to 1966 enactment ("Rule 26.1 is substantially the same as Civil Rule 44.1.").  The Court need not (and should not) forgo the assistance of a former Mexican judge in construing Mexican law.

For all these reasons, and those set out in Mr. Aguilar's opening brief (ECF No. 270-1), the Declaration of Dr. Mariana Mureddu Gilabert (ECF No. 270-4), and Mr. Aguilar's opposition to the government's opening papers (ECF No. 282), the Court should hold that employees of PPI are not "public servants" within the meaning of Article 212 or Article 222 of the Mexican Federal Penal Code.

Respectfully submitted,

 */s/  Daniel R. Koffmann*

Daniel R. Koffmann
*Counsel for Defendant Javier Aguilar*

cc:  Counsel of Record (via ECF)