quinn emanuel trial lawyers | boston

111 Huntington Ave, Suite 520, Boston, Massachusetts 02199 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7118**

WRITER'S EMAIL ADDRESS
**michaelpackard@quinnemanuel.com**

February 13, 2024

<u>VIA ECF</u>

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>*United States v. Javier Aguilar*, No. 20 Cr. 390 (ENV) (E.D.N.Y.)</u>

Dear Judge Vitaliano:

We write respectfully on behalf of Defendant Javier Aguilar in response to the government's February 11, 2024 letter (ECF No. 301), which previewed exhibits it intends to introduce through an attorney or a reader. As a threshold matter, Mr. Aguilar has no objection to many of those exhibits, which are listed in Appendix 1 to this letter. But Mr. Aguilar does object to several of the exhibits, for the reasons explained below.

## I. GOVERNMENT EXHIBIT 1186-A

GX 1186-A is an email chain that spans December 24 to December 25, 2016. The general subject is a potential LPG deal involving Vitol, Petroecuador, and OTI. The government claims the entire chain is admissible on the following basis:

> *Fed. R. Ev. 801(d)(2)(A) (defendant's statement); top part email chain is "a statement offered to show its effect on the listener is not hearsay." United States v. Dupree, 706 F. 3d 131, 136 (2d Cir. 2013).*

ECF No. 301, Att'm A at 3. Contrary to the government's position, this exhibit is barred, in whole or in part, by the rule against hearsay and Rule 403 of the Federal Rules of Evidence.

*First*, this email chain contains 13 emails, and Mr. Aguilar wrote only one of them—the eleventh in the chain. The others were sent by a variety of Vitol employees who have not testified at this trial—including Russell Hardy, Rick Evans, Jeff Dellapina, Mike Loya, and Patrick Gorgue. Thus, the vast majority of the emails in this exhibit cannot be admitted as Mr. Aguilar's statements.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

*Second*, even assuming that the 10 emails in the chain that precede Mr. Aguilar's response are admissible for their effect on Mr. Aguilar—given that they prompt his response ("Tks a lot to everybody[.]  I will make sure the deal works . . . . [I]f concluded . . . this deal will help us to do more in the America's pacific side, etc. . . . Will keep you posted")—that reasoning does *not* apply to the two emails that follow.  Thus, those emails—at minimum—are inadmissible hearsay that must be redacted.

*Third*, Rule 403 bars admission of this entire chain—or at minimum, its top email—because its relevance is *de minimis* and its potential unfair prejudice is substantial.  The real reason the government seeks to introduce this evidence has nothing to do with anything that Mr. Aguilar said.  Rather, the government's focus is the top email, sent by Mike Loya to Patrick Gorgue, which includes this line:  "Outside of this, based on your market prices supplied by the matrix, and all fees, it will have profits of $40M over 5 years or, more accurately, improvement in the current Enterprise contract of that amount PLUS optionality to trade around."  The government no doubt will use that out-of-court statement to argue that Mr. Aguilar expected an LPG deal with Petroecuador might "have profits of over $40M over 5 years."  That is improper.  Mr. Loya's prediction about the potential profitability of this deal sheds no light on Mr. Aguilar's state of mind about anything.  That alone renders the email irrelevant and misleading to the jury.  Moreover, Mr. Loya's prediction is predicated on complicated caveats that have not been—and cannot be—explained to the jury.  For instance, Mr. Loya's prediction is based on "your market prices supplied by the matrix."  But the email is completely opaque about what prices and what matrix he is referring to, whether those prices and matrix are reliable, whether they are static or dynamic, and a host of other information about a complex commodities deal.  Further, Mr. Loya's email contains additional caveats couched in inexplicable insider jargon—"'market transfer' fees for FOB and freight components," "'subsidy' of the financial terms [that] will be applied to the deal," and "ring-fenced between 0 and $10M," to name a few.  The entire chain is inherently confusing absent a witness with personal knowledge to walk through and explain it.  But the government has no witness to do that work—it intends to introduce this exhibit through an attorney or a reader, not a percipient witness from Vitol who is able to provide that context.

Accordingly, GX 1186-A should be barred under either Rule 801, because it is inadmissible hearsay, or under Rule 403, because of its marginal relevance and potential for substantial prejudice, or under both.  At minimum, the top two emails in this chain—those that come *after* Mr. Aguilar's lone email in the chain—should be redacted.

## II.    GOVERNMENT EXHIBITS 1450 AND 1450-T

GX 1450 and GX 1450-T is an email chain that spans June 11 to June 12, 2016.  The general subject is Vitol's ethane deal with Pemex Etileno.  The government claims the entire chain is admissible on the following basis:

> *Fed. R. Ev. 801(d)(2)(A) (defendant's statement)*

ECF No. 301, Att'm A at 5.  Contrary to the government's position, this exhibit is barred by Rule 403.

This email chain begins with a message to Mr. Aguilar from Pemex Procurement International ("PPI") regarding Vitol beginning its long-term ethane contract with Pemex Etileno. Mr. Aguilar then forwards that email internally to others Vitol to initiate administrative processes. Finally, Mr. Aguilar forwards the exchange to Mike Loya, saying, "Taking advantage that you're in London . . . . I hope they talk about me at the board meeting and agree that they haven't treated me as they should . . . ."

Consistent with the profit motive previewed in the government's opening,[*] and bolstered by the admission of Mr. Aguilar's compensation records and testimony of Valentine Douglas, it appears the government will argue that Mr. Aguilar's statement to Mr. Loya—"I hope they talk about me at the board meeting [etc.]"—is evidence that Mr. Aguilar believed the ethane deal would lead to greater compensation from Vitol. But that inference is highly speculative, incredibly prejudicial, and should not be permitted to be made before the jury.

*First*, Vitol's board is responsible for much more than deciding compensation. Thus, it is entirely speculative to contend that this statement referred to that particular duty. The government easily could have called Mr. Loya to testify as to *his* understanding of what Mr. Aguilar meant in that email, in which case the record would be different. But it did not. The government instead seeks to rely on its own self-serving interpretation, which is unfounded and unfair.

*Second*, and relatedly, the record does not contain any evidence that Mr. Aguilar or anyone else anticipated that the long-term ethane contract would generate *any* profit for Vitol. That is critical because, as Mr. Douglas acknowledged his testimony, Vitol's board decides compensation based largely on "performance," including "how profitable the deals are that a trader enters into or originates." Trial Tr. 2081:22–24. And Mr. Douglas admitted that he did not have "any idea whether Vitol's ethane deals with [PPI] were profitable." *Id.* at 2082:4–6.

Mr. Aguilar has argued in prior briefing that the introduction of any evidence about his compensation is improper under Rule 403. *See* ECF No. 186-1 § III; ECF No. 203 § III. But even though the Court rejected that categorical argument, that does not mean that it should reject Mr. Aguilar's argument about GX 1450 and GX 1450-T. These particular exhibits are inadmissible because their only potential relevance requires multiple speculative inferences, which makes the balancing under Rule 403 tip strongly in favor of exclusion.

### III. GOVERNMENT EXHIBITS RELATED TO THE ALLEGED DIVERSION SCHEME

GX 1403, GX 1403-A, GX 1403-B, GX 1409, GX 1409-A, and GX 1409-B all relate to the so-called "diversion" scheme. Accordingly, Mr. Aguilar renews his standing objection to the admission of these exhibits under Rule 403 and also renews his argument that he did not open the door to the admission of such evidence. *See, e.g.*, Trial Tr. 2642:8–22; ECF Nos. 132, 269.

---

[*] The government's opening included: "What was in it for him? As you'll see, when the defendant's company made money, he made money, often more than a million dollars a year in salary and bonus. And that's not all. His interests as a shareholder in the company was many, many times that amount." Trial Tr. 44:17–21.

\* \* \*

We appreciate the Court's consideration of this letter and our arguments.

Respectfully submitted,

 */s/  Michael T. Packard*

Michael T. Packard
*Counsel for Defendant Javier Aguilar*

cc:  Counsel of Record (via ECF)

Enclosure:  Appendix 1

# APPENDIX 1

**Exhibits Referenced in ECF No. 301, Attachment A,
to Which the Defense Does Not Object**

| GX No. | Government's Description |
|---|---|
| 1003, 1003-T | 2/13/2014 email from J. Aguilar to L. Bacigalupo |
| 1009, 1009-T | 3/26/2014 email from X. Rodriguez to J. Aguilar |
| 1014-A | 6/4/2015 email from J. Aguilar to Vitol travel department. |
| 1072-A | 8/18/2016 email from J. Aguilar to X. Rodriguez |
| 1073, 1073-T | 8/23/2016 email from "skisensation" to J. Aguilar |
| 1081-A | 8/30/2016 email from J. Aguilar to himself. |
| 1081-B | Attachment to 1801-A |
| 1084, 1084-A | 9/6/2016 email from X. Rodriguez to J. Aguilar |
| 1084-A | Attachment to 1084-A |
| 1208-A | 1/26/2017 email from J. Aguilar to R. Hardy and others, including Vitol executive committee |
| 1427 | 5/18/2018 email from M. Ducrest to J. Aguilar and others |
| 1445 | 6/6/2018 email from L. Hanst to E. Pere |
| 1596 | 11/15/2019 email from "alopexmx" to J. Aguilar |
| 1596-A | Attachment to 1596 |
| 1771-A | 9/16/2016 email from J. Aguilar to C. Bake and M. Loya |
| 1777 | 3/4/2019 email from J. Aguilar to J. Aguilar |
| 1777-A | Attachment to 1777 |
| 1806 | 5/8/2018 email from M. Ducrest to J. Aguilar and others |