

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. #2019R01460                          *271 Cadman Plaza East*
                                        *Brooklyn, New York 11201*

February 11, 2024

<u>By ECF and E-mail</u>

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Javier Aguilar
       <u>Criminal Docket No. 20-390 (ENV)</u>

Dear Judge Vitaliano:

The government respectfully writes in response to the defendant's letter dated February 13, 2023 (ECF No. 304) and the Court's docket order of February 14, 2023 (the "Order") regarding the admissibility of government exhibits 1450 and 1450-T ("GX 1450").[1] GX 1450 is of course not hearsay as it is a statement of a party opponent pursuant to Fed. R. Ev. 801(d)(2)(A). Any concern related to GX 1450 about the "speculative nature of the emails and the cumulativeness of them as to profit," Order, stems from the government's failure to adequately explain the document, which it now does below.

GX 1450 is a June 2018 email exchange that relates to Vitol's ethane supply deal ("Ethane Supply Contract") with Petroleos Mexicanos ("Pemex") via Pemex Procurement International, which is one of the two deals central to the government's case. Two cooperating witnesses have testified that they received bribes from the defendant in exchange for their assistance in helping him obtain precisely <u>this Ethane Supply Deal</u>. (Carlos Espinosa, who testified about this, is copied on the original email.) At the top of the email chain, on June 12, 2018, the defendant wrote to Vitol's America's CEO, boasting about his accomplishment in securing the Ethane Supply Contract with PEMEX Procurement and requesting compensation <u>based on successfully securing the Ethane Supply Deal</u>. Specifically, the defendant wrote:

"I hope they talk about me at the board meeting and agree that they haven't treated me as they should." GX-1450-T.

---

[1] Government exhibit 1450-T is a translated version of government exhibit 1450.

GX 1450 is unique in that it demonstrates the defendant's motive, in his own words, for securing the Ethane Supply Contract—and his willingness to pay bribes to do so—namely for compensation and status.  The point of this document is not to show generally that the defendant wanted more compensation or was wealthy, but that he was willing to break the law to secure precisely this Ethane Supply Contract that is at issue in this case.

GX 1450 takes on increasing importance given the defendant's arguments in this case.  The defendant has repeatedly suggested that he lacked a motive to conspire to obtain either the ethane or fuel oil contracts at issue in this case because he was a trader who focused on liquified petroleum gas ("LPG") and that his compensation was tied only to LPG.  For instance, during the cross of Valentine Douglas, the defendant elicited testimony that if "you were a LPG trader and LPG didn't make money, you wouldn't necessarily get a bonus because your group did not make any money."  Tr. 2080-81.  The defense followed up with, "You're aware that Mr. Aguilar was an LPG specialist, correct?."  Tr. 2081; see also ECF Dkt. No. 185-1 at 14 (arguing that the defendant's "incentive compensation hinged on Vitol's profits and losses in any given year from *LPG* trading," "*not* . . . deals for *fuel oil* or *ethane*").  Though this argument is incorrect (because as Mr. Douglas also testified Vitol's executive committee would make equity awards based on a trader's general performance), the defense has stated that it will revisit this argument during their own case and during closing.  If GX 1450 is precluded, the government will not be able to rebut the false and misleading defense argument that compensation was irrelevant to the contracts at issue in this case, including the Ethane Supply Contract.

For these reasons, GX 1450 is highly relevant and probative to the government's proof of motive because it reflects the defendant's attempt to have Vitol's Executive Committee consider his role in the ethane contract when it considers his compensation.  GX 1450 is also a unique document in this case, as it reflects the defendant's own statements regarding a particular contract that was procured through bribery, which illustrate its high probative value.  Even if—considered in the abstract—the Court considered the email to be too speculative or confusing to satisfy the Rule 403 balance (a conclusion with which the government respectfully disagrees), the Rule 403 balance has shifted in light of the (incorrect) defense argument that the defendant's compensation was tied only to LPG.  For these reasons, the government respectfully requests reconsideration of this Court's text order excluding the exhibit under Rule 403.

The government is, of course, available to discuss this document further.

Respectfully submitted,

BREON PEACE
United States Attorney

By:           /s/
Jonathan P. Lax
Matthew Galeotti
Assistant U.S. Attorneys
(718) 254-6139

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Dept. of Justice

By:           /s/
Derek J. Ettinger
Assistant Chiefs, FCPA Unit
Clayton P. Solomon
Trial Attorney, FCPA Unit

MARGARET A. MOESER
Acting Chief, Money Laundering & Asset
  Recovery Section
Criminal Division, U.S. Dept. of Justice

By:           /s/
D. Hunter Smith
Trial Attorney, International Unit

Enclosures (Filed Under Seal)

cc:      Counsel of Record (by e-mail)

3