**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

February 19, 2024

**VIA ECF**

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Javier Aguilar*, No. 20 Cr. 390 (ENV) (E.D.N.Y.)

Dear Judge Vitaliano:

We write on behalf of Defendant Javier Aguilar in response to the Court's ruling that employees of Pemex Procurement International, Inc. (PPI) are not public servants under Mexico's Federal Penal Code (ECF No. 313) to move for a partial judgment of acquittal on the money-laundering conspiracy count, insofar as it asserts that Mr. Aguilar conspired to launder money in connection with (1) violations of Mexican antibribery law and (2) violations of the Foreign Corrupt Practices Act (FCPA) involving alleged payments to PPI employees.

In light of the Court's ruling that "[PPI] employees are not 'public servants' under Article 212 . . . , as required for Article 222(II), Mexico's criminal bribery provision," ECF No. 313 at 12, it is clear that no rational, properly instructed jury could convict him of conspiring to launder money in connection with violations of Mexican antibribery law. The Court therefore should issue a judgment of acquittal on Count Three insofar as it concerns that specified unlawful activity. *See, e.g.*, *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (court must enter judgment of acquittal where "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt"); *United States v. Full Play Grp., S.A.*, No. 15 Cr. 252 (PKC), 2023 WL 5672268, at *27 (E.D.N.Y. Sept. 1, 2023) (entering judgment of acquittal where no rational jury could convict because the statute at issue did not reach the defendant's conduct). The Court's Proposed Final Jury Instructions (ECF No. 314) reflect that the jury will not be instructed on this specified unlawful activity, but an order memorializing the judgment of acquittal on that prong of Count Three nevertheless is appropriate.

Mr. Aguilar further respectfully submits that the Court's ruling on Mexican antibribery law also compels his acquittal on the Mexico-related FCPA specified unlawful activity in Count Three. As explained below, the statutory text of the FCPA compels that result.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

The FCPA provides an "affirmative defense" where, as here, "the payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the foreign official's . . . country." 15 U.S.C. §§ 78dd-2(c)(1), 78dd-3(c)(1). Because the FCPA does not define "lawful," courts should "give the term its ordinary meaning" set out in established dictionaries. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Both general and legal dictionaries define "lawful" as "not contrary to law." *Oxford English Dictionary* (2023 ed.); *Black's Law Dictionary* (11th ed. 2019) (same). Consistent with the term's plain meaning, the Supreme Court has held that conduct is "lawful" under written law when it is "not covered by" written law. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103–04 (1983) (statute "is neutral on the subject of all [ ] practices it does not prohibit"); *accord, e.g.*, *Young v. United States*, 97 U.S. 39, 63 (1877) ("His acts are lawful in the sense that they are not prohibited.").

Accordingly, to satisfy this affirmative defense, a defendant need show only that a foreign country's written laws do not *proscribe* his conduct. The FCPA thus does not require a defendant to show that a foreign country's written laws affirmatively *permit* his conduct. The statute's text does not say that. Congress easily could have used language to that effect but chose not to. *See, e.g.*, 15 U.S.C. § 78mm(c) ("expressly authorized"); 33 U.S.C. § 403 ("affirmatively authorized"). Nor did Congress use other statutory signals like "*permitted* by the written laws" of the foreign country, which *would* have required a defendant to show an affirmative authorization. *Compare Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377 (4th Cir. 2022) (under 15 U.S.C. § 1692f(1), conduct is not "permitted by law" unless there is "an affirmative sanction" for it), *with Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th Cir. 1997) ("[T]he sale of firearms at a gun show at the Fairgrounds, which is not proscribed by federal or state law, is 'lawful activity,' because the County has not enacted an ordinance to prohibit such sales."). Courts "generally presume[ ] that Congress acts intentionally and purposefully in the disparate inclusion or exclusion" of statutory terms. *Bates v. United States*, 522 U.S. 23, 29–30 (1997) (citation omitted).

The FCPA's legislative history confirms that Congress made this textual choice deliberately: Congress rejected a House version of the bill that would have required defendants to show payments were "expressly permitted" under foreign law in favor of the statute's current language, "lawful under the written laws and regulations" of the foreign nation. H.R. Rep. No. 100-576, at 921–22. Congress's "specific[ ] reject[ion]" of that stricter language "is of course an extremely significant factor in determining what [ ] Congress' intention [was] with respect to the matters in issue." *Pan Am. World Airways, Inc. v. C.A.B.*, 380 F.2d 770, 781 (2d Cir. 1967).

Commentators agree that, when it enacted the FCPA, "Congress presumably did not intend this defense to encompass only those actions that are expressly allowed," since "most legal systems are structured to permit any action not proscribed by law," and thus "all actions not banned by law are permissible." Ved P. Nanda, 3 *Transnational Business Transactions* § 18:20 (Dec. 2023 update). This defense therefore applies so long as there is "something in writing to support the legality of the action." Lillian V. Blageff, 1 *Foreign Corrupt Practices Act Reporter* § 1:16 (Jan. 2024 update).

This Court's ruling on Mexican law establishes that Mr. Aguilar's alleged conduct concerning PPI and its employees was "lawful" under (that is, "not contrary to") Mexico's written criminal law, and thus that the FCPA's affirmative statutory defense applies. ECF No. 313 at 12 ("[PPI] employees are not 'public servants' under Article 212 . . . , as required for Article 222(II),

Mexico's criminal bribery provision."). Nor is this Court alone in holding that Mexican criminal laws applicable to "public servants" do not proscribe conduct in connection with private entities like PPI. A lower court in Mexico recently held that Mexico's bribery laws did not apply to employees of an entity similarly situated to PPI. *See* ECF No. 282-2. And just last week, Mexico's Supreme Court held—as a constitutional matter—that criminal statutes that apply to "public servants" *cannot* extend to persons who work for private entities like PPI. ECF Nos. 312 & 312-2.

A judgment of acquittal under the FCPA's affirmative defense is necessary because the Court's ruling resolves any potential question of fact that the jury could be asked to determine regarding that defense. The statutory text is clear: "It shall be an affirmative defense . . . that . . . the payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the foreign . . . country." 15 U.S.C. §§ 78dd-2(c)(1), 78dd-3(c)(1). The Court's holding that employees of PPI are not "public servants" under Mexico's Penal Code and therefore are not subject to Mexico's criminal bribery provisions conclusively establishes that Mr. Aguilar's alleged conduct "was lawful under the written laws" of Mexico. Because there is nothing for the jury to decide, the Court should issue a judgment of acquittal. *See* Fed. R. Crim. P. 29(a) ("[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction."); *see also, e.g.*, *United States v. Hartman*, 209 F.2d 366, 371 (2d Cir. 1954) (where the record shows "no basis in fact" for a guilty verdict, "the trial judge should have so held as a matter of law and granted [defendant's] motion for a judgment of acquittal").

The conclusions reached by other courts within the Second Circuit regarding the FCPA's affirmative defense are not to the contrary. In *United States v. Kozeny*, the defense did not apply because the foreign country's written criminal laws prohibited the payments at issue, while merely "reliev[ing] the payer of a bribe from criminal liability if the bribe [was] properly reported." 582 F. Supp. 2d 535, 539 (S.D.N.Y. 2008). And in *United States v. Ng Lap Seng*, the court rejected this defense in a brief oral ruling where the defendant did not point the court to any foreign authority that showed his conduct was lawful. *See* No. 15 Cr. 706 (VSB) (S.D.N.Y. July 6, 2017) (ECF No. 584, Tr. 716:8–15). In neither case did the defendant establish what Mr. Aguilar has shown here: that a foreign country's criminal laws expressly do *not* prohibit the payments at issue, both by their terms and under foreign and domestic judicial interpretations of those laws.

A judgment of acquittal also is warranted under the Second Circuit's decision in *United States v. Johnson*, 968 F.2d 208 (1992), which considered the "lawful conduct" affirmative defense to witness tampering set out in 18 U.S.C. § 1512(e). The Court of Appeals first held that "lawful" meant "allowed *or* permitted by law." 968 F.2d at 212 (emphasis added). The Court of Appeals then affirmed the decision of the Honorable Pierre N. Leval, agreeing that a defendant need not "prove that his conduct violated *none* of the panoply of . . . laws that might apply to his situation"; rather, given "the burdensome nature of proving such a negative," a defendant need show only that he did not violate the statutes the government had identified as applying to his conduct. *Id.* (original emphasis). Mr. Aguilar finds himself in the same circumstances here.

For these reasons, Mr. Aguilar respectfully requests that the Court enter a judgment of acquittal on *both* Mexico-related specified unlawful activities underlying the charged money-laundering conspiracy. The Court's ruling on Mexican law requires an acquittal on the

Mexican law specified unlawful activity. And that same ruling also compels an acquittal on the Mexico-related FCPA specified unlawful activity because Mr. Aguilar has satisfied the requirements of an affirmative statutory defense.

If the Court determines not to enter a judgment of acquittal on the Mexico-related FCPA specified unlawful activity, then, in the alternative, Mr. Aguilar respectfully submits that he has met the minimal threshold showing needed to warrant a jury instruction on the FCPA's "foreign law" affirmative defense. *See, e.g.*, *United States v. Zayac*, 765 F.3d 112, 120 (2d Cir. 2014) ("A defendant is entitled to an instruction on an affirmative defense [when] the defense has a foundation in the evidence." (cleaned up)); *United States v. Hurtado*, 47 F.3d 577, 584 (2d Cir. 1995) ("A defense theory must be charged so long as it has some foundation in the proof, no matter how tenuous that defense may appear to the trial court." (cleaned up)). Thus, if the Court does not enter a judgment of acquittal on that specified unlawful activity, Mr. Aguilar respectfully requests that the Court provide the instruction contained in the enclosed Appendix.

\* \* \*

We thank the Court for its attention to these issues and consideration of Mr. Aguilar's arguments.

Respectfully submitted,

 /s/  Daniel R. Koffmann

Daniel R. Koffmann
*Counsel for Defendant Javier Aguilar*

cc: Counsel of Record (via ECF)

Enclosure: Appendix

# **A P P E N D I X**

**Mr. Aguilar's Proposed Instruction on the FCPA's "Foreign Law" Affirmative Defense**

> Under the FCPA, it is an affirmative defense that the payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the alleged foreign official's country. This means that if a payment or promise of payment is lawful under the laws of that foreign country, then you cannot find that the defendant violated the FCPA.
>
> Because this is an affirmative defense, the defendant bears the burden to prove it by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove only that it is more likely true than not true, considering all the evidence. As I have explained, this burden is lower than the government's burden to prove a thing beyond a reasonable doubt.
>
> I have instructed you as a matter of law that the employees of PPI are not "public servants" under Mexican bribery law and therefore are not subject to Mexico's criminal bribery provisions. As such, it is not a violation of Mexican bribery law to make a payment, gift, offer, or promise of anything of value to a PPI employee. I further instruct you that, as a matter of law, the Mexican Constitution deems lawful any conduct not expressly deemed unlawful through clear and definite terms by an established law.
>
> If you find by a preponderance of the evidence that the defendant's payments to PPI employees were lawful under the laws of Mexico, then you must find that the defendant's payments to PPI employees did not violate the FCPA and, accordingly, you must find the defendant not guilty of conspiring to launder money in connection with violations of the FCPA involving Mexico or PPI for Count Three.

Adapted from the text of 18 U.S.C. § 78dd-2(c)(1); and Leonard B. Sand, et al., 1 *Modern Federal Jury Instructions: Criminal* ¶ 4.01, Instr. 4-5 (2023).