quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

February 20, 2024

**VIA ECF**

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Javier Aguilar*, No. 20 Cr. 390 (ENV) (E.D.N.Y.)

Dear Judge Vitaliano:

We write on behalf of Defendant Javier Aguilar regarding the government's anticipated request to remand Mr. Aguilar to custody under 18 U.S.C. § 3143(a)(1) in the event he is convicted. Mr. Aguilar submits this opposition preemptively to give the Court ample time to assess carefully whether immediate detention upon conviction would be necessary to ensure that Mr. Aguilar will not flee pending any sentence, rather than conducting the required analysis in court after an adverse jury verdict.

As explained below, the Court should not detain Mr. Aguilar immediately upon conviction because the evidence clearly and convincingly shows that he "is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id.* There are numerous less restrictive conditions of release that would be sufficient to limit any flight risk before sentencing.

**I.   PROCEDURAL POSTURE**

Based on the parties' discussions with the Court, Mr. Aguilar anticipates that the jury will begin its deliberations on Thursday, February 22, 2024. With that date approaching, Mr. Aguilar's counsel conferred with the government regarding whether the government would seek to have Mr. Aguilar remanded in the event of a conviction.

The government informed Mr. Aguilar on February 15, 2024 that Mr. Aguilar should expect that the government would seek remand under Section 3143(a) after any conviction. In response, on February 16, 2024, Mr. Aguilar proposed modifications to his current conditions

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

of release (ECF No. 7) to impose several more restrictive conditions to eliminate any perceived risk of flight upon any conviction—specifically, limiting his travel permissions beyond Texas to those approved by his assigned Pretrial Services Officer in the Southern District of Texas; increasing his bond from $100,000 to $2 million; and subjecting him to home confinement from 11:00 p.m. to 5:00 a.m., enforced by the BI SmartLink application that currently provides Mr. Aguilar's location monitoring. The government rejected Mr. Aguilar's proposal on February 17, 2024 because, "[g]iven the circumstances of this case, we don't think this is sufficient to overcome the presumption of detention under 18 U.S.C. § 3143."

## II. LEGAL STANDARD

The Bail Reform Act limits a district court's power to remand a defendant after conviction but before sentencing and appeal. In cases like this that do not concern crimes involving violence, drugs, potential life sentences, repeat offenders, or minor victims:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, *unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released* under [18 U.S.C. §] 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer *shall* order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1) (emphases added); *see also* Fed. R. Crim. P. 46(c) ("The provisions of [Section] 3143 govern release pending sentencing or appeal. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."). In assessing whether a defendant poses a flight risk or a danger to the community, courts consider, among other factors, the nature of the offense and the defendant's individual "history and characteristics," including his "character," "family ties," "length of residence in the community, community ties, past conduct," lack of "criminal history," and "record concerning appearance at court proceedings." 18 U.S.C. § 3142(g).

"While this burden is plainly substantial, if a defendant can make the required evidentiary showing, the statute establishes a *right to liberty* that is not simply discretionary but *mandatory*[.]" *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (emphases added). Under the statute, a defendant can meet that burden if clear and convincing evidence shows that there is a "least restrictive [nonpenal] condition, or combination of conditions," that "will reasonably assure [his] appearance [at sentencing] as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (cited in Section 3143(a)(1)); *see also, e.g.*, *United States v. Chansley*, No. 21 Cr. 3 (RCL), 2021 WL 4133655, at *2 (D.D.C. Sept. 10, 2021) ("[Section] 3143(a)(1) requires the Court to conduct the same analyses of flight risk and dangerousness used in the pre-trial context, but with the burden shifted."). The Court therefore must consider, among other nonpenal alternatives: location monitoring, travel restrictions, and the imposition of a substantial financial bond or other security. *See* 18 U.S.C. § 3142(c)(1)(B).

In any case, a court may not rush to detain a defendant after conviction without first giving him a meaningful opportunity to make an evidentiary showing under Section 3143(a)(1). The Due Process Clause requires the court at least to hold a hearing before remanding a defendant to custody pending sentence. *Abuhamra*, 389 F.3d at 320–21 ("[T]he minimal process due a post-verdict defendant who seeks continued release pending sentencing is the opportunity to demonstrate that he satisfies the burden of proof established by [Section] 3143(a)(1). In short, he is entitled to 'some kind of hearing' at which this issue can be fairly resolved." (quoting Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1296 (1975))).

### III. CLEAR AND CONVINCING EVIDENCE SHOWS THAT MR. AGUILAR WOULD NOT BECOME A FLIGHT RISK AFTER A CONVICTION.

Mr. Aguilar has a right to liberty between any conviction and sentencing because he is neither a danger to the community nor a flight risk, and because a conviction would not suddenly turn him into one. Not one but two courts have found that Mr. Aguilar is not a flight risk; the government's conduct throughout its long prosecution shows that it does not think he will flee either; and there is no evidence that this would change if he is convicted. In similar circumstances, courts regularly find that defendants have met their burden for presentencing release under Section 3143(a)(1). This Court should make the same finding here.

#### A. Mr. Aguilar Is Not a Flight Risk.

This Court already has determined that Mr. Aguilar is not a flight risk. As the Court found at the September 27, 2023 status conference when it ordered the removal of his GPS ankle monitor: "Mr. Aguilar has been super clean in over three years of pretrial supervision" with "not a hint of a violation" and "not a hint of a failure to appear." Hr'g Tr. 6:1–3 (enclosed as Ex. A). Since then, Mr. Aguilar has continued to demonstrate his solemn commitment to the judicial process by appearing and participating actively in his defense at multiple hearings and during each day of this multi-month trial. And he remains subject to—and steadfastly has followed—all his other conditions of release, including a $100,000 bond, travel restrictions, and regular location monitoring. ECF No. 7.

Nor, for several reasons, do Mr. Aguilar's ties to Mexico make him a postconviction flight risk. For starters, Mr. Aguilar *cannot* flee to Mexico because he surrendered his passport three-and-a-half years ago. *Id.* ¶ 4. More importantly, Mr. Aguilar *would not* flee to Mexico because his young twin daughters are American citizens who live in Houston. As the Court found last September in ordering the removal of Mr. Aguilar's ankle monitor:

> There is [ ] a very substantial interest that [Mr. Aguilar] has in staying in the United States, that while he has family and connections in Mexico, the most important human beings in his life are small and they live at home in the United States where they go to school. So that is, in the Court's view, a very compelling reason not to flee.

Ex. A at 6:4–9.

This Court ultimately found that Mr. Aguilar posed no risk of flight even after accounting for his Mexican ties and citizenship, residence near the U.S.-Mexico border, and what it deemed to be "substantial evidence of guilt." *Id.* at 5:3–17. The Court explained that the government's repeated consent to coast-to-coast travel permissions and travel requests to locations as far flung as the Alaskan wilderness confirmed that he was not a flight risk. *Id.* at 6:10–19; *see, e.g.*, ECF No. 105. The Court added that the pretrial services officers in the Southern District of Texas, who directly supervise Mr. Aguilar, did not believe he would flee. *See* Ex. A at 6:20–25.

This Court is not the only court to have found that Mr. Aguilar is not a flight risk. The Southern District of Texas likewise released Mr. Aguilar with no ankle monitor and no additional bond after the government brought new charges against Mr. Aguilar that carry a maximum sentence of 55 years' imprisonment. *See* ECF No. 173-2. In doing so, that court noted that "it doesn't sound like the Government has any serious concerns" about Mr. Aguilar being a flight risk. ECF No. 173-1 at 15:23–25. Moreover, despite bringing new charges that more than doubled Mr. Aguilar's potential sentencing exposure, and despite the years of discovery that he had received revealing the odds he would face at trial, the government was comfortable seeking the same bail package in Houston that it sought in Brooklyn three years earlier. *Id.* at 12:21–13:6.

As two courts already have found, Mr. Aguilar's current conditions of release, lack of passport, and powerful family ties to the United States give him "very compelling reason[s]" not to flee after any conviction. Ex. A at 6:9. Mr. Aguilar has lived in Houston since 2012 and made a life for himself there. He is a homeowner, has a close group of friends, and—most importantly—has two young daughters in school there. Given all these circumstances, immediate postconviction detention before sentencing would be unjustified and unnecessarily disruptive to Mr. Aguilar's and his daughters' established lives in Houston, and would prevent Mr. Aguilar from effectively organizing his affairs to prepare for sentencing.

### B. Courts Regularly Grant Presentencing Release in White-Collar Cases.

In white-collar cases like this one, courts routinely find that defendants meet their burden under Section 3143(a)(1) and are entitled to presentencing release where, as here, they have been model supervisees, have powerful family ties to the United States, and are subject to strict travel restrictions including passport surrender that limit any risk of postconviction flight. Mr. Aguilar is no different.

In *United States v. Johnson*, the Honorable Nicholas G. Garaufis denied the government's motion for remand and released a defendant pending sentence on nine wire fraud counts based on his $1 million bond, surrendered passport, and travel restrictions. No. 16 Cr. 457 (NGG), 2017 WL 11563342, at *1–3 (E.D.N.Y. Dec. 13, 2017). Judge Garaufis did so even though the defendant owned a home in a foreign country—and even permitted the defendant to travel out of the country pending sentence. *Id.* In denying the government's motion, "[t]he court particularly stresse[d] the serious harm that such flight would inflict on [the d]efendant's wife and children, to whom he is by all accounts devoted and who stand to lose their home if he attempts to flee." *Id.* (citation omitted). This Court found before that Mr. Aguilar posed no risk of flight for identical reasons, and as Judge Garaufis found in *Johnson*, strong family ties continue to ensure a defendant will not flee even *after* conviction.

-4-

Likewise, in *United States v. Sabhnani*, the Honorable Arthur D. Spatt denied the government's motion to detain a defendant after conviction on 12 counts even though (i) one of the convictions was for forced labor and involved conduct the media called "modern-day slavery,"[1] and (ii) the defendant had "considerable" assets and "significant" foreign ties. 529 F. Supp. 2d 377, 382–83 (E.D.N.Y. 2007). In doing so, Judge Spatt found that any risk of postconviction flight was limited by the strict travel restrictions, passport surrender, and location monitoring conditions that the court had imposed. *Id.* And just as this Court already found regarding Mr. Aguilar, and just as Judge Garaufis found in *Johnson*, Judge Spatt found that the defendant's family ties and young children further limited his risk of flight and created a compelling need for the defendant to have adequate time to put his affairs in order and care for his children before sentencing. *Id.*[2]

In *United States v. Scott*, the Honorable Edgardo Ramos similarly denied the government's motion for remand after the defendant was convicted of laundering $400 million in connection with a cryptocurrency scheme. No. 17 Cr. 630 (ER) (S.D.N.Y. Nov. 21, 2019) (ECF No. 209, Tr. 2080:18–2081:22). The government asserted that the defendant was a flight risk because:

> [T]his is a defendant who has access to substantial funds in an international network of accounts who has got foreign ties including to a country where he has citizenship and he cannot be extradited, who is part of a network of co-conspirators who have a demonstrated track record of using false passports, encrypted messaging services, and one of whom has completely disappeared. And, while on bail, the defendant has flagrantly violated orders of this court.

*Id.* at 2068:21–2069:3. Judge Ramos denied the government's motion after finding that the defendant was not a flight risk because he had seen throughout discovery that there was "fairly overwhelming" evidence against him, and thus must have "underst[ood] at least at a real level that there was a very real possibility that he would be convicted"—yet "[n]otwithstanding that, he was here every day" and "complied with every condition that was imposed on him." *Id.* at 2080:18–2081:22. So too for Mr. Aguilar, who understood from the discovery what he was facing at trial, yet has made every court appearance both before and during this multi-month trial and "has been super clean in over three years of pretrial supervision" with "not a hint of a violation" and "not a hint of a failure to appear." Ex. A at 6:1–3.

---

[1]  NBC News, *N.Y. millionaires guilty of 'modern-day slavery'* (Dec. 17, 2007), https://nbcnews.to/42Arzou.

[2]  Judge Spatt ordered a codefendant detained pending sentence who had committed crimes of violence and thus was subject to Section 3143(a)(2)'s stricter standards. *See id.* at 380–82.

Similar decisions abound.³ The same is true even in cases involving drug convictions, where defendants face significantly higher statutory burdens to obtain presentencing release.⁴

Moreover, it is telling that the government has *not* sought immediate postconviction remand under Section 3143(a)(1) in recent white-collar cases in this district, even when they involved wealthy defendants who had strong foreign ties and weak ties to the United States. For example: In *United States v. Roger Ng*, a case involving a wealthy defendant extradited from Malaysia, the government did not seek postconviction remand. No. 18 Cr. 538 (MKB) (E.D.N.Y.). Instead, the Honorable Margo K. Brodie allowed the defendant to remain free, subject to his preexisting conditions of release, for 18 months: 11 months between his conviction and his

---

³ *See, e.g.*, *United States v. Desu*, No. 18 Cr. 613 (MAS), 2019 WL 5693222, at *1–2 (D.N.J. Nov. 4, 2019) (defendant convicted of six counts of tax fraud, who had strong ties to India and the United Arab Emirates (which lacks an extradition treaty with the United States) released where he "ha[d] been compliant with all conditions of his release," surrendered his passport, secured his bond with his family home, and had "deeply-rooted emotional, familial, and reputational ties to the United States"); *United States v. Hagen*, No. 3:19 Cr. 146 (DLH), 2021 WL 2895915, at *2, *4–5 (N.D. Tex. July 9, 2021) (agreeing that "[t]he release of defendants pending sentencing on charges related to health care fraud is routinely granted" and releasing defendant who "currently has no passport or other international travel document or history of failing to appear for court, and has an incentive to stay in place and work with her attorneys to prepare for sentencing and to get her affairs in order, including planning for life after incarceration"); *United States v. Koerber*, No. 2:17 Cr. 37 (FB) (PMW), 2019 WL 3937024, at *1 (D. Utah Aug. 20, 2019) (Block, J., sitting by designation) (allowing defendant to remain on post-trial release pending sentencing after conviction on "fifteen counts of wire fraud, money laundering, and securities fraud"); *United States v. Sogbein*, No. 12 Cr. 54 (JSW), 2014 WL 12705058, at *2 (N.D. Cal. Jan. 10, 2014) (granting motion to reconsider postconviction detention order in healthcare fraud case where defendant posted bond, was subject to travel restrictions and location monitoring, and had "a strong incentive not to create any further disruptions to her familial relationships"); *United States v. Mikell*, No. 97 Cr. 81493 (DT), 2007 WL 188566, at *2 (E.D. Mich. Jan. 22, 2007) (defendants posed no risk of flight after conviction given the many years they "remained on bond without any incident" and their "substantial family and community ties").

⁴ *See, e.g.*, *United States v. Boyd*, No. 21 Cr. 486 (SHS), 2022 WL 790771, at *1 (S.D.N.Y. Feb. 3, 2022) (defendant met heightened standard for presentencing release in drug case because preexisting conditions of release, including $250,000 bond, home detention, location monitoring, and travel restrictions, were enough to limit any risk of flight); *United States v. Campbell*, No. 20 Cr. 631 (AKH), 2022 WL 2209371, at *1 (S.D.N.Y. June 21, 2022) (heightened standard for presentencing release met in drug case because defendant was "not likely to flee or pose a danger" since he "has been at liberty on bail since December 2020 and in that time has had no violations"); *United States v. McDuffie*, 451 F. Supp. 3d 281, 285 (S.D.N.Y. 2020) ("[t]here is no serious dispute that [the defendant] is unlikely to flee" after conviction on drug charges given his lack of prior record, his community ties, and because "any flight attempt would be hampered by his surrendering of travel documents"); *United States v. Rentas*, No. 09 Cr. 555 (HB), 2009 WL 3444943, at *2 (S.D.N.Y. Oct. 26, 2009) (heightened standard for presentencing release met in drug case where defendant with no criminal history "was released on bail for five months without incident and complied fully with the conditions of her release").

sentencing date, and another seven months between his sentencing date and his surrender date "to effectuate his return to Malaysia" for criminal proceedings in that country. *See id.*, ECF Nos. 273 & 274. During that time, Chief Judge Brodie repeatedly modified the defendant's conditions of release to allow him to attend religious observances after his preexisting curfew and to seek mental health treatment.[5] Likewise, in *United States v. Abboud*, where the defendant was convicted of stealing more than $1 million from a charity to buy luxury goods and had "extensive ties to Egypt," the government determined on the record not to seek postconviction remand. No. 16 Cr. 396 (ERK) (E.D.N.Y. July 9, 2019) (ECF No. 154, Tr. 1363:15–1364:20). The government did not even consider postconviction remand for any defendant in *United States v. Nordlicht*, even though all were wealthy and the government had asserted that at least one tried to flee the country before his indictment. *See* No. 16 Cr. 640 (BMC) (E.D.N.Y. July 9, 2019) (ECF No. 858, Tr. 7233:14–24); *see also id.*, ECF No. 453 at 30–35. Nor did the government seek postconviction remand in *United States v. Lopez*, a FIFA prosecution involving a wealthy Argentinian defendant (later acquitted after post-trial motions)—instead, the government agreed to double the defendant's bond after conviction to assuage any flight concerns. *See* No. 15 Cr. 252-32 (PKC) (E.D.N.Y. Mar. 17, 2023) (ECF No. 1975).

There is nothing exceptional about Mr. Aguilar's case that warrants departing from this well established practice. Mr. Aguilar has a spotless record on release. He has no passport with which to travel. And most importantly, any incentive to flee pales in comparison to his incentive to remain in the country where his young daughters live. As this Court found before, and as courts routinely find in similar (and in even worse) cases, the evidence clearly and convincingly shows that there is no need to detain Mr. Aguilar before his post-sentencing surrender date.

## IV. CLEAR AND CONVINCING EVIDENCE SHOWS THAT NONPENAL ALTERNATIVES WILL LIMIT ANY FLIGHT RISK THAT MR. AGUILAR *MIGHT* POSE UPON ANY CONVICTION.

There is no doubt that a conviction can provide a motivation to flee that does not exist prior to trial. As noted above, Mr. Aguilar's incentive to remain in the United States far outweighs his incentive to flee. And any marginal flight risk created by a conviction can be addressed with additional conditions of release, short of detention. *See* 18 U.S.C. § 3143(a)(1) (citing 18 U.S.C. § 3142(b)–(c), which requires courts to consider less restrictive, nonpenal alternatives before remanding defendants).

*First*, the Court can increase Mr. Aguilar's bond, which currently is set at $100,000 and secured by $10,000 in cash. ECF No. 7. Mr. Aguilar proposes that the Court increase his bond to $2 million, secured by a lien on his Houston home, which Harris County, Texas has appraised at approximately $3 million (enclosed as Ex. B). That *2,000%* postconviction increase would give Mr. Aguilar 2 million reasons not to flee and deprive his daughters of an important asset that they could use for educational expenses. *See Lopez*, *supra*, ECF No. 1975 (government agreed to

---

[5] *See id.*, Orders dated May 18, 2023; Mar. 28, 2023; Mar. 1, 2023; Nov. 8, 2022; Oct. 20, 2022; July 28, 2022; May 26, 2022. After conviction, Chief Judge Brodie granted the government's request to reimpose the defendant's longstanding post-indictment conditions of release, which Chief Judge Brodie had lessened in the immediate lead up to trial. *See id.*, ECF No. 244, Tr. 5593:2–5595:17.

double foreign defendant's bond, secured by lien on valuable real estate, instead of seeking postconviction remand).

*Second*, the Court can confine Mr. Aguilar to his home through an overnight curfew from 11:00 p.m. to 5:00 a.m., enforced by the BI SmartLink location monitoring through which Mr. Aguilar currently has location monitoring. Subjecting him to a curfew in addition to his current location monitoring would assuage any lingering concern that Mr. Aguilar's "proximity" to the U.S.-Mexico border in Houston could "increase[ ] the ability of successful flight" before federal authorities could catch him. Ex. A at 5:12–17; *see United States v. Kelly*, No. 98 Cr. 13 (JCW), 1998 WL 257853, at *1 (E.D. Pa. May 21, 1998) (releasing defendant pending sentence on stolen property and money laundering charges even though he was a pilot who "lives and works just over 100 miles from the Mexican border" and the court had "concern[s] about the risk that [he] will fail to appear" because cash bond, home confinement, electronic monitoring, and other nonpenal conditions adequately ensured that he would not flee).

*Third*, the Court can revoke Mr. Aguilar's travel permissions beyond Texas and otherwise as approved by his local Pretrial Services Officer in Houston. Mr. Aguilar currently is allowed to travel without prior court approval throughout the entire state of Texas and to New York City, the District of Columbia, the Southern District of Florida, and the Central District of California. *See* ECF Nos. 7, 35, 37, 164. The Court also has permitted him to travel for various personal purposes to destinations all across the country, each time without opposition from the government. *See* ECF Nos. 105, 119, 122, 124, 175. Mr. Aguilar proposes limiting his postconviction travel permissions to within Texas and otherwise upon approval from Pretrial Services.

These extra conditions, on top of those already in place, and together with Mr. Aguilar's lack of passport and powerful family ties to the United States, are clearly and convincingly sufficient to thwart any risk of postconviction flight. Presentencing incarceration therefore would be unwarranted under Section 3143(a)(1).

## V. THE COURT SHOULD HOLD AN EVIDENTIARY HEARING BEFORE ISSUING AN ORDER REMANDING MR. AGUILAR.

Mr. Aguilar respectfully submits that the existing record clearly and convincingly demonstrates that he poses neither a risk of flight nor a risk to the community. To the extent the Court is not persuaded on the current record, Mr. Aguilar respectfully requests an opportunity to develop the record further at an evidentiary hearing. The Due Process Clause requires a hearing prior to postconviction detention. *See Abuhamra*, 389 F.3d at 320–21. If the Court is considering detaining Mr. Aguilar, he would propose that the parties submit simultaneous letter briefs addressing the Section 3143 factors five days after any conviction and that a hearing be held as soon thereafter as the Court's schedule permits.

Even a brief reprieve between conviction and detention while the Court considers the parties' submissions will provide Mr. Aguilar the opportunity to confer meaningfully with counsel on how to present his case for presentencing release, while also giving him the chance to return to Houston to prepare himself and his young daughters before he surrenders. Due Process demands the former; judicial compassion calls for the latter. *See, e.g.*, *United States v. Rogers*, 972 F.2d

489, 495 (2d Cir. 1992) (noting "the traditional role of a district judge in bringing compassion and common sense to the sentencing process").

\*   \*   \*

For all these reasons, the Court should deny any request by the government to remand Mr. Aguilar immediately after any conviction or, at a minimum, should require further briefing and a hearing before deciding whether Mr. Aguilar should be detained pending sentence.

Respectfully submitted,

 /s/  *Daniel R. Koffmann*

Daniel R. Koffmann
*Counsel for Defendant Javier Aguilar*

cc:  Counsel of Record (via ECF)

Enclosures:    Ex. A (Sept. 27, 2023 Status Conf. Tr.);
Ex. B (Property Tax Appraisal Records)