

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL/MRG
F. #2019R01460

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 22, 2024

<u>By ECF and E-mail</u>

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Javier Aguilar
     <u>Criminal Docket No. 20-390 (ENV)</u>

Dear Judge Vitaliano:

  The government moves to a request corrective instruction and admonishment regarding two improper and misleading arguments during the defense's summation.  <u>First</u>, the defense argued that it was "completely legal" under Mexican law for the defendant to make the payments to employees of Pemex affiliates and misleadingly suggested that this Court had so held. This argument mischaracterized the Court's rulings and Mexican law, is incorrect and is highly prejudicial to the government.  <u>Second</u>, the defense improperly showed jurors a slide with the Court's preliminary instruction describing the charges in the indictment, but with the words the "Mexican Penal Code" stricken.  This slide—and the counsel's argument from it—misleadingly implied to the jury that the government had acted improperly in charging the defendant with a Mexican law specified unlawful activity, in spite of the fact that this Court had previously ordered the defense not to make improper arguments regarding the government's charging decisions.

  We describe both issues below.

  **I.** **The Defense Mischaracterized This Court's Ruling On Mexican Bribery Law**

  During summation, the defense first reminded the jury that what "the boss, . . . Judge Vitaliano tells you is the law." Tr. 3602:17-19.  It then correctly summarized the Court's expected instruction that "under Mexican law, employees of affiliate companies are not public servants and are not subject to Mexico's criminal bribery provisions."  Tr 3602:20-22.  But the defense did not stop there.  It first accused the government of having "misle[]d" the jury about the Court's expected instruction.  Tr. 3604:13.  It then twice stated that the bribery of employees of Pemex affiliates is "completely legal" under Mexican law. <u>See</u> Tr 3629:7, 10.  In the second such instance, defense counsel argued:

> Employees of affiliate companies are not public servants and, therefore, not subject to Mexico's criminal bribery provision. It's completely legal, but the Government just wants to muddy him [sic] up.

Tr. 3629:8-11 (emphasis added). Defense counsel further argued that "you can pay them when they are in Mexico." Tr. 3619:12-13.

Those statements were misleading and incorrect. First, this line of argument implied that the Court had ruled that the payments in question were "completely legal." In fact, the Court has expressly declined to hold that the payments at issue were "completely legal" under Mexican law. The defendant asked the Court to reach such a conclusion, see ECF Dkt No. 316, but this Court declined to do so. Instead, it held that the defendant had not "shown that the payments at issue were lawful under Mexico's written laws and regulations." 2/20/2024 Minute Order.

Moreover, quite apart from this Court's rulings, it was not in fact "completely legal" under Mexican law to make the payments in question. As explained in a footnote, there were indeed other Mexican laws that appear to have made the defendant's corrupt payments unlawful.[1] And, as the Court is well aware, the defense has itself argued that "Article 212 . . . is not the only

---

[1] Article 86 of the Pemex Law provides that contracts entered into by Pemex and its productive subsidiary companies (such as Pemex Etileno)—like the ethane contract here—"shall be subject to the Federal Law of Anticorruption In Public Contracts." Article 8 of that Anticorruption Law prohibits those participating in public procurements to bribe "public servants," but then further provides:
> Liability will also be incurred when the promise or offer of money or any gift is made to a third party [i.e. someone who is not a public servant], who in any way intervenes in the design or preparation of the call for public bidding or any other act related to a public procurement procedure of federal character.

Federal Law On Anticorruption in Public Contracts, Art. 8(I), second paragraph (https://www.diputados.gob.mx/LeyesBiblio/abro/lfacp/LFACP_abro.pdf). Thus, the law prohibits payments to individuals who are involved in procurements but are not public servants. To be sure, that Anticorruption Law was repealed effective July, 2017, but it remains incorporated by reference by Article 86 of the Pemex Law and, therefore, in effect as to Pemex contracts such as those in this case.

In any event, the law that replaced that Anticorruption Law—that is, the General Law on Administrative Responsibilities ("GLAR")—likewise prohibits not only bribery of public servants, see GLAR Art. 66—but also "collusion," which it defines as "carr[ying] out with one or more private subjects, in matters of public procurement, actions that imply or have the object or effect of obtaining an undue benefit or advantage in public procurement of a federal, local or municipal nature." GLAR, Art. 70 (https://www.diputados.gob.mx/LeyesBiblio/pdf/LGRA.pdf). Thus, under either of these laws, Mexican law prohibited payments to non-public servants who interfere in Pemex contracting.

2

law that proscribes bribery," and that "PPI employees are subject to the same criminal, civil, and employment sanctions that apply to all private-company employees who steal from or defraud their employers by engaging in bribery, embezzlement, or other forms of corrupt conduct." ECF Dkt. No. 290 at 4; see also ECF Dkt. No. 312 at 4 (likewise arguing that other provisions of Mexican law would prohibit the payments in question, even if Articles 212 and 222(II) did not).

The defense should not be permitted to imply that this Court has ruled the payments were "completely legal" under Mexican law. Yet that will inevitably be the impression jurors take away from the defense's arguments, which the defense intertwined with its quotations of the more limited instruction that the Court will give and reminders that it is the Court who gives the law. Courts may grant a supplemental instruction "to address defense counsel's misleading and improper comment[s] on summation," Zomber v. Stolz, No. CV 09-4637 ETB, 2012 WL 252844, at *7 (E.D.N.Y. Jan. 26, 2012), and to "dispel[] . . . misleading" legal arguments, McInnis v. Town of Weston, 458 F. Supp. 2d 7, 19 (D. Conn. 2006). Thus, to correct any misimpression that the defense's comments may have caused, the government requests the Court add the underlined red text to its written jury charge:

> EMPLOYEES OF AFFILIATE COMPANIES ARE NOT "PUBLIC SERVANTS" UNDER MEXICO'S PENAL CODE AND THEREFORE ARE NOT SUBJECT TO MEXICO'S CRIMINAL BRIBERY PROVISIONS. <u>THIS, HOWEVER, IS NOT TO SAY THAT THE PAYMENTS AT ISSUE IN THIS CASE WERE LAWFUL UNDER MEXICO'S LAWS AND REGULATIONS.</u>

This language is accurate and closely tracks this Court's order on the subject. Cf. 2/20/2024 Minute Order (holding that the defendant had not shown "that the payments at issue were lawful under Mexico's written laws and regulations"). Indeed, such an instruction would have been appropriate even if the defense had not made its misleading arguments. Now that the defense has done so, the instruction is all the more appropriate.

## II. The Defense Made Improper Argument Based On The Government's Charging Decisions

Defense counsel also made improper argument to the jury regarding the government's charging decisions. Specifically—supposedly out of a concern that it did not "want any of you [jurors] to be confused" (Tr. 3618:15-16)—it displayed a slide with an overview of the government's charges with the words "Mexican Penal Code" stricken out. Counsel argued:

> [I]f you recall, at the beginning of the case, when the judge's law clerk gave you an overview of what the charges were going to be, and she talked about Count Three, she read this text into the record, and there were three specified unlawful activities that she discussed at that time.

3

> One was the FCPA, one was the Ecuadorian penal code and one was the Mexican penal code. I don't want there to be any confusion because you heard about this at the outset of the case. The Mexican penal code is out. You can disregard that. That's not part of the case anymore.

Tr. 3618:18-15. Needless to say, there was no chance that jurors would have been confused by the fact that on the first day of trial, nearly two months ago, the judge's law clerk once uttered the words "Mexican Penal Code." Instead, the defense chose to remind the jury of those words—including by showing a slide with them in strikeout text—to suggest there was something improper about the government's decision to charge that specified unlawful activity.

Before trial began, however, this Court granted the government's motion to preclude the defendant from making improper arguments regarding charging decisions, including arguments about the counts that had then been dismissed on venue grounds. See 12/11/2023 Order at 13 (Ruling I). The defense's deliberate decision to call the dismissed Mexican specified unlawful activity to the jury's attention was improper for all the reasons specified in the government's earlier motion. The jury should after all make its decision based on the evidence, not its views about the propriety of the government's charging decisions or of the two side's competing legal arguments. That, after all, is why the parties redact objections from transcripts shown to the jury. Showing the jury a slide with stricken-out text regarding a dismissed specified unlawful activity is the opposite of a redaction: it is the intentional highlighting of a legal dispute for jurors in an attempt to have them draw an adverse inference against the government.

The defense argument on this subject was improper and the government requests that the Court admonish the defense that it refrain from further such argument. The government does not believe a corrective instruction is needed on this issue yet, but one may become necessary if similar improper defense arguments continue.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:     /s/
        Jonathan P. Lax
        Matthew Galeotti
        Assistant U.S. Attorneys
        (718) 254-6139

        GLENN S. LEON
        Chief, Fraud Section
        Criminal Division, U.S. Dept. of Justice

By:     /s/
        Derek J. Ettinger
        Assistant Chief, FCPA Unit
        Clayton P. Solomon
        Trial Attorney, FCPA Unit

        MARGARET A. MOESER
        Acting Chief, Money Laundering & Asset
          Recovery Section
        Criminal Division, U.S. Dept. of Justice

By:     /s/
        D. Hunter Smith
        Trial Attorney, International Unit

Enclosure

cc:    Counsel of Record (by ECF)