```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNITED STATES OF AMERICA                        :
                                                :
                                                :
                                                :    MEMORANDUM OPINION
                -against-                       :
                                                :    1:20-cr-390 (ENV)
JAVIER AGUILAR,                                 :
                                                :
                                Defendant.      :
-------------------------------------------------------------- x
```

VITALIANO, D.J.

In one of its initial *in limine* rulings, the Court held that, notwithstanding the fact that it was direct evidence of Aguilar's participation in the charged conspiracy and probative of his control over funds flowing from Vitol to recipients of bribes, his embezzlement of his employer's funds in the nature of a kickback from intermediaries directly involved in the payment of the bribes should be precluded on Rule 403 grounds because the prejudicial effect outweighed the probative value. *See* Diversion Scheme Order, Dkt. 155, at 2–8. This memorandum opinion is filed to supplement and elaborate upon the Court's reasoning for its decision to grant the government relief from that ruling.

It should be well understood that evidentiary rulings made *in limine* especially where, as here, they are animated solely on a Rule 403 analysis, are not immutable. The vagaries of litigation make ever-present the possibility that some twist in argument or in the unfolding of evidence might upset the delicate balance between the probative and the prejudicial. *See Weyant v. Okst*, 182 F.3d 902, at *2 (2d Cir. 1999) (summary order) (finding no abuse of discretion where trial court reassessed Rule 403 balance based on opening statements at trial and found admissible evidence previously excluded *in limine*); *United States v. Wade*, 512 F. App'x 11, 14 n.1 (2d Cir. 2013) (summary order) ("[A] pretrial evidentiary ruling is not a 'straightjacket' that cannot be revisited

1

in appropriate instances.").

Common understanding alone could augur concern that a litigation stratagem might open an evidentiary door once closed. In this case, there was a more concrete foreshadowing of that possibility. In a subsequent *in limine* ruling, the Court discussed arguments and lines of inquiry that might open the door and allow the government to introduce evidence that Aguilar took a kickback from the stream of funds being sent to Vitol's intermediaries to pay bribes to foreign officials. *See* Order on Def.'s Responsive Mot. *in Limine*, Dkt. 226, at 2–3. Leavened by its observation that it could not "presently conceive" of a line of inquiry by the defense that might otherwise cause it to reevaluate the ruling that had closed the door, the Court expressly warned that its present assessment was without prejudice to the government's argument that a line of inquiry might, in fact, trigger a reevaluation of the initial Rule 403 analysis. *Id.* at 3; *accord Lloyd v. Morton*, No. 18-cv-6979 (WFK), 2023 WL 1994666, at *7 (E.D.N.Y. Feb. 14, 2023) (court's pretrial determination as to "one way in which the defense could open the door . . . does not preclude other methods [during trial] of opening the door to admit" previously-excluded evidence).

Despite the yellow caution flags, the door opened a crack during the defense's cross-examination of Nilsen Arias,[1] who, during the charged period, was the International Trade Manager of Petroecuador and admitted at trial to having taken bribes to facilitate the award of a multimillion-dollar contract for fuel oil (the "Fuel Oil Contract") with Vitol, Aguilar's employer. Trial Tr. at 89:21–23; *id.* at 91:2–12. The evidence adduced during his examination showed that in an analogous deal with Gunvor—also an international commodities trading giant and a competitor of Vitol—an employee of Gunvor, Ray Kohut, demanded a kickback from the

---

[1] There was a bit of a warble to a similar effect in the defense's opening, but it did not draw a contemporaneous government objection. *See* Trial Tr. at 62:22–63:9.

intermediary, Antonio Pere, who billed himself as a consultant with expertise in the Ecuadorian petroleum market and who was used by both companies (Gunvor and Vitol) to bribe Arias. Trial Tr. at 482:19–483:6.

Apparently sensing that it would be whipsawed if defense inquiry advanced further and the door remained closed, the government objected when defense counsel asked Arias whether Antonio Pere ever told him, as he had been told with respect to Ray Kohut, that he paid a kickback demanded by Aguilar. *Id.* at 483:7–8. In tacit acknowledgement that it might be reasonable to conclude that it had, defense counsel expressed concern to assure that the question did not open the door to the evidence that the *in limine* ruling had precluded. *Id.* at 490:25–491:2.

The Court indicated that the single question now before it would not "open the door . . . because it is going to be asked for [the state of mind of these individuals] and for that reason only." *See* Trial Tr. at 491:3–5. But, and critical here, the Court instructed Aguilar's counsel that that single question would also be the last one on that subject. *Id.* at 490:21–22 ("I am going to allow that question on that basis, but that's it."). The yellow flag hoisted by the Court's supplemental *in limine* ruling a few weeks prior to trial that a defense strategy might alter the Rule 403 balance and cause the Court to reevaluate its order precluding the government from offering evidence of Aguilar's kickback, *see* Order on Def.'s Responsive Mot. *in Limine* at 3, had now been replaced with a red flag.

Notwithstanding the red flag, and without making inquiry or seeking clarification of the order issued by the Court on the subject matter last raised in the cross-examination of Arias, defense counsel barreled the through the closed door during the cross-examination of the next witness, Antonio Pere. Through that cross-examination, counsel sought to develop the defense theme that the business solicitation materials prepared by Antonio Pere and his brother Enrique

3

did not give the slightest hint that the bribery of high-ranking Ecuadorian officials would be an arrow in their quiver. Trial Tr. at 1023:21–1026:22; *id.* at 1050:23–1051:13. It was in this context that the cross-examination returned to Gunvor's Ray Kohut. *Id.* at 1051:14–1052:20. The defense used that cross-examination to establish that it was only after a couple of deals between Gunvor and Petroecuador arranged through the "consultancy" of the Pere brothers that Ray Kohut first demanded and was paid a kickback by Antonio Pere. *Id.* at 1056:5–11. Patently, the evidence thus adduced about Ray Kohut's kickback was designed to dovetail with evidence that, though having received the same kind of business solicitations that Kohut had received from the Pere brothers, Aguilar had not taken a kickback. *Id.* at 1056:12–14.

Of great significance, the inquiry into Kohut's kickback scheme went far beyond merely ignoring the red flag hoisted by the Court during the defense's cross-examination of Arias. In context, the inquiry hogtied the taking of a kickback to deciphering the innocent, or at worst equivocal, nature of the consultancy solicitations sent out to potential customers, Gunvor and Vitol, and their agents, Kohut and Aguilar. Clearly, the jury was left with the reasonable impression that Kohut's late demand for a kickback from the "consultancy fee" that Gunvor had paid to the Peres was an epiphany moment—a showing that he had finally figured out that the Pere brothers were not offering consulting services but, instead, were engaged in a corrupt scheme with Arias and other officials. Trial Tr. at 1051:17-1056:11; *see also id.* at 62:22-63:9. In effect, the cross-examination introduced the inference that receipt of a kickback could be equated with knowledge or notice of bribery, such that the absence of a kickback is evidence of the absence of notice or knowledge. Put more pointedly, the evidentiary context that another trader, Kohut, arguably demonstrated his knowledge by demanding a cut of the payment funding the bribes, and that Aguilar did not get such a cut, would leave the jury with a gross misimpression. Such evidence

4

of knowledge did not exist in Aguilar's case because none had been offered—evidence that Aguilar had similarly siphoned a kickback from funds destined to bribe government officials was barred by the door closed by the Court's initial *in limine* ruling.

Recognizing that the government might now be entitled to introduce evidence that Aguilar secured a kickback from the payments Vitol sent to Antonio Pere through Lionel Hanst to bribe Ecuadorian officials, the Court set out to fashion a modification that would take into account whether Aguilar's alleged kickback was part of a separate overall embezzlement scheme. With this balance in mind, but also recognizing the need to cure the misimpression, the Court invited the government to make an offer of proof with respect to the previously-excluded evidence, that it was prepared to show: (1) only after funds were sent from Vitol to accounts controlled by Hanst in connection with the Fuel Oil Contract, defendant diverted money from those same accounts for his personal benefit; and (2) defendant did not take kickbacks from Hanst's accounts prior to the time that Vitol made payments to Hanst in connection with the Fuel Oil Contract. Trial Tr. at 1663:3–1664:13. The government satisfied the Court's required proffer, *see* Gov't Offer of Proof, Dkt. 273, and the Court modified its *in limine* ruling, Trial Tr. at 2207:10–22.

At bottom, defendant had fair warning and chose to ignore the Court's red flag and to proceed without making any inquiry of the Court as to what effect renewed questioning about Ray Kohut's kickback would have on the Court's *in limine* ruling that closed the door to evidence of Aguilar's kickback. In context, the inquiry that linked the absence of a kickback with the absence of notice radically altered the Rule 403 balance and invited reconsideration and modification of the initial *in limine* ruling. Indeed, the balance had altered so much so that even had the Court given none of the cautions it did, it was well within the Court's prerogatives under existing Second Circuit case law to alter its *in limine* ruling in the context of such grand changed circumstances.

5

*See Wade*, 512 App'x at 14 n.1 (quoting Fed. R. Evid. 103 advisory committee's note to 2000 amendment) ("Even where the court's [pretrial] ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered." (alteration in original)); *Weyant*, 182 F.3d at *2.

Dated: Brooklyn, New York
       February 22, 2024

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge