UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,        :
     :
     :
     :
    -against-     :    <u>SHORT-FORM</u>
     :    <u>MEMORANDUM & ORDER</u>
JAVIER AGUILAR,      :
     :    20-CR-390 (ENV)
             Defendant.   :
------------------------------------------------------------- x

VITALIANO, D.J.

      Jury selection in this case is scheduled to start on January 2, 2024, and, in that connection, the government has filed a motion *in limine*.  Mot., Dkt. 177.  Having considered the submissions of the parties, Dkts. 177, 179, 181, the motion is resolved in the manner and for the reasons as set forth below.

| <u>Motion</u> | <u>Ruling</u> |
|---|---|
| (A) The government seeks to preclude Aguilar from arguing that he should be acquitted because the case should have been brought in a different district.  Mot. at 18–20.[1]  Specifically, the government seeks to preclude argument that "[Aguilar] should have been prosecuted in a different venue or that it is unfair to him to be prosecuted in this Court."  *Id.* | (A)   With its fixed focus on what he terms the government's attempt to deprive him of his constitutional right to assert at trial that the government has not met its burden on venue as to Count Five, *see* Def.'s Opp., Dkt. 179, at 9–10, Aguilar's argument in opposition to this *in limine* request of the government is somewhat the straw dog.  Indeed, the Court has already ruled, and the government does not dispute, that Aguilar is free to |

---

[1]  Page citations to the parties' briefing are with reference to ECF pagination.

| | |
|---|---|
| at 20; *see also* Gov't Reply, Dkt. 181, at 7. | renew at trial his contention that the government cannot meet its burden to show, by a preponderance of the evidence, that venue is proper. *See* Order, Dkt. 154, at 4. Indeed, such inquiry is within the province of the jury. *See United States v. Griffith*, No. 20-CR-15 (PKC), 2020 WL 4369650, at *3 (S.D.N.Y. July 29, 2020). Buoyed by the fact that its gravamen has essentially been met with defendant's silence, this *in limine* request seeking to preclude Aguilar from making the broader argument that *none* of the counts should have been charged in the Eastern District of New York, *see* Mot. at 18, is granted. |
| (B) The government seeks preclusion of evidence or argument that paying bribes was common practice in Ecuador, Mexico, or the petroleum industry generally. Mot. at 20–24. Specifically, the government seeks to preclude as irrelevant evidence and argument that other Vitol employees and competitors of Vitol paid bribes to foreign officials as an "everybody-was-doing-it defense." *Id.* | (B) As conditioned by its motion papers, *see* Mot. at 21 n.3, the government's request is granted as unopposed. |

| | |
|---|---|
| at 20–21.    The government notes, however, that it expects testimony from cooperating witnesses as to their roles in other bribery schemes involving Vitol's competitors, and does not seek to preclude cross-examination of such witnesses on that topic.  *Id.* at 21 n.3. | |
| (C) The government asks the Court to preclude evidence or argument that defendant was extorted into paying bribes, because there is no evidence that extortion[2] occurred here.  Mot. at 24–25. The government argues that since there is no evidence that Aguilar or Vitol was threatened with physical harm if they did not participate in the alleged bribery, any extortion augment or evidence would be irrelevant.  *Id.* at 24–25 (citing *United States v. Kozeny*, 582 F. Supp. 2d 535, 540 n.31 (S.D.N.Y. 2008)). | (C)    In response, Aguilar agrees with the government that the court should follow the reasoning of *Kozeny*.  His interpretation of that case, however, leads to a different result. Concisely, Aguilar contends that *Kozeny* held that, under the FCPA, a defense of lack of corrupt intent due to extortion is distinct from the affirmative defense of duress, the latter of which he concededly does not intend to raise.  Def.'s Opp. at 12.  A careful review of the *Kozeny* opinion confirms that the only way to disprove corrupt intent due to extortion is by showing "true extortion." *Kozeny*, 582 F. Supp. 2d at 540.  The *Kozeny* court explained that a defense of true |

[2]  The government uses the terms "duress" and "extortion" interchangeably in its motion.  Mot. at 24–25.

extortion does not apply when "payment [is] demanded on the part of a government official as a price for gaining entry into a market or to obtain a contract," but does apply where payment is made "to keep an oil rig from being dynamited." *Id.* Thus, the court concluded that "if [the defendant] provides an evidentiary foundation for the claim that she was a victim of 'true extortion,'" the court would "instruct the jury on what constitutes a situation of 'true extortion' such that [the defendant] would not be found to have possessed the 'corrupt' intent required for a violation under the FCPA." *Id.*

Therefore, consistent with *Kozeny*, and as the FCPA's legislative history confirms, a defendant may argue that he lacked a corrupt intent because he was the victim of true extortion *only* where he is able to lay the necessary evidentiary foundation for such a defense. *Id.*; S. Rep. No. 95–114, at 10–11 (1977), reprinted in 1977 U.S.C.C.A.N. 4098, 4108.

To that end, Aguilar will be required to make an offer of proof as to how he can satisfy

4

| | |
|---|---|
| | those conditions and, if satisfactory to the Court, he will be permitted to introduce such evidence of true extortion.[3] *Kozeny*, 582 F. Supp. 2d at 540. |
| (D)   As narrowed by its reply papers, in this request the government seeks to preclude Aguilar "from arguing or suggesting to the jury that his failure to obtain an improper advantage (or any other particular result) is a defense to liability under the FCPA."  Gov't Reply at 11.  The government argues that "what matters under the FCPA" is the defendant's intent, and not whether the "bribe payment did not have its intended result," *i.e.*, to secure an improper business advantage.  Mot. at 26.  As a result, the government seeks to bar as irrelevant and unduly prejudicial any argument that foreign officials did not | (D)  Aguilar does not dispute that actually obtaining an improper advantage is not an element of a FCPA offense.  Def.'s Opp. at 14; *see also Kozeny*, 582 F. Supp. 2d at 541 ("[T]he proper focus is on [the defendant's] intent and . . . the [g]overnment is not required to show that 'the official accepted the bribe,' that the 'official [ ] had the power or authority to perform the act [ ] sought' or that the 'defendant intended to influence an official act which was lawful.'").  He does, however, oppose the government's request to the extent it seeks to bar him from introducing evidence that he did not secure an improper advantage as such evidence is probative circumstantial evidence of the absence of corrupt intent.  *Id.* at 15–16.  Stated differently, on the absence of proof by the government that he |

---

[3]  In his response, Aguilar also seeks to safeguard his right to cross-examine cooperators "whether (or to what extent) those cooperators revealed their extortion of Mr. Aguilar to the government during their proffer session to impeach their testimony."  Def.'s Opp. at 13.  The government conceded Aguilar's right to do so, "provided it is . . . not used as a backdoor attempt to assert a defense of extortion without laying the necessary evidentiary foundation."  Gov't Reply at 10.  The Court's conclusion with respect to the evidentiary foundation needed to raise a defense of true extortion applies equally to evidence to be produced on direct and cross-examination.

| | |
|---|---|
| provide Aguilar or Vitol with a business advantage, or that any "assistance or information that they provided was minor or insignificant." *Id.* at 26–27. | obtained an improper benefit, such evidence is probative, circumstantially, of whether any alleged payments were made to foreign officials "'for purposes of' obtaining such a benefit." *Id.* at 15.<br><br>At any rate, there appears to be a meeting of the minds.  In its reply, the government does not contest that Aguilar may put on circumstantial evidence of his intent, "provided he does not imply or argue to the jury that actually obtaining an improper advantage is a necessary element of the offense."  Gov't Reply at 11.  On that basis, this request is granted. |
| (E)   At its essence, in this request the government seeks to preclude defendant from relitigating his motion to suppress statements made to FBI agents at George Bush Intercontinental Airport ("IAH") that were subject to a prior motion to suppress and found by the Court to have been made voluntarily in a non-custodial setting.  Mot. at 27–29; *see also* Order, Dkt. 106, at 9. The admissibility of such statements, the government contends, is a | (E)   Declaring that he had no intent to do so anyway, Aguilar effectively concedes that he is barred by 18 U.S.C. § 3501 from relitigating the Court's earlier finding that the statements made in a non-custodial setting at IAH were voluntary. Def.'s Opp. at 17. The government correctly points out, *see* Gov't Reply at 12–13, that "evidence concerning the voluntariness of a statement may only be admitted under 18 U.S.C. § 3501(a) where the statement was made 'during interrogation following arrest or detention.'"  *United States v.* |

matter of law reserved to the Court under Rule 104[4] and are inappropriate for the jury's consideration.  Mot. at 28.  To that end, the government seeks to preclude Aguilar from arguing or suggesting that the government obtained those statements through any illegal, improper, or unconstitutional means.  The government also argues that evidence of any claimed impropriety by government agents in seeking the statements is irrelevant at trial and is barred by Rule 401.  *Id.* at 29.

*Ramsey*, No. 21-CR-495 (ARR), 2023 WL 2523193, at *8 (E.D.N.Y. Mar. 15, 2023).  To the extent that this *in limine* request seeks to bar that argument or inquiry, it is granted.  This includes argument about or inquiry into what Aguilar deems to be "coercive circumstances surrounding his encounter with federal agents."  Def.'s Opp. at 18; *United States v. Morel*, 751 F. Supp. 2d 423, 429 (E.D.N.Y. 2010).

Aguilar does, however, seek to trim what he believes is the excess reach of the government's request.  He argues that, not withstanding any inability to contest the voluntariness of his statements, he is free to attack and impeach the trustworthiness of the testimony of the agents who secured Aguilar's statements at the IAH interview.  And he is.  While Aguilar may not contest the voluntariness of his confession at trial, he is not precluded from offering evidence concerning the credibility of the statements made at IAH.  *See Ramsey*, 2023 WL 2523193, at *8 ("Although the

---

[4]  All references to rules, unless otherwise indicated, are references to the Federal Rules of Evidence.

government argues that 'the circumstances of the defendant's statements . . . are irrelevant to the limited factual questions for the jury,' if [the defendant] admits competent evidence that impeaches the credibility of her inculpatory statements, that evidence is plainly relevant." (internal citations omitted)); *see also Morel*, 751 F. Supp. 2d at 429 ("[T]he requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial." (emphases in original) (citing *Crane v. Kentucky*, 476 U.S. 683, 688, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986))).

Of course, as suggested in the reply papers, the lines of inquiry Aguilar might intend to pursue remain subject to a traditional Rule 401 and Rule 403 balancing test, considering the relevancy of the inquiry against the harms Rule 403 seeks to avoid. For example, Aguilar asserts that he intends to question the agents about inconsistencies surrounding the agents' testimony about COVID-19 prevention and their decision to interrogate

Aguilar at an international airport. *See* Def.'s Opp. at 18; *see also* Suppression Hr'g Tr., Dkt. 94, at 84–91, 108–90, 129, 206. Such statements carry some—albeit minimal—probative value of the agents' credibility with respect to the interview at IAH. The inconsistencies also contain a risk of misleading or confusing the jury or wasting time under Rule 403. At this juncture, however, any potential prejudicial effect does not "substantially outweigh" the probative value of the evidence as to the agents' credibility.

Aguilar likewise intends to argue that "an FBI case agent who did not participate in the interrogation improperly influenced the contents of the Form 302 memorializing that encounter, and thus also improperly influenced the interrogating agents' after-the-fact testimony about that encounter." Def.'s Opp. at 19; *see also* Suppression Hr'g Tr. at 183–194. This proposed line of questioning, like the previous one previewed by Aguilar, has some probative value for the agents' credibility and the credibility of the statements made at IAH. And like the previous

| | |
|---|---|
| | line, there is a similar potential to mislead or confuse the jury or waste time that does not, at this point, substantially outweigh the probative value of the agents' testimony. Of course, the context of trial may tilt the scales toward exclusion, and the government may renew any objection accordingly. |
| (F) The government seeks to bar defendant from introducing previous out-of-court exculpatory or self-serving statements made at IAH and otherwise, despite the government's stated intention of offering some such statements in its case-in-chief. Mot. at 30–31. | (F) In response, Aguilar requests that the Court defer ruling on the admissibility of any statements made at IAH, because he will not know what, if any, statements he may introduce until the government presents its case-in-chief. Def.'s Opp. at 20.<br><br>Since neither side has identified a single out-of-court statement made by Aguilar that it intends to offer into evidence, the Court construes this request as one to set forth the Court's legal parameters for assessing a request if and when one is made. First, should the government seek to offer such a statement (and regardless when or where prior to trial it was made), if otherwise admissible under a Rule 401/403 balancing analysis, it would be admissible as a party opponent statement under Rule 801(d)(2)(A). As for Aguilar seeking to admit his own out-of-court statements, he would be |

| | subject to the general rule that "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).  Defendant, however, may overcome this rule through some exception to the hearsay rule or via the rule of completeness, provided he establishes the admissibility of such statement.  *See* Fed. R. Evid. 106.  Beyond that, a specific ruling with respect to an individual statement or group of statements must abide the offer of any such statement at trial within the circumstances existing at the time of the proffer.  *See Moore v. Rubin*, No. 17-CV-6404 (BMC), 2020 WL 13573582, at *2 (E.D.N.Y. Jan. 31, 2020). |
| --- | --- |
| (G)  The government seeks preclusion of evidence of defendant's family background, nationality, health conditions, and age.  Mot. at 32–33.<br><br>         Aguilar contends that "evidence about his nationality, education, or other background facts about his life" may still be relevant and admissible, and requests | (G)  The Court assumes for purposes of this request that pedigree information regarding Aguilar's nationality, family, education, work history, and the like would be elicited from Aguilar himself should he take the stand.  In such instances, the Court accords greater latitude for simple inquiries on these subjects.  As a result, the Court is also in accord with defendant's view that final ruling on |

| | |
|---|---|
| that the Court defer ruling on the motion until trial.  Def.'s Opp. at 23. | such matters should abide the event at trial.  Extrinsic evidence, on the other hand, will not be accorded such latitude.  Such evidence, generally, is not relevant to the issue of guilt or innocence and can inject matters that inflame sympathies, biases, or passions.  Ordinarily, as a consequence, such evidence is found to be inadmissible.  *United States v. Watts*, 934 F. Supp. 2d 451, 481 (E.D.N.Y. 2013) (citing *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991)); *see also United States v. Kaufman*, No. 19-cr-0504 (LAK), 2021 WL 51521, at *2 (S.D.N.Y. Jan. 6, 2021) (precluding evidence of defendant's family background, health conditions, or other personal factors as "not relevant to guilt or innocence").  Of course, the government may in its case-in-chief open the door to the admission of such evidence on some or all of the topics that might otherwise have been foreclosed to the defense.  That too must abide the trial. |
| (H)   The government requests that the Court preclude defendant from offering evidence or argument regarding potential | (H)  The government's request is unopposed and is granted. |

| | |
|---|---|
| consequences of a conviction. Mot. at 34–35. | |
| (I)   The government seeks to preclude defendant from offering evidence or argument related to the government's charging decisions in this case or related cases.  Mot. at 35–37.  The government specifically seeks to preclude "improper arguments" concerning the government's decision to enter into plea agreements with several individuals who will testify at trial and enter into a deferred prosecution agreement with Vitol.  *Id.* at 35.   The government further asks the Court to preclude "evidence or argument about the charges that were dismissed in this Court for lack of venue or the pending indictment against him in the Southern District of Texas to elicit sympathy from the jury or to portray the government as vindictive."  *Id.* | (I)   The government's request is granted without opposition and with the understanding that this ruling in no way restricts defendant's right to cross-examine government witnesses who have received a benefit as a result of their cooperation with the prosecution. |
| (J)   The government seeks to preclude defendant from introducing evidence or | (J)   In this request designed to quell any argument or proffer of evidence by Aguilar as to what is |

argument regarding his lack of criminal history and specific instances of good character under Rule 405(a). Mot. at 37–39. Specifically, the government seeks to preclude evidence or argument about defendant's lack of a felony criminal history unless he chooses to testify, as well as "details of Aguilar's background" such as "whether [he] is a good family member" or "has otherwise demonstrated good character in certain instances." *Id.* at 38.

otherwise a presumably crime free and positive life, the government somewhat massages and reasserts matters subsumed in a prior request: the propriety of any offer of such evidence by Aguilar, and of argument based on it, is controlled by Rules 404(a) and 405. Under Rule 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Thus, "[e]vidence that a defendant engaged in prior good acts, when the defendant has not been charged with 'ceaseless' criminal conduct is generally irrelevant and inadmissible [at trial]." *United States v. Rivera*, No. 13-CR-149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015).

Certainly, this does not mean a defendant is precluded from offering character testimony that is otherwise admissible under Rules 404(a) and 405(a). For example, "[a]lthough a character witness may give general testimony concerning the defendant's reputation for a 'pertinent trait of character' or the witness's opinion of the defendant with regard to that trait," such evidence is "not

|  | admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *United States v. Inniss*, No. 18-CR-134 (KAM) 2019 WL 6999912, at *7 (E.D.N.Y. Dec. 20, 2019). |
|  | However, and as the parties acknowledge, *see* Mot. at 37, Def.'s Opp. at 26, evidence of a lack of criminal record is admissible, albeit with "low probative value," for the purpose of "gauging the credibility of a testifying witness." *See United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988). Consequently, if Aguilar takes the stand, he may establish the absence of any criminal record. |
|  | To the extent the government's request also seeks preclusion of other details of Aguilar's background, such as whether "he is a good family member," *see* Mot. at 38, this request is addressed under request (G) above and the ruling there is reiterated here. |
| (K)   The government seeks to preclude defendant from cross-examining five cooperating witnesses concerning prior bad acts under Rule 608.  Mot. at 39–45. | (K)   Rule 608(a) permits, on cross-examination inquiry into a witness's specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness" of the witness.  A |

With respect to Antonio Pere Ycaza ("A. Pere"), the government seeks to preclude cross-examination about ████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ███████████████. *Id.* at 41. The government further seeks to preclude evidence that on October 6, 2020, after A. Pere entered into a cooperation agreement with the government but before his waiver of indictment and entry of guilty plea, use of cocaine at a social event. *Id.* at 42.

With respect to Enrique Pere Ycaza ("E. Pere"), the government seeks preclusion of, ██████████████ ████████████████████ ████████████████████ ████████████ *Id.* With respect to Nilsen Giordano Arias Sandoval ("Arias"), the government seeks preclusion of ███████████

district court has broad latitude, even "[w]ithin the mandates of the Confrontation Clause," to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is . . . only marginally relevant." *United States v. Daniels*, 566 F. Supp. 3d 191, 193 (E.D.N.Y. 2021) (quoting *United States v. Figueroa,* 548 F.3d 222, 227 (2d Cir. 2008)). Even where a prior act may bear on a witness's character for truthfulness, it is still subject to Rule 403's balancing test. *Id.* at 194.

I.   Solicitation of Prostitutes

With respect to the solicitation of prostitutes by certain of the government witnesses—███████ ████████████████████ ██████████████—the probative value of any such evidence for the witnesses' veracity for truthfulness is low. *See United States v. Nosov*, 221 F. Supp. 2d 445, 449 (S.D.N.Y. 2002), *aff'd,* 119 F. App'x 311 (2d Cir. 2004) ("In general, '[c]ross-examination concerning immoral acts and acts of sexual perversion may be properly excluded by a

███████████████. *Id.* at 44. For Carlos Espinosa Barba ("Barba"), the government seeks preclusion of ████████ █ ████████ █ ██ ████████████████████ ██, *id.*, and for Gonzalo Guzman Manzanilla ("Guzman"), the government seeks to preclude ████████ ████████████████ ████████████████ ████, *id.* at 45.

Defendant asks that, at minimum, the Court defer ruling on this motion until after the government's disclosure of Section 3500 and *Giglio* materials. Def.'s Opp. at 27.

trial judge who determines they are not probative of the witness's veracity.'" (quoting *United States v. Devery,* 935 F. Supp. 393, 408 (S.D.N.Y.1996))). The Court struggles to find a sufficient nexus between these incidents and the witnesses' truthfulness when testifying about the charged bribery and money laundering schemes to justify such inquiry on cross-examination. This is particularly so where some of the witnesses engaged in such acts as a teenager ████ or on one occasion in the 1980s ████. Indeed, the Second Circuit has found sexual acts properly excluded under Rule 608 as not bearing on the witness's propensity for truth-telling. *See United States v. Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978) (affirming district judge's exclusion, under Rule 608, of witness's "prior acts of sodomy upon young children and consequent psychiatric treatment therefore" as not "logical[ly] relevan[t]" to witness's credibility).

Aguilar argues, however, that for the witnesses who engaged prostitutes during their marriages (although it is unclear to which witnesses

that applies), such infidelity bears on their characters for truthfulness, particularly where the infidelity concerned prostitution.  *See* Def.'s Opp. at 32–33.  The added factor of infidelity does little, if anything, to alter the balancing equation for admissibility.   Indeed, the Second Circuit found evidence of a witness's solicitation of prostitutes and marriage infidelity properly excluded on cross-examination.  *United States v. Amato*, 540 F.3d 153, 165 (2d Cir. 2008), *abrogated on other grounds by Lagos v. United States,* 138 S. Ct. 1684, 201 L. Ed. 2d 1 (2018).

Contrary to the low probative value for truthfulness of such evidence, the prejudicial effect is significant.  But, as Aguilar would have it, the Court should permit cross-examination on this topic, as "patronizing prostitutes promotes human trafficking and violence against women."  Def.'s Opp. at 33.  But "[i]f all that can be said about behavior is that it might be called improper, immoral, or unlawful . . . asking about it cannot be justified under Fed. R. Ev[id]. 608."  *United States v. Stone*, No. 05-CR-401 (ILG), 2007 WL 4410054,

18

at *1 (E.D.N.Y. Dec. 14, 2007). Aguilar's argument, in fact, not only illustrates the highly inflammatory nature of the evidence, but also the potential inference the jury will draw from such evidence, which has little—if anything—to do with the witnesses' truthfulness. *See United States v. Pena*, 978 F. Supp. 2d 254, 266 (S.D.N.Y. 2013) (excluding cross-examination of three cooperating witnesses who engaged in "varying degrees of violent acts toward women," as not speaking to witnesses' reliability or credibility). Accordingly, the government's motion is granted, and Aguilar may not cross-examine the cooperating witnesses about their past acts of soliciting prostitutes or paying for sexual acts.

II.   Uncharged Drug Use

With respect to past, uncharged drug use of █████ (use of marijuana products), ████ (use of marijuana products), and ██████ (marijuana use once, when he was forty), these acts have little bearing, if any, on the witnesses' character for truthfulness. *See United States v. Krug*, No. 1:15-CR-00157 (RJA), 2019 WL 3162091, at *6

(W.D.N.Y. July 16, 2019).  But Aguilar also argues that, beyond any bearing on truthfulness, the witnesses' past drug use is probative of the witnesses' "memories and perceptions," and whether they "can recall accurately the key events that they likely will testify to at trial."  Def.'s Opp. at 27.  According to the government, ███ used marijuana in or about September 2019 and, prior to that, last used it in 2009.  ███ used marijuana oil for medicinal purposes, and ███ used marijuana once in 2015.  Gov't Reply at 18.  To what amounts to defense speculation, there is no showing that these relatively isolated instances might have any bearing on the witnesses' memory or perception of the charged schemes, which occurred from 2015 to July 2020.  Accordingly, the impeachment value of such evidence for the witnesses' truthfulness, perception, or memory is low.  Instead, such evidence carries a substantially greater risk of undue prejudice.

███████████████

████████████████

████████████████

Leading up to and during the charged period, however, A. Pere admitted to having used cocaine between four and six times per year. Such evidence may be probative of A. Pere's perception

and memory as to events occurring during formation of the alleged scheme and during the charged period.  *See id.* ("[D]rug or alcohol use at the time of the events in question is relevant to a witness's credibility, since it effects their ability to perceive the events and to recount them accurately.").   Accordingly, the government's motion with respect to A. Pere's drug use during the charged scheme is denied, and Aguilar may inquire into it on cross-examination.  Additionally, to the extent the government intends to introduce evidence preceding the charged period, *see infra* request (L), Aguilar may cross-examine A. Pere about his drug use during that period.  The same goes for inquiry into A. Pere's medical marijuana prescription.  Of course, the government is free to reassert its objection at trial if Aguilar seeks to introduce this evidence for an improper or different purpose at trial.

Finally, with respect to the one instance of cocaine use in August 2020, after A. Pere entered into the cooperation agreement, such use occurred after the charged period, and therefore has no

bearing on A. Pere's perception of the scheme. *See Krug*, 2019 WL 3162091, at *5. However, the evidence may be probative of A. Pere's bias. *United States v. Atherton*, 936 F.2d 728, 733 (2d Cir. 1991) ("In a limited sense, *any* illegal conduct of a government witness can be considered probative of bias, on the theory that the witness is likely to curry the favor of government attorneys in order to avoid prosecution." (emphasis in original)). In accordance with the Court's holding under request (I), Aguilar may cross-examine A. Pere about his cocaine use in August 2020 to show bias and incentive to testify in a manner consistent with the government's position. *Id.* ("The probative value of such evidence [ ] depends in large measure on some showing that the government was . . . aware[] of the illegality.").

Finally, to the extent that the government has produced under any category of production documents or other evidence following the submission of the defense memorandum in opposition to the government's *in limine* motion that suggests a good-faith basis to seek

| | reconsideration of any of the specific rulings made on this request, defendant is granted leave to seek such reconsideration. |
|---|---|
| (L)  The government seeks admission of evidence related to the charged schemes preceding the charged period, including statements made by defendant, by others at Vitol, and by co-conspirators.   Mot. at 45–52.   Specifically, the government anticipates "introduc[ing] evidence about events related to [the endeavor to look for additional opportunities for business and bribery in Ecuador] that took place before the charged scheme, including testimony regarding how the co-conspirators and foreign officials met, the type of business the co-conspirators were originally trying to win, and how those plans eventually [led] to the acts comprising the charged schemed." *Id.* at 46. | (L)  Aguilar requests that the Court defer ruling on the admissibility of evidence outside the charged period until trial, Def.'s Opp. at 35, to which the government does not object, Gov't Reply at 23. Accordingly, the admissibility of such evidence will be determined at trial. |
| (M)  Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government requests an order requiring | (M)  The parties do not dispute that Rule 16(b) of the Federal Rules of Criminal Procedure requires a defendant to produce all documents and other |

defendant to disclose (i) documents and evidence he intends to use in his case-in-chief no later than two weeks before the trial date; and (ii) statements of any defense witness other than the defendant himself no later than two days before the witness testifies.  Mot. at 52–54.

tangible evidence that the defense intends to use in its case-in-chief.  *See* Mot. at 52; Def.'s Opp. at 36. Aguilar contends, however, that, notwithstanding his intent to use such evidence in his case-in-chief, that he is free to withhold it from the government if he intends to use such evidence for impeachment purposes on his cross-examination of a government witness.   The government does not disagree provided that the withheld evidence is used *solely* for impeachment purposes and not additionally in the presentation of the defense's case-in-chief through cross-examination of a government witness.  *See United States v. Hatfield*, No. 06-CR-0550, 2009 WL 10673619, at *2 (E.D.N.Y. Apr. 22, 2009).

The point advanced by the government is in harmony with the holdings of courts in this district on this issue.   In accord with those holdings, Aguilar is ordered to disclose any documents he intends to use in his case-in-chief, including any exhibit that he intends to use during cross-examination of a government witness, where such exhibit will not be used *solely* for impeachment, no

later than two weeks prior to the start of trial. *United States v. Smothers*, 652 F. Supp. 3d 271, 308 (E.D.N.Y. 2023); *United States v. Napout*, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017). Aguilar must do so without regard to whether the exhibit was produced by the government in discovery. *Smothers*, 652 F. Supp. 3d at 308.

Additionally, the Court orders disclosure of any material pursuant to Federal Rule of Criminal Procedure 26.2 with respect to any defense witness other than defendant that the defense intends to call no later than two days before the witness testifies. *See id.*

So Ordered.

Dated: Brooklyn, New York
       December 11, 2023

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge