UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA          :
                                  :
                                  :
                                  :    SHORT FORM
            -against-             :    MEMORANDUM & ORDER
                                  :
JAVIER AGUILAR,                   :    1:20-cr-390 (ENV)
                                  :
                  Defendant.      :
------------------------------------------------------------ x

VITALIANO, D.J.

Defendant has filed a second motion *in limine* relating to the government's November 17th disclosures, its witness list, and its exhibit list.[1] Dkt. 192. Having considered the submissions of the parties, Dkts. 192-1, 210, 219, the motion is resolved in the manner and for the reasons as set forth below.[2]

| Motion | Ruling |
|---|---|
| (A) Aguilar seeks to preclude seventy-two exhibits he contends are "at least in part" related to the Diversion Scheme, | (A) As noted in the parties' email correspondence and confirmed by the government's response brief, the government "does not intend to offer |

---

[1] Defendant also attaches a nonspecific omnibus request that all similar but unidentified exhibits be precluded for the reasons argued with respect to its specific *in limine* requests. *See* Mot., Dkt. 192-1, at 22. The omnibus request is improper and denied. *See Viada v. Osaka Health Spa, Inc.*, No. 04-cv-2744 (WMKNF), 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005).

[2] Raised for the first time in his reply brief, *see* Def.'s Reply, Dkt. 219, at 8, Aguilar contends that nearly all evidence that he seeks to preclude in this motion consists of financial transactions, documents discussing financial transactions, or testimony about financial transactions, which were not disclosed by December 4, 2023, pursuant to the Court's orders that the government provide defendant a "list and descriptions of any specific transactions it intends to use at trial not previously identified in its charging documents and representations," and therefore should be prohibited. Order, Dkt. 117; Order, Dkt. 165. The Court will not consider this argument until such time as the government has had an opportunity to respond to it. The Court will then hear further argument as appropriate.

1

evidence of which was previously excluded by the Court. Mot. at 8[3]; *see also* Diversion Scheme Order, Dkt. 155, at 2–8. Specifically, Aguilar contends that the government's exhibit list contains documents regarding an individual referred to as "Intermediary #2," who the government identified in its motion to admit evidence of the Diversion Scheme as the individual who caused certain corrupt funds to be transferred into bank accounts of Aguilar ▮▮▮▮▮▮▮▮▮▮. Mot. at 8. As evidenced by an email exchange between the parties, appended as an exhibit to Aguilar's motion, it appears that eighteen exhibits relate to the charged money laundering and bribery schemes, and also in part to the Diversion Scheme, *see* Mot. Ex. A, Dkt. 192-3, at 2. Fifty-one of the exhibits concern exclusively the Diversion Scheme, and the remaining documents, elicit testimony, or make argument regarding the matters that the Court has excluded" in its Order regarding the Diversion Scheme. Mot. at 13; Mot. Ex. A at 2; Gov't Opp., Dkt. 210, at 9. The government contends that many of the documents that may relate to the Diversion Scheme (what appears to be eighteen of them) relate also to the money laundering and bribery schemes—particularly given the degree to which the schemes overlap—and are therefore admissible, with the caveat that the government "will seek to admit only such evidence that can be safely discussed without implying to the jury that there was, in fact, a diversion scheme." Gov't Opp. at 10. Accordingly, for those eighteen documents, Aguilar's request to exclude them is denied as academic but with leave to renew at trial should defendant contend that the government has strayed from its representation.

For the fifty-one exhibits that relate only to the Diversion Scheme, all are agreed that government would be barred from using these

---

[3] Page citations are with reference to ECF pagination.

2

| | |
|---|---|
| three exhibits are relevant to attribution for Aguilar's personal email accounts. *Id.* | exhibits in its case-in-chief unless defendant opens the door to its admission. *See* Mot. at 14; Gov't Opp. at 10. Further, all parties agree that should Aguilar argue that he never profited from the alleged conspiracy with Lionel Hanst, the door to such evidence would be open. *See* Gov't Opp. at 11; Reply at 11–12. Without prejudice to the government's argument to the contrary at the time of trial, and other than inquiry into the government's ability to account for all funds transferred at Lionel Hanst's behest, *see* Gov't Opp. at 11, the Court can presently conceive of no other door-opening inquiries by defendant during the government's case-in-chief.<br><br>With respect to the government's additional contention that the Diversion Scheme-only exhibits are admissible under Rule 608(b) if Aguilar testifies, since such evidence goes to his character for truthfulness, *see id.*, the Court presently cannot envision a circumstance where the government can vault the bar against the use of such extrinsic evidence for impeachment purposes, especially given the Court's earlier *in limine* determination of |

3

| | |
|---|---|
| | the evidence's highly prejudicial nature.  *See* Diversion Scheme Order at 5–8.  The government will be given an opportunity to renew its argument at trial if this scenario it presupposes should materialize.<br><br>For the remaining three documents, the government contends that they are relevant to "attribution for Aguilar's personal email accounts," but that it is willing to not use them in its case-in-chief so long as the defense agrees to stipulate regarding Aguilar's control of the accounts.  Mot. at 14; Mot. Ex. A at 2.  This portion of the request is granted as unopposed.  *See* Mot. at 14. |
| (B)   In this request, Aguilar seeks to preclude, under Rule 404(b), documents related to four persons and their entities, all of whom allegedly received bribes from Aguilar, but for which the government has not charged Aguilar. Mot. at 9.  Aguilar contends that one of the individuals was an official at PEMEX until approximately May 11, 2016, another was a PEMEX official between | (B)   Although Aguilar contends that such individuals and their entities have "no apparent connection to the charged scheme," Mot. at 10, the Court is cognizant that Aguilar identifies the charged scheme as limited to the Fuel Oil Contract and Ethane Supply Contract.  *See id.* at 6, 14–18; *see also* Def.'s Mot. *in Limine*, Dkt. 185-1, at 12.  The Court has previously rejected that narrow construction.  Order, Dkt. 213, at 7–8 (citing *United States v. LaSpina*, 299 F.3d 165, 182 (2d Cir. 2002) |

4

| | |
|---|---|
| June 2011 and July 2019. *Id.* at 9–10. The request also seeks to preclude documents relating to one of the individual's entities. *Id.* at 10 n.2. | ("The government need not 'set out with precision each and every act committed . . . in furtherance of the conspiracy,' particularly where acts proffered at trial are part of the 'core of the overall scheme and in furtherance of that scheme.'")). Because the charged conspiracy is broader than Aguilar contends, evidence about bribes paid by Aguilar in furtherance of the conspiracy are likely direct evidence. The government need not preview these documents now nor explain their relevancy. A determination of admissibility, whether offered directly or subject to connection, will be deferred to trial. |
| (C) Aguilar requests preclusion of communications between Aguilar, Lionel Hanst, and an unnamed individual, identified by e-mail address, concerning "payments made at Aguilar's direction" which Aguilar contends do not appear to relate to the charged bribery and money laundering schemes. Mot. at 10. | (C) Same as (B) above. |
| (D) Aguilar's next request seeks preclusion of evidence of an entity, | (D) Same as (B) above. |

5

| | |
|---|---|
| ███████, and communications linking an email address ████████████ to █████ Mot. at 10. Aguilar contends that these communications do not appear to relate to the charged bribery and money laundering schemes. *Id.* at 11. | |
| (E)  Aguilar seeks to bar "hundreds of pages" of banking records" for entities with "no apparent relevance." *Id.* | (E)  Same as (B) above. |
| (F)  Aguilar seeks preclusion of at least one email on the government's exhibit list from another Vitol employee Marc Ducrest, identified as Co-Conspirator #1 in the Superseding Indictment, to Aguilar regarding two "unrelated entities," and other documents on the exhibit list concerning those entities.  Mot. at 11. | (F)  Same as (B) above. |
| (G)  Aguilar requests preclusion of documents involving an affiliate of PEMEX, MexGas, which he contends is entirely separate from PPI, and an email from ████████████████████ | (G)  Same as (B) above. |

6

| | |
|---|---|
| ▓▓▓, identified in the Superseding Indictment as "Vitol Group Employee," to Aguilar regarding information pertaining to MexGas. Mot. at 11; *see also* Superseding Indictment, Dkt. 120, ¶ 38. | |
| (H) Finally, Aguilar seeks preclusion of a list of ten entities contained within the government's exhibits which he contends do not appear to be relevant to the charged conduct. Mot. at 12. | (H) Same as (B) above. |

So Ordered.

Dated: Brooklyn, New York
December 21, 2023

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge